**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
AEROTEL, LTD., AEROTEL U.S.A., INC. and              :
AEROTEL U.S.A., LLC,

                                  :              ELECTRONICALLY FILED

        Plaintiffs,

                                  :

        -v-

                                  :

AT&T INC., AT&T CORP., AT&T MOBILITY              Civil Action No. 07-Civ-3217 (RJH)
CORPORATION, AT&T MOBILITY LLC, NEW              :
CINGULAR WIRELESS SERVICES, INC.
(formerly AT&T Wireless Services, Inc.),              :
CINGULAR WIRELESS II, LLC (formerly Cingular
Wireless II, Inc.), NEW CINGULAR WIRELESS              :
PCS, LLC, BELLSOUTH MOBILITY DCS, INC.,
BELLSOUTH CORPORATION, BELLSOUTH              :
TELECOMMUNICATIONS, INC., and JOHN
DOES 1-10,              :

        Defendants.              :
-------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF (1) MOTION**
**OF DEFENDANTS AT&T INC. AND BELLSOUTH CORPORATION**
**TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION;**
**(2) MOTION OF ALL DEFENDANTS TO DISMISS THE COMPLAINT FOR FAILURE**
**TO STATE A CLAIM OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE**
**STATEMENT; AND (3) MOTION OF ALL DEFENDANTS TO DISMISS THE CLAIMS**
**OF AEROTEL U.S.A., INC. AND AEROTEL U.S.A., LLC FOR LACK OF STANDING**


**FULBRIGHT & JAWORSKI L.L.P.**
Joseph P. Zammit
Edward P. Dolido
666 Fifth Avenue
New York, New York  10103
Tel:    (212) 318-3000
Fax:    (212) 318-3400
Attorneys for Defendants

31353438.1

# TABLE OF CONTENTS

**Page**

Table of Authorities ..................................................................................................... ii

Preliminary Statement ................................................................................................. 1

FACTS ......................................................................................................................... 2

ARGUMENT ............................................................................................................... 5

I.      AT&T INC. AND BELLSOUTH ARE NOT SUBJECT TO THE PERSONAL
JURISDICTION OF THIS COURT ................................................................. 5

      A.     AEROTEL HAS THE BURDEN OF ESTABLISHING A PRIMA FACIE
BASIS FOR PERSONAL JURISDICTION ......................................... 6

      B.     AEROTEL'S ALLEGATIONS DO NOT ESTABLISH A PRIMA FACIE
BASIS OF JURISDICTION .................................................................. 8

            1.     Aerotel Has Not Established That Any Subsidiary Is The "Agent"
Of AT&T Inc. Or Of BellSouth Corporation ........................................... 11

            2.     Aerotel Has Not Established That Any Subsidiary Is A "Mere
Department" Of AT&T Inc. Or Of BellSouth Corporation ..................... 11

            3.     Aerotel Cannot Use Its Inadequate Pleading To Justify A Fishing
Expedition .............................................................................................. 14

II.     THE COMPLAINT FAILS TO STATE A CLAIM AGAINST ANY
DEFENDANT BECAUSE IT FAILS TO IDENTIFY THE ALLEGEDLY
INFRINGING PRODUCTS OR SERVICES AND FAILS TO DISCLOSE HOW
EACH DEFENDANT SUPPOSEDLY INFRINGED .................................... 16

      A.     IF AEROTEL HAS COMPLIED WITH RULE 11, IT MUST ALREADY
KNOW WHICH PRODUCTS OR SERVICES IT IS ACCUSING .................. 17

      B.     AEROTEL'S FAILURE TO IDENTIFY HOW EACH DEFENDANT IS
BEING ACCUSED OF INFRINGING JUSTIFIES DISMISSAL OF ITS
COMPLAINT ........................................................................................ 18

      C.     AT A MINIMUM, AEROTEL SHOULD BE DIRECTED TO PROVIDE
A MORE DEFINITE STATEMENT AS TO HOW THE DEFENDANTS
SUPPOSEDLY INFRINGE ................................................................... 21

III.    PLAINTIFFS AEROTEL U.S.A., INC. AND AEROTEL U.S.A. , LLC DO NOT
HAVE STANDING TO ASSERT THE INFRINGEMENT CLAIM ............................. 23

CONCLUSION ........................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Aerotel Ltd. v. Sprint Corp.*,
   100 F. Supp. 2d 189 (S.D.N.Y. 2000) ...................................................................... 16

*Agilent Technologies, Inc v. Micromuse, Inc.*,
   No. 04-civ-3090, 2004 U.S. Dist. LEXIS 20723 (S.D.N.Y. Oct. 19, 2004)............................ 22

*Bay Industries Inc. v. Tru-Arx Mfg., LLC*,
   No. 06-civ-1010, 2006 U.S. Dist. LEXIS 86757 (E.D. Wis. Nov. 29, 2006).................... 18, 22

*Bell Atlantic Corp. v. Twombly*,
   127 S.Ct. 1955 (2007)..................................................................................... 13, 14, 21

*Bensusan Rest. Corp. v. King*,
   937 F. Supp. 295 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997) ...................... 7

*Berwick v. New World Int'l, Ltd.*,
   No. 06-civ-2641, 2007 U.S. Dist. LEXIS 22995 (S.D.N.Y., Mar. 28, 2007)............................ 6

*Bulova Watch Co., Inc. v. K. Hattori & Co., Ltd.*,
   508 F. Supp. 1322 (E.D.N.Y. 1981) ...................................................................... 11

*Catapano v. Wyeth Ayerst Pharmaceuticals, Inc.*,
   88 F. Supp. 2d 27 (E.D.N.Y. 2000) ...................................................................... 20

*Conley v. Gibson*,
   355 U.S. 41 (1957)............................................................................................... 19, 21, 22

*DePaul v. General Instrument Corp.*,
   No. 91-civ-1901, 1991 U.S. Dist. LEXIS 4077 (S.D.N.Y. 1991) ............................ 20

*eSoft, Inc. v. Astaro Corp.*,
   No. 06-civ-441, 2006 U.S. Dist LEXIS 52336 (D. Colo. Jul. 31, 2006)................................. 22

*Fieldturf, Inc. v. Southwest Re. Indus.*
   357 F.3d 1266 (Fed. Cir. 2004) ...................................................................... 24

*Fort Knox Music, Inc. v. Baptiste*,
   139 F. Supp. 2d 505 (S.D.N.Y. 2001) ...................................................................... 7

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*,
   No. 06-civ-1125, 2007 U.S. Dist. LEXIS 23555 (S.D.N.Y. March 29, 2007)........................ 15

# TABLE OF AUTHORITIES
## (continued)

**Cases**                                 **Page**

*Frummer v. Hilton Hotels Int'l, Inc.*,
    19 N.Y.2d 533, 281 N.Y.S.2d 41 (1967) ............................................... 11

*Gen-Probe, Inc. v. Amoco Corp.*,
    926 F. Supp. 948 (S.D. Cal. 1996)....................................................... 20

*Hewlett-Packard Co. v. Intergraph Corp.*,
    No. 03-civ-2517, 2003 U.S. Dist. LEXIS 26092 (N.D. Cal. Sept. 6, 2003)...................... 21, 22

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
    763 F.2d 55 (2d Cir. 1985) ............................................................... 7

*Home & Nature, Inc. v. Sherman Specialty Co.*,
    322 F. Supp. 2d 260 (E.D.N.Y. 2004) ............................................... 18, 23

*In re Papst Licensing GmbH Patent Litig.*,
    No. MDL 1298, 2001 U.S. Dist. LEXIS 2255 (E.D. La. Feb. 22, 2001) ................ 22

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2002*,
    230 F. Supp. 2d 403 (S.D.N.Y. 2002) ................................................. 17

*Iqbal v. Hasty*,
    No. 05-civ-5768, 2007 U.S. App. LEXIS 13911 (2d Cir. June 14, 2007)............... 14

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*,
    131 F. Supp. 2d 544 (S.D.N.Y. 2001) ................................................. 13

*Jazini v. Nissan Motor Co., Ltd.*,
    148 F.3d 181 (2d Cir. 1998) ..................................................... passim

*Judin v. U.S.*,
    110 F.3d 780 (Fed. Cir. 1997) .......................................................... 17

*Kashfi v. Phibro-Salomon, Inc.*,
    628 F. Supp. 727 (S.D.N.Y. 1986) ..................................................... 10

*Krepps v. Reiner*,
    414 F. Supp. 2d 403 (S.D.N.Y. 2006) ................................................... 6

*Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*,
    918 F.2d 1039 (2d Cir. 1990) ............................................................ 7

*McGowan v. Smith*,
    52 N.Y.2d 268, 437 N.Y.S.2d 643 (1981) ............................................... 7

# TABLE OF AUTHORITIES
## (continued)

**Cases**                                                                    **Page**

*MedPay Sys., Inc. v. MedPay USA, LLC*,
   No. 06-civ-1054, 2007 U.S. Dist. LEXIS 30201 (E.D.N.Y. Mar. 29, 2007) ............................ 6

*Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*,
   425 F. Supp. 2d 402 (S.D.N.Y. 2006) ................................................................. 6, 7

*Ondeo, Nalco Co. v. Eka Chemicals, Inc.*,
   No. 01-civ-537, 2002 U.S. Dist. LEXIS 26195 (D. Del. Jun. 10, 2002) .................................. 21

*Papasan v. Allain*,
   478 U.S. 265 (1986) ......................................................................................... 13

*PDK Labs, Inc. v. Friedlander*,
   103 F.3d 1105 (2d Cir. 1997) ............................................................................. 7

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*,
   No. 05-civ-9016, 2006 U.S. Dist. LEXIS 9159 (S.D.N.Y. Mar. 7, 2006) ................................ 6

*Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*,
   203 F.3d 790 (Fed. Cir. 2000) ...................................................................... 18, 19

*Propat Int'l Corp. v. RPost US, Inc.*,
   473 F.3d 1187 (Fed. Cir. 2007) ..................................................................... 24, 25

*Saraceno v. S.C. Johnson and Son, Inc.*,
   83 F.R.D. 65 (S.D.N.Y. 1979) ........................................................................... 13

*Schenker v. Assicurazioni Generali S.p.A., Consol.*,
   No. 98-civ-9186, 2002 U.S. Dist. LEXIS 12845 (S.D.N.Y. Jul. 11, 2002) ........................... 6, 11

*Sodepac, S.A. v. M/V Choyang Park*,
   No. 02-civ-3927, 2002 U.S. Dist. LEXIS 19360 (S.D.N.Y. Oct. 9, 2002) ............................... 16

*Stewart v. Vista Point & Verlag Ringier Publishing*,
   No. 99-civ-4225, 2000 U.S. Dist. LEXIS 14236 (S.D.N.Y. Sep. 29, 2000) ......................... 6, 15

*Stutts v. De Dietrich Group*,
   465 F. Supp. 2d 156 (E.D.N.Y. 2006) ........................................................... passim

*Textile Prods. v. Mead Corp.*,
   134 F.3d 1481 (Fed. Cir. 1998) ......................................................................... 24

*View Engineering, Inc. v. Robotic Vision Systems, Inc.*
   208 F.3d 981 (Fed. Cir. 2000) ........................................................................... 17

# TABLE OF AUTHORITIES
## (continued)

**Cases**                                                                                       **Page**

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
   751 F.2d 117 (2d Cir. 1984) ................................................................. 12, 13

*Williams Advanced Materials, Inc. v. Target Tech. Co.*,
   No. 03-civ-00276A, 2007 U.S. Dist. LEXIS 28018 (W.D.N.Y. Apr. 16, 2007)..................... 22

*Windy City Innovations LLC v. America Online, Inc.*,
   227 F.R.D. 278 (N.D. Ill. 2005)............................................................... 21

*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2d Cir. 2000) ................................................................... 11

**Statutes and Administrative Codes**

35 U.S.C. § 100(d) .............................................................................. 23

35 U.S.C. § 271................................................................................. 19

35 U.S.C. § 281................................................................................. 23

**Rules**

Fed. R. Civ. P. 12(b)(2)....................................................................... 1, 14

Fed. R. Civ. P. 12(b)(6)......................................................................... 1

Fed. R. Civ. P. 12(e) ........................................................................... 1

N.Y. C.P.L.R. § 301 .............................................................................. 7

N.Y. C.P.L.R. § 302(a)(1)......................................................................... 7

This Memorandum of Law, together with the accompanying declarations of Terrence Britt, dated August 6, 2007 (the "Britt Decl."), James W. Lacy, Jr., dated August 7, 2007 (the "Lacy Decl.") and Joseph P. Zammit, dated August 10, 2007 ( the "Zammit Decl."), and the exhibits thereto, is respectfully submitted:   (1) in support of the motion of AT&T Inc. and BellSouth Corporation to dismiss the Complaint against them pursuant to Fed. R. Civ. P. 12(b)(2) on the ground that there is no personal jurisdiction over them since they are not present, and do not conduct business, in New York; (2) in support of the motion of all Defendants to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for a more definite statement to Fed. R. Civ. P. 12(e), on the ground that the Complaint does not identify any products or services alleged to infringe Plaintiffs' patent or identify what each Defendant is supposed to have done; and (3) in support of the motion of all Defendants to dismiss the claims of Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that neither of those plaintiffs are alleged to own the patent at issue and, therefore, they lack standing to assert infringement claims.

## **Preliminary Statement**

This is an action for alleged patent infringement brought by Aerotel Ltd. and its two affiliates, Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC (collectively, "Aerotel"), against AT&T Inc. and BellSouth Corporation and certain of their affiliates.  The patent at issue is purportedly owned by Aerotel, Ltd.[1] and relates to a system and method for making prepaid telephone calls.

In this action, Aerotel named AT&T Inc., together with a number of its direct and indirect subsidiaries, as defendants, without regard to whether any of the corporate Defendants have any

---

[1]    More accurately, the U.S. Patent was assigned to Aerotel Inc., but there is a question as to whether the inventor possessed any rights to assign.  That question is the subject of pending proceedings in Israel, as well as in this Court (and is likely to be an issue in this action if and when Defendants answer the Complaint).  See n.2, infra.

involvement with products or services that could infringe.  The impropriety of such blunderbuss pleading — naming parties without any reasonable basis for doing so — is underscored by the fact that Plaintiffs fail to specify *any* products or systems that allegedly infringe their patent.  As a number of the Defendants have no products or services at all, let alone ones that arguably could infringe, and the remaining Defendants have a multitude of products and services, and therefore have not been provided with the requisite notice as to what Plaintiffs are alleging to infringe their patent, the Complaint fails to state a claim upon which relief can be granted as against any of them.

In addition, two of the Defendants, AT&T Inc. and its subsidiary BellSouth Corporation, are merely corporate holding companies that offer no products or services of any kind to the public.  Neither is located in New York.  As these two Defendants are not present here and do not conduct business here, neither is subject to personal jurisdiction here and the Complaint against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

Finally, the Complaint itself alleges (at ¶ 1) that plaintiff "Aerotel, Ltd. is the sole owner of all rights conferred by the [patent at issue]."  As that necessarily means that neither of the two named plaintiffs, Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC, have any ownership interest in the patent, neither has standing to assert the infringement claims pleaded in the Complaint.

### FACTS

This is an action for purported infringement of U.S. Patent No. 4,706,275 (the "'275 Patent") directed to systems and methods for making prepaid telephone calls.  (Complaint ¶ 1.)[2]

---

[2]    A copy of Aerotel's Complaint (without its exhibits) is annexed as Exhibit B to the accompanying Zammit Decl.  As noted previously, there is a substantial question as to whether any of the Plaintiffs actually owns the patent such that it can sue for infringement, and that question is pending before a court in Israel as well as in separate actions before this Court.  See AT&T Corp.'s Amended Declaratory Judgment Complaint (docket No. 3) ¶ 14, filed in AT&T Corp. v. Aerotel, Ltd., No. 07-CV-2294 (RJH) (S.D.N.Y.); Orders dated March 8, 2007 (docket

footnote continued . . .

AT&T Corp. had licensed the patent and a separate dispute over the royalties due under the license agreement is pending in both an International Centre for Dispute Resolution arbitration and in a separate declaratory judgment action in this Court.  <u>AT&T Corp. v. Aerotel, Ltd.</u>, No. 07-CV-2294 (RJH).  In both the declaratory judgment action and in the arbitration, Aerotel has joined AT&T Inc. as a party to the lawsuit despite the fact that AT&T Inc. is not itself a party to the license agreement, and does not manufacture or sell any products or services itself, but is merely a holding company which owns other corporate entities.  (<u>See</u> Zammit Decl. ¶ 2.)  AT&T Inc. has moved to dismiss the declaratory judgment action for lack of personal jurisdiction and will similarly move to dismiss the arbitration because it is not a party to the arbitration agreement.  (<u>Id.</u>)[3]

In this action, Aerotel is now suing AT&T Corp. for patent infringement with respect to activities that allegedly were not licensed under the patent license agreement that is the subject of the arbitration and declaratory judgment action, and is similarly suing certain of its affiliates. (<u>See</u> Complaint (Zammit Decl. Exhibit B).)  However, following the same pattern as in the arbitration and declaratory judgment action, Aerotel has named not just telephone operating companies that could have theoretically infringed the patent, but has also named numerous

---

no. 142) and June 7, 2007 (docket no. 151) in <u>Aerotel, Ltd. v. IDT Corporation</u>, No. 03-CV-06496 (RJH) (S.D.N.Y.).

[3]    In that declaratory judgment action, Aerotel seeks to justify naming AT&T Inc. solely by speculating that AT&T Inc. "controls [AT&T Corp.] and is a successor to substantially all of the business and assets of [AT&T Corp.]," although Aerotel's counsel has also admitted that it is "unclear as to what extent AT&T [Inc.] has removed or otherwise transferred the assets of [AT&T Corp.]."  <u>See</u> Letter dated June 22, 2007, from Glenn F. Ostrager to the Court, annexed as Zammit Decl. Exhibit A.  Thus, even though AT&T Inc. had no relationship to AT&T Corp. during the entire term of the license agreement at issue in that action, Aerotel is attempting to assert jurisdiction based on its contention in the declaratory judgment action that AT&T Inc. "controlled" AT&T Corp. *after* the agreement had allegedly been breached by AT&T Corp., and *after* the agreement had already expired by its terms at the time when the parties were engaged in negotiations concerning AT&T's purported obligation to pay additional royalties.  <u>Id.</u>

affiliates and their parent holding companies, AT&T Inc. and BellSouth Corporation.  Id.

## AT&T Inc.

AT&T Inc. is a Delaware corporation, with its principal and only place of business in San Antonio, Texas.  (Britt Decl. ¶ 2.)  It is a holding company managed by a board of 16 directors; it has only approximately 18 officers and has no employees.  (Britt Decl. ¶ 2.)  AT&T Inc. conducts no business with the public.  (Britt Decl. ¶ 5.)  AT&T Inc. does not own or maintain a telecommunications network, and it does not provide telecommunications services.  (Britt Decl. ¶ 6.)  AT&T Inc. does not make or sell products or services of any kind in any state or jurisdiction and, therefore, has no sales representatives or distributors as it produces nothing to sell or distribute.  (Britt Decl. ¶ 6.)  AT&T Inc. is a legally and factually separate corporate entity, distinct from each of its hundreds of subsidiaries.  (Britt Decl. ¶ 5.)  Each of AT&T Inc.'s subsidiaries maintains its own independent corporate, partnership or limited liability company status, identity and structure.  (Britt Decl. ¶ 5.)  AT&T Inc. is not qualified to do business in New York, does not have an office, a telephone number, employees or agents, in New York, and it does not own real property in New York or pay taxes in New York.  (Britt Decl. ¶¶ 8-10.)

AT&T Inc. was previously known as "SBC Communications Inc." and changed its name shortly after it acquired AT&T Corp. on November 18, 2005, through a merger between one of its subsidiaries and AT&T Corp. (Britt Decl. ¶ 4.)  That acquisition took place after the '275 Patent had expired.  (Complaint ¶ 2.)  After the acquisition, AT&T Corp. remained an operating company that provides long-distance telephone and other telecommunications services; it did not transfer any of its operating assets or liabilities to AT&T Inc., and AT&T Inc. did not become a successor to AT&T Corp. (Britt Decl. ¶ 7.)  Similarly, after acquiring the stock of BellSouth Corporation on December 29, 2006, long after expiration of the '275 Patent, AT&T Inc. did not receive any of the operating assets of BellSouth and BellSouth continues to operate as a separate

corporate subsidiary.  (Britt Decl. ¶¶ 4, 5, 7.)

### Bellsouth Corporation

On December 29, 2006 (over one year after expiration of the '275 Patent), AT&T Inc. acquired BellSouth Corporation ("BellSouth") by merging one of its subsidiaries into BellSouth. (Britt Decl. ¶ 4.)  BellSouth is a Georgia corporation, with its principal and only place of business in Atlanta, Georgia.  (Lacy Decl. ¶ 2.)  It is a holding company, managed by a board of 2 directors and by approximately 24 officers.  (Lacy Decl. ¶¶ 2, 3.)  It does not own or maintain a telecommunications network, and it does not provide telecommunications services.   (Lacy Decl. ¶ 7.)  BellSouth does not make or sell products or services of any kind in any state or jurisdiction and, therefore, has no sales representatives or distributors as it produces nothing to sell or distribute.  (Lacy Decl. ¶ 7.)  BellSouth is a legally and factually separate corporate entity, distinct from each of its own subsidiaries and from its corporate parent, AT&T Inc. (Lacy Decl. ¶¶ 5-11.)  Each of BellSouth's subsidiaries maintains its own corporate, partnership or limited liability status, identity and structure.  (Lacy Decl. ¶ 6.) BellSouth does not have an office, a telephone number, employees or agents in New York and it does not own real property in New York or pay taxes in New York.  (Lacy Decl. ¶¶ 12-15.)

### ARGUMENT

## I.    AT&T INC. AND BELLSOUTH ARE NOT SUBJECT TO THE PERSONAL JURISDICTION OF THIS COURT

As noted below under Point II, Aerotel has not identified the products or services that it claims infringe its patent and it has not even identified how any of the Defendants are supposedly liable for infringement.   Moreover, AT&T Inc. and BellSouth are merely corporate holding companies that do not offer any products or services to the public.  AT&T Inc. (as opposed to AT&T Corp.) and BellSouth are not alleged to have entered into any contract with Aerotel. Neither maintains a place of business in New York, maintains its books and records in New

York, has real property or employees or agents in New York, regularly transacts business in New York, pays taxes in New York, or is authorized to do business in New York.  See Britt Decl. at ¶¶ 5-11; Lacy Decl. at ¶¶ 12-15.  Thus, they are not subject to personal jurisdiction in this Court.

### A.    AEROTEL HAS THE BURDEN OF ESTABLISHING A PRIMA FACIE BASIS FOR PERSONAL JURISDICTION

Where, as here, the jurisdictional issue is raised in an initial Rule 12(b)(2) motion before discovery, Aerotel has the burden of establishing a *prima facie* basis for jurisdiction through the complaint's allegations and affidavits.  E.g., Krepps v. Reiner, 414 F. Supp. 2d 403, 406 (S.D.N.Y. 2006).[4]  Submission and consideration of affidavits does not convert the motion into one for summary judgment.  E.g., Merck & Co. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 420 n.11 (S.D.N.Y. 2006); Stewart v. Vista Point & Verlag Ringier Publishing, No. 99-civ-4225, 2000 U.S. Dist. LEXIS 14236, at *4 (S.D.N.Y. Sep. 29, 2000).  In the absence of an evidentiary hearing, the uncontested allegations of jurisdictional facts in the complaint will be assumed to be true, but "where a defendant has contested a plaintiff's allegations with 'highly specific, testimonial evidence regarding a fact essential to jurisdiction and plaintiffs do not counter that evidence, the allegation may be deemed refuted.'"  MedPay Sys., Inc. v. MedPay USA, LLC, No. 06-civ-1054, 2007 U.S. Dist. LEXIS 30201, at *12 (E.D.N.Y., Mar. 29, 2007) (quoting Schenker v. Assicurazioni Generali S.p.A., Consol., No. 98-civ-9186, 2002 U.S. Dist. LEXIS 12845, at *12 (S.D.N.Y., July 11, 2002)).  See also Berwick, supra, 2007 U.S. Dist. LEXIS 22995, at *27; Merck & Co., supra, 425 F. Supp. 2d at 420; Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC, No. 05-civ-9016, 2006 U.S. Dist. LEXIS

---

[4]    Even if plaintiff establishes a *prima facie* basis for jurisdiction, an evidentiary hearing eventually will still have to be held, before trial or during trial, and Aerotel will have to prove the jurisdictional facts by a preponderance of the evidence.  Berwick v. New World Int'l, Ltd., No. 06-civ-2641, 2007 U.S. Dist. LEXIS 22995, *28 (S.D.N.Y., Mar. 28, 2007).

9159, at *101 (S.D.N.Y. Mar. 7, 2006); Bensusan Rest. Corp. v. King, 937 F. Supp. 295, 298

(S.D.N.Y. 1996), aff'd, 126 F.3d 25 (2d Cir. 1997).

This Court looks to New York's personal jurisdiction rules to ascertain whether AT&T

Inc. and BellSouth are subject to jurisdiction here. Fort Knox Music, Inc. v. Baptiste, 139 F.

Supp. 2d 505, 509 (S.D.N.Y. 2001) (citing PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108

(2d Cir. 1997)). New York CPLR § 301 provides for "general jurisdiction" when a defendant is

"engaged in such a continuous and systematic course of 'doing business' here as to warrant a

finding of its 'presence' in this jurisdiction." Landoil Resources Corp. v. Alexander &

Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990) (internal quotations omitted). This

standard requires that a defendant be present in New York, "not occasionally or casually, but

with a fair measure of permanence and continuity." Id. Alternatively, "specific jurisdiction"

under New York's long-arm statute, CPLR § 302(a)(1), can exist when a defendant, "in person

or through an agent . . . transacts any business within the state or contracts anywhere to supply

goods or services in the state." However, "[e]ssential to the maintenance of a suit against a

nondomiciliary under CPLR 302 (subd. [a], par. 1) is the existence of some articulable nexus

between the business transacted and the cause of action sued upon." McGowan v. Smith, 52

N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645 (1981). See also Hoffritz for Cutlery, Inc. v. Amajac,

Ltd., 763 F.2d 55, 59-60 (2d Cir. 1985) (requiring a "substantial nexus" between the business

and cause of action). Regardless of the statutory basis for jurisdiction, the Court must also

confirm that the actual exercise of jurisdiction comports with due process.[5]

---

[5]    Because Aerotel has not alleged any concrete facts concerning jurisdiction, as discussed
below, it is not possible to determine whether assertion of jurisdiction premised upon unspecified
facts would satisfy due process. Merck & Co., supra, 425 F. Supp. 2d at 420-21. Accordingly, it
is not possible even to address the question at present.

### B. AEROTEL'S ALLEGATIONS DO NOT ESTABLISH A PRIMA FACIE BASIS OF JURISDICTION

In this case, there simply are no allegations as to any facts whatsoever that could support the assertion of personal jurisdiction over AT&T Inc. and BellSouth under a theory of either specific jurisdiction or general jurisdiction. As to jurisdictional facts, the Complaint alleges, "upon information or belief," only the following:[6]

3.   Aerotel asserts claims against AT&T Corp. ("ATTC"), AT&T Inc. ("AT&T") and other third parties (identified below) for infringement of the '275 Patent arising from their marketing, within this Judicial District and elsewhere, of products and services related to prepaid telephone calling cards which are covered by one or more claims of the '275 Patent.

\*        \*        \*

11.   . . . AT&T [Inc.] has been and is now doing business in this Judicial District and elsewhere through its sales representatives, subsidiaries, affiliates, and distributors.

\*        \*        \*

22.   . . . BellSouth has been and is now doing business in this Judicial District and elsewhere through its sales representatives, subsidiaries, affiliates, and distributors.

\*        \*        \*

25.   Prior to the BellSouth merger [with a subsidiary of AT&T Inc.], AT&T [Inc.] owned a 60% interest in Cingular Wireless LLC ("Cingular Wireless") (now AT&T Mobility) and shared control with BellSouth, which owned 40% interest in Cingular Wireless. As a result of the BellSouth merger, AT&T [Inc.] became the sole owner of Cingular Wireless, which also put sole control of Cingular Wireless in AT&T [Inc.].

26.   AT&T [Inc.], through and with its subsidiaries and affiliates, has assumed control, management and ownership of, and become the successor to substantially all of the assets of [AT&T Corp.] and BellSouth. As a result, [AT&T Corp.] and BellSouth have each lost their independent operating status and have been absorbed into AT&T [Inc.].

---

[6]    Aerotel prefaces its Complaint by explaining that "Plaintiffs aver upon information and belief" as to all paragraphs except for the six paragraphs describing Aerotel itself and the patent at issue. Zammit Decl. Exh. B at p. 1, introductory paragraph.

See Complaint (Zammit Decl. Exhibit B).

From these allegations, it is impossible to understand how Aerotel proposes to predicate personal jurisdiction in New York over AT&T Inc. and BellSouth. There seem to be three theories potentially embodied in these wholly conclusory averments:

Marketing products and services within this District. (Complaint ¶ 3). This appears to be Aerotel's attempt at alleging specific jurisdiction, inasmuch as Aerotel asserts that unidentified infringing products are marketed within the District. As explained in the accompanying Britt and Lacy declarations, the fundamental problem is that neither AT&T Inc. nor BellSouth have any products to market, nor do they sell the products of their subsidiaries (or of others) in this District or, for that matter, anywhere.

Doing business in this District through sales representatives, subsidiaries, affiliates, and distributors. (Complaint ¶¶ 11, 22). Again, neither AT&T Inc. nor BellSouth has any products to sell and, therefore, no "sales representatives" or "distributors" doing business anywhere, let alone in this District. (Britt Decl. ¶ 6; Lacy Decl. ¶ 7.) That leaves the naked assertion that those entities are somehow doing business in this District "through" their subsidiaries and affiliates — an assertion which is insufficient as a matter of both law and fact as discussed in detail below.[7]

AT&T Inc.'s control, management and ownership of AT&T Corp., BellSouth and Cingular. (Complaint ¶¶ 25, 26). The purpose of these allegations is particularly difficult to understand inasmuch as Aerotel recognizes that AT&T Inc. did not acquire AT&T Corp. or BellSouth until *after* the '275 Patent had expired and could no longer be infringed. Thus, these allegations could not be directed to specific jurisdiction. As an allegation of general jurisdiction,

---

[7]     It is noteworthy that Aerotel's "doing business" allegation is in fact "boilerplate," and not an attempt to illuminate any special circumstances relating to AT&T Inc. or BellSouth, as the very same allegation is recited with respect to every Defendant, operating companies and holding companies alike. (See Complaint ¶¶ 12, 13, 14, 16, 17, 18, 19, 24, 27.)

i.e., that Cingular Wireless's business is attributable to AT&T Inc. because AT&T Inc. now "controls" Cingular in the sense of supposedly owning all of its stock, this is just another naked assertion that AT&T Inc. does business "through" its subsidiaries which, as discussed below, is not a sufficient allegation on which a finding of personal jurisdiction can be predicated.[8]

In sum, the only allegations that can even remotely connect AT&T Inc. and BellSouth to the forum are the allegations that they have corporate subsidiaries that do business in the forum state. Such allegations, however, whether couched in terms of naked allegations of "control" of the subsidiaries predicated solely upon stock ownership, or couched in conclusory terms of doing business "through" them, are insufficient to sustain the Complaint against dismissal. Absent unusual circumstances not alleged here, the law respects the distinctions between corporations, even when one is wholly owned by another. The acts of a separate subsidiary are not attributable to a parent corporation for jurisdictional purposes.

"Courts are reluctant to disregard the separate existence of related corporations . . . and have consistently given substantial weight to the 'presumption of separateness.'" Kashfi v. Phibro-Salomon, Inc., 628 F. Supp. 727, 732-33 (S.D.N.Y. 1986). Thus, "the presence of the subsidiary alone does not establish the parent's presence in the state." Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998). Aerotel has failed to plead, let alone satisfy, either of the two narrow exceptions recognized in New York: where the subsidiary is an "agent" of the parent or where it is a "mere department" of the parent. Id.

---

[8]    Further, the implication in paragraph 26 of Aerotel's Complaint that BellSouth ceased to exist after it was acquired by AT&T Inc., such that AT&T Inc. is now the sole owner of Cingular Wireless, is factually wrong  —  BellSouth still exists and still owns approximately 40% of the former Cingular Wireless LLC (Lacy Decl. ¶¶ 4, 5). Indeed, Plaintiff, by suing BellSouth in this action, recognizes that BellSouth continues to exist, and it further contradicts its own assertion that it ceased to exist when it alleges in conclusory terms that BellSouth itself does business currently through its subsidiaries and affiliates (e.g., Complaint ¶ 22).

1.     **Aerotel Has Not Established That Any Subsidiary Is The "Agent" Of AT&T Inc. Or Of BellSouth Corporation**

To establish that the subsidiary is an "agent," "the plaintiff must show that the subsidiary 'does all the business which [the parent corporation] could do were it here by its own officials'." Jazini, supra, 148 F.3d at 184 (quoting Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41 (1967)).  Here, the "agent" approach requires little discussion because AT&T Inc. and BellSouth are mere holding companies that provide no services and manufacture no products themselves.  (Britt Decl. ¶¶ 5, 6; Lacy Decl. ¶¶ 6, 7, 15.)  Thus, the business conducted by their operating subsidiaries is not business that AT&T Inc. or BellSouth "could do were [they] here by [their] own officials."  Cf. Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95-98 (2d Cir. 2000) (subsidiary was "agent" of foreign corporation where subsidiary devoted one hundred percent of time to parent's business and was fully funded by the parent); Bulova Watch Co., v. K. Hattori & Co., 508 F. Supp. 1322, 1344 (E.D.N.Y. 1981) (subsidiary was "agent" for parent when it sold parent's products and provided quality control and marketing for parent's products).

2.     **Aerotel Has Not Established That Any Subsidiary Is A "Mere Department" Of AT&T Inc. Or Of BellSouth Corporation**

The "mere department" approach is likewise inapplicable here.  To establish that a subsidiary is a "mere department" of the parent, "a plaintiff must factually allege that 'the foreign parent's control of the subsidiary is pervasive enough that the corporate separation is more formal than real.'"  Stutts v. De Dietrich Group, 465 F. Supp. 2d 156, 163 (E.D.N.Y. 2006) (quoting Schenker v. Assicurazioni Generali S.P.A. Consol., No. 98-civ-9186, 2002 U.S. Dist. LEXIS 12845 (S.D.N.Y. Jul. 11, 2002)).  In that regard, the Court must weigh four factors:

> first, "common ownership"—which is "essential"—; second, "financial dependency of the subsidiary on the parent corporation;" third, "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities;" and fourth, "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent."

Jazini, supra, 148 F.3d at 185 (quoting Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120-21 (2d Cir. 1984)).

Here, while Aerotel pleads in conclusory fashion the activities of "subsidiaries or affiliates," it does not even specifically identify any which could be the "mere departments" of AT&T Inc. or BellSouth, with the possible exceptions of AT&T Corp. (Complaint ¶ 26) or AT&T Mobility LLC (Complaint ¶ 25), which are identified by name and alleged to be controlled by AT&T Inc.  However, Aerotel neither pleads, nor could it plead, facts sufficient to establish that AT&T Corp. or AT&T Mobility LLC is now a mere department of AT&T Inc. under the Jazini analysis.  As noted above, AT&T Inc.'s stock ownership is not enough.  "[T]he presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation."  Volkswagenwerk Aktiengesellschaft, 751 F.2d at 120.  Aerotel cannot legitimately allege that AT&T Corp., an entity that existed independently for over 100 years, or AT&T Mobility LLC, an entity that has long been one of nation's the leading wireless carriers, *ipso facto* became completely controlled and micromanaged by a holding company that has no employees of its own simply because their stock was recently acquired.  (Britt Decl. ¶¶ 2, 4.)

Moreover, in weighing the Jazini factors, one cannot lose sight of the fact that certain incidents of the parent-subsidiary relationship are normal and do not provide grounds for disregarding the corporate distinctions.  For example, "[t]he officers of any corporation that owns the stock of another necessarily exercise a considerable degree of control over the subsidiary corporation and the discharge of that supervision alone is not enough to subject the parent to New York jurisdiction."  Volkswagenwerk Aktiengesellschaft, 751 F.2d at 120.  "Of course, the officers of a parent normally control the board of directors of a subsidiary in their capacity as representatives of the controlling stockholder" and it is only "when the parent

officers extend their control beyond that normally exercised by boards of directors [that] their behavior supports an inference that the subsidiary is not an independent entity." Id., 751 F.2d at 121. "[S]ome overlap of directors and officers does not establish that a subsidiary corporation is a mere department of its parent," Stutts, supra, 465 F. Supp. 2d at 167, and in fact such overlap is "intrinsic to the parent-subsidiary relationship" and does not render the subsidiary a "mere department" of the parent, J.L.B. Equities, Inc. v. Ocwen Fin. Corp., 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001). A parent may make broad policy decisions for the subsidiary. Saraceno v. S.C. Johnson & Son, Inc., 83 F.R.D. 65, 71 (S.D.N.Y. 1979). Likewise, "[a]n advertising strategy deciding not to present to its consumers the existence of a parent-subsidiary relationship is not equivalent to a showing that the parent corporation exercises any control over its subsidiary's operational or marketing activities." Stutts, supra, 465 F. Supp. 2d at 163, quoting J.L.B. Equities, Inc., supra, 131 F. Supp. 2d at 555. In short, a subsidiary is a "mere department" of its parent for jurisdictional purposes only in the rare cases when the parent's control so far exceeds the bounds of a normal parent-subsidiary relationship that the corporate distinction should be ignored.

Aerotel makes no effort at all to plead any of the relevant facts identified in Jazini, supra, or to otherwise establish that anything other than standard parent/subsidiary relationships exist here. In fact, Aerotel's pleading of only conclusory allegations is, itself, dispositive. To survive a motion to dismiss, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). As the Second Circuit has noted in Jazini, quoting Papasan v. Allain, 478 U.S. 265, 286 (1986), "we are not bound to accept as true a legal conclusion couched as a factual allegation," and, therefore, a conclusory statement to the effect that one corporation "wholly controlled" another, or that a subsidiary was "wholly dependent" upon the parent "for its

business plan and financing," were insufficient to establish a *prima facie* case for jurisdiction and defeat a Rule 12(b)(2) motion.  148 F.3d at 185.  See also Stutts, supra, 465 F. Supp. 2d at 164-65.

In short, with no factual allegations whatever, Aerotel is asking this Court to make an extraordinary finding of personal jurisdiction premised upon activities of unspecified subsidiaries based solely on wholly conclusory allegations that are no more plausible here than they are in any situation where one corporation owns the stock of another and yet maintains corporate independence.  See Iqbal v. Hasty, No. 05-civ-5768, 2007 U.S. App. LEXIS 13911 at *35, *97 (2d Cir. June 14, 2007) (to survive dismissal for failure to state a claim, "a pleader [must] amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible," such as where the factual allegations are equally consistent with a conclusion that would not give rise to liability).  Aerotel has failed to plead the minimal facts sufficient "to raise a reasonable expectation that discovery will reveal evidence [supporting its theory]."  Twombly, supra, 127 S.Ct. at 1965.  Accordingly, as Aerotel has offered only conclusory and demonstrably baseless grounds for asserting jurisdiction over AT&T Inc. and BellSouth, the Complaint should be dismissed as against them pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

### 3.    Aerotel Cannot Use Its Inadequate Pleading To Justify A Fishing Expedition

As noted above, Aerotel has offered no facts – let alone facts establishing a *prima facie* basis – for disregarding the corporate forms and for not giving effect to the decisions of AT&T Inc. and BellSouth to not locate themselves in, or to do business in, this State.  Aerotel will inevitably make a plea for discovery before its claims are dismissed for lack of personal jurisdiction.  That plea should be rejected.

Aerotel should not be permitted to subject AT&T Inc. and BellSouth to the delay, burden and expense of a discovery "fishing expedition" when it lacked any factual basis for naming AT&T Inc. or BellSouth in this action in the first place. The Second Circuit has specifically stated that discovery should not be permitted in this situation:

> If the [plaintiffs'] allegations were sufficient to establish a prima facie case of jurisdiction over [the corporate parent not doing business in New York], and thus subject the latter to discovery . . . it would not be difficult for a plaintiff suing a multinational foreign corporation in the federal courts in New York, to make similar conclusory non-fact-specific jurisdictional allegations and thus obtain extensive discovery on that issue. This would require the federal courts to conduct substantial jurisdictional discovery over foreign corporations — a practice in which they have not hitherto engaged. We decline to require that step.

Jazini, supra, 148 F.3d at 185-86. "Where, as here, there are insufficient allegations that a subsidiary is so identified with its parent corporation that the latter is properly subject to jurisdiction based on the subsidiary's contacts in New York, a plaintiff has failed to establish a prima facie case of jurisdiction over the parent corporation. Jazini compels the conclusion that plaintiffs, having failed to make out a prima facie case of jurisdiction over defendants, are not entitled to jurisdictional discovery." Stutts, supra, 465 F. Supp. 2d at 169. See also Frontera Resources Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic, No. 06-civ-1125, 2007 U.S. Dist. LEXIS 23553 at *31 (S.D.N.Y. March 29, 2007); Stewart, supra, 2000 U.S. Dist. LEXIS 14236, at *16-17.[9]

---

[9]    Aerotel will undoubtedly refer the Court to one case in which it successfully persuaded a court to permit jurisdictional discovery despite the fact that the court acknowledged that Aerotel had offered nothing more than "conclusory" allegations as to the interrelatedness of Sprint Communications Company L.P. and its parent, Sprint Corporation. Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 2d 189, 194 (S.D.N.Y. 2000) (Scheindlin, J.). It may be that the record in that case revealed some basis for questioning the independence of the subsidiary that is not evident from the opinion. In any event, AT&T Inc. respectfully urges this Court not to follow that decision as it is inconsistent with the Second Circuit direction in Jazini, supra, 148 F.3d at 185-86, and with the other decisions which recognize that something more than a run-of-the mill parent-subsidiary relationship (and the normal incidents of interrelatedness that entails) must be demonstrated

footnote continued . . .

Aerotel had done nothing more than plead the existence of a normal parent-subsidiary relationship between various corporations, peppered with a few wholly conclusory allegations. (Even as to those conclusory allegations, Aerotel's counsel has admitted having no factual support.  See Zammit Decl. ¶ 2 and Exhibit A thereto.)  To permit jurisdictional discovery in these circumstances would justify jurisdictional discovery for every plaintiff suing a foreign corporation with local subsidiaries, precisely the slippery slope that the Second Circuit was determined to avoid in Jazini.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST ANY DEFENDANT BECAUSE IT FAILS TO IDENTIFY THE ALLEGEDLY INFRINGING PRODUCTS OR SERVICES AND FAILS TO DISCLOSE HOW EACH DEFENDANT SUPPOSEDLY INFRINGED

The Complaint does not identify the products or services that are alleged to infringe Aerotel's patent.  Instead, it merely repeats an undifferentiated boilerplate allegation against each Defendant, accusing them of:  "using, offering to sell, supplying or causing to be supplied in or from the United States, and/or selling, and actively inducing others to use, offer to sell, supply or cause to be supplied from the United States, and/or sell, without authority from Aerotel, Ltd. in this Judicial District and elsewhere, prepaid wireline and wireless telecommunications products and services that are covered by one or more claims of the '275 Patent."  (Complaint ¶¶ 28, 30,

---

before a court should sanction, and subject a foreign holding company to, the extraordinary burdens of a discovery fishing-expedition.  See, e.g., Stutts, supra, 465 F. Supp. 2d at 169.  In fact, the same judge that permitted discovery in the Aerotel v. Sprint case has more recently been more closely following the Second Circuit's direction in Jazini and denying discovery in similar situations, recognizing that when "plaintiffs have failed to make out a prima facie case for this Court's exercise of personal jurisdiction, they are not entitled to discovery."  Sodepac, S.A. v. M/V Choyang Park, No. 02-civ-3927, 2002 U.S. Dist. LEXIS 19360 at *17 (S.D.N.Y. Oct. 9, 2002) (Scheindlin, J.).  See also In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2002, 230 F. Supp. 2d 403, 412 (S.D.N.Y. 2002) (Scheindlin, J.).

32, 34, 36.)[10]  This allegation fails to inform any Defendant:

- whether it is being accused of direct infringement, or whether it is being accused of inducing infringement or of contributory infringement;

- if it is accused of inducing infringement or contributory infringement, whom it supposedly induced, or to what it supposedly contributed; and

- which products or services belonging to Defendants, or to third-parties, supposedly infringe.

No claim is stated in the absence of such information.

### A.  IF AEROTEL HAS COMPLIED WITH RULE 11, IT MUST ALREADY KNOW WHICH PRODUCTS OR SERVICES IT IS ACCUSING

The absence of meaningful notice as to what Defendants are being accused of having done cannot be excused by any ignorance on Aerotel's part.  Aerotel cannot be ignorant of the products or services that are allegedly infringing — because Aerotel necessarily must know which products it is accusing.  It was required to have that information before it filed its infringement Complaint, as its pre-filing obligation under Rule 11 was to "apply the claims . . . to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim."  View Engineering, Inc. v. Robotic Vision Systems, Inc., 208 F.3d 981, 986 (Fed. Cir. 2000).  See also Judin v. U.S., 110 F.3d 780, 784 (Fed. Cir. 1997).  Inasmuch as Aerotel must already have applied the claims to the "accused device" or service to satisfy itself that its Complaint supposedly has a reasonable basis, it should be no problem for Aerotel to identify those devices or services it has examined and is now accusing.[11]

---

[10]      The allegation against AT&T Corp. (Complaint ¶ 30) omits the words "wireline and" that are present in all other repetitions of this allegation.  Presumably, that is because AT&T Corp. executed a license with respect to certain wireline services.  See Zammit Decl. ¶ 2.

[11]      "If a plaintiff cannot describe with some specificity the product he claims infringes his patent, there is reason to question whether such a certification [of compliance with Rule 11] is true."  Bay Industries Inc. v. Tru-Arx Mfg., LLC, No. 06-civ-1010, 2006 U.S. Dist. LEXIS 86757 at *6 (E.D. Wis. Nov. 29, 2006) (granting Rule 12(e) motion).

**B.    AEROTEL'S FAILURE TO IDENTIFY HOW EACH DEFENDANT IS BEING ACCUSED OF INFRINGING JUSTIFIES DISMISSAL OF ITS COMPLAINT**

Aerotel's failure to specify what Defendants are being accused of having done, or what products supposedly infringe, renders the Complaint fatally defective.  In <u>Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.</u>, 203 F.3d 790, 794 (Fed. Cir. 2000), the Federal Circuit held that to put a defendant on sufficient notice of the claims against it so that it could answer, and have the Complaint thereby survive a Rule 12(b)(6) motion, the complaint must at least allege: (1) ownership of the asserted patent; (2) the names of each individual defendant; (3) the patent that is allegedly infringed; (4) the means by which the defendants allegedly infringe; and (5) the specific sections of the patent law invoked.[12]   Here, Aerotel's Complaint does not satisfy the second, third or fourth elements.

As to the second element, while Aerotel's Complaint does name the "defendants," it makes it clear that the named Defendants might not actually be the parties being accused of infringing.  Rather, each Defendant is vaguely accused of "using, offering to sell, supplying or causing to be supplied . . . and/or selling, and actively inducing others to use, offer to sell, supply or cause to be supplied . . . ."  These allegations do not inform the Defendants whether they are being accused of direct infringement or whether they are simply being accused of somehow "inducing" some unidentified third party's infringement or contributing to some unidentified third-party's infringement.

The same allegations confound the third element, the "means by which the defendants allegedly infringe."  <u>Phonometrics</u>, <u>supra</u>, 203 F.3d at 794.  Aerotel not only fails to identify whether Defendants use, sell, supply, infringe or induce infringement, but fails to identify which

---

[12]      While <u>Phonometrics</u> applied Eleventh Circuit law, its recitation of the requirements for pleading patent infringement have been cited in almost every circuit.  <u>E.g.</u>, <u>Home & Nature, Inc. v. Sherman Specialty Co.</u>, 322 F. Supp. 2d 260, 265 (E.D.N.Y. 2004).

"products" or "services" supposedly infringe.  In the latter regard, it is not particularly enlightening that Aerotel specifies "prepaid wireline and wireless telecommunication products and services," because it is not even clear whether that purports to describe products or services of the Defendants or of a third-party.  Moreover, to the extent that the phrase has any meaning at all, and to the extent that it is intended to refer to products or services offered by some of the Defendants, it generically describes a multitude of different products and platforms that have changed substantially over the years. (See Zammit Decl. ¶ 3.)  Of course, if Defendants are being accused of inducing or contributing to some unidentified third-party's supposed infringement, then there is absolutely no way for them to even begin to guess as to what the infringing products or services might be.

Finally, the Complaint does not satisfy the fourth element, the "specific sections of the patent law invoked."  Phonometrics, 203 F.3d at 794.  Rather, the Complaint merely refers to the patent law in general (Complaint ¶ 4 ("Title 35, United States Code")) and its allegations cover all bases – "using, offering to sell" seemingly invokes 35 U.S.C. § 271(a), or (c); "supplying or causing to be supplied from the United States" seemingly invokes 35 U.S.C. § 271(f)(1) or (2); and "actively inducing others" seemingly invokes 35 U.S.C. § 271(b), but it is also possible that Aerotel has some completely different provisions in mind.

In short, the Complaint informs Defendants only that Aerotel claims to have a patent and that Aerotel thinks that Defendants did something that gives rise to liability.  Even under the liberal pleading standard of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), by which "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," courts have not hesitated to dismiss infringement claims that were no worse than Aerotel's here. See, e.g., DePaul v. General Instrument Corp., No. 91-civ-1901, 1991 U.S. Dist. LEXIS 4077

31353438.1                                    19

(S.D.N.Y. April 3, 1991) (dismissing infringement complaint which failed to specify how defendant allegedly infringed the patent), aff'd, 1994 U.S. App. LEXIS 31617 (Fed. Cir. Nov. 10, 1994); Catapano v. Wyeth Ayerst Pharmaceuticals, Inc., 88 F. Supp. 2d 27, 29-30 (E.D.N.Y. 2000) (dismissing infringement complaint that does not identify the particular type of patent infringement being claimed and where the allegations failed to allege the facts from which direct infringement, inducement or contributory infringement could be found).

For example, in Gen-Probe, Inc. v. Amoco Corp., 926 F. Supp. 948 (S.D. Cal. 1996), the plaintiff's complaint contained allegations almost identical to Aerotel's here:

> Upon information and belief, [each of the defendants] . . . are willfully and deliberately infringing the '330 Patent or contributing to or inducing said infringement in the United States, and within this district, by making, using, selling and/or offering for sale products and/or kits without the authority . . . .

926 F. Supp. at 960 n.19. The court dismissed the complaint on two grounds. First, because the complaint, like Aerotel's here, "fails to provide fair notice of what the plaintiff's claims are" in that "[e]ach of the five defendants is accused of each of the three different types of infringement" and, consequently, "[i]t is unclear which of the five is accused of which type of infringement." Id. at 960. "Even if there were no other deficiencies, this confusion of which claims apply to which defendants would require that the complaint be dismissed with leave to file an amended complaint." Id. at 961.

Second, the Gen-Probe court held that "[e]ven under liberal notice pleading, the plaintiff must provide facts that 'outline or adumbrate' a viable claim for relief, not mere boilerplate sketching out the elements of a cause of action." 926 F. Supp at 961. Consequently, "[f]iling a patent infringement action pointing vaguely to 'products and/or kits' . . . does not provide adequate notice as required by the Rules." Id. at 962. Compare Aerotel's Complaint ¶¶ 28, 30, 32, 34, 36 which vaguely identifies only "prepaid telecommunications products or services."

Other courts have dismissed similar complaints that failed to meaningfully identify the accused products.  See, e.g., Hewlett-Packard Co. v. Intergraph Corp., No. 03-civ-2517, 2003 U.S. Dist. LEXIS 26092 *6 (N.D. Cal. Sept. 6, 2003) ("making, using, offering to sell and/or selling infringing software and hardware products without authority"); Ondeo, Nalco Co. v. Eka Chemicals, Inc., No. 01-civ-537, 2002 U.S. Dist. LEXIS 26195 *4 n.2 (D. Del. June 10, 2002) (complaint's reference to "products, . . . that are used in paper-making process . . ." or 'to make paper'" is "too vague to provide . . . notice of which products are accused" and further dismissing the inducement claim because the pleading did not identify the direct infringer); Windy City Innovations, LLC v. America Online, Inc., 227 F.R.D. 278, 282 (N.D. Ill. 2005) (dismissing claim directed to unnamed products and circumstances).

### C.    AT A MINIMUM, AEROTEL SHOULD BE DIRECTED TO PROVIDE A MORE DEFINITE STATEMENT AS TO HOW THE DEFENDANTS SUPPOSEDLY INFRINGE

When courts have declined to dismiss similarly vague pleadings, they have generally done so in reliance upon the statement in Conley v. Gibson, supra, (or other decisions citing it), that complaints should not be dismissed unless there is "no set of facts" which plaintiff could prove to support its claim.  355 U.S. at 45-56.  The Supreme Court, however, has recently disavowed the "no set of facts" standard, holding that "this famous observation has earned its retirement.  The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard." Twombly, supra, 127 S.Ct. at 1969.[13]  In light of this recent pronouncement of the Supreme Court, those courts that have been willing in the past to countenance complaints that failed to give defendants notice of what they are accused of having done should no longer be

---

[13]    More recently, the Second Circuit, in Iqbal v. Hasty, supra, interpreted Twombly as imposing a "plausibility standard" on pleading.  2007 U.S. App. LEXIS 13911 *35.  There is, of course, no way to consider the plausibility of Aerotel's infringement claims when it does not even identify the supposedly infringing products or services.

so lenient.

Nevertheless, even those courts that read <u>Conley</u> literally and, therefore, declined to dismiss complaints despite their vagueness, frequently granted Rule 12(e) motions for more definite statements recognizing that a defendant could not reasonably be expected to respond to an infringement complaint when it was not informed of what was supposedly infringing.  <u>E.g.</u>, <u>Agilent Technologies, Inc v. Micromuse, Inc.</u>, No. 04-civ-3090, 2004 U.S. Dist. LEXIS 20723 at *14 (S.D.N.Y. Oct. 19, 2004) ("courts have considered Rule 12(e) relief appropriate in patent infringement cases where a plaintiff has failed to identify any allegedly infringing product or products"); <u>Williams Advanced Materials, Inc. v. Target Tech. Co., LLC</u>, No. 03-civ-00276A, 2007 U.S. Dist. LEXIS 28018 at *6 (W.D.N.Y. April 16, 2007) (defendants "cannot realistically be expected to frame a responsive pleading . . . in the absence of any indication as to which of [their] products are accused," quoting <u>eSoft, Inc. v. Astaro Corp.</u>, No. 06-civ-441, 2006 U.S. Dist LEXIS 52336 at *4 (D. Colo. July 31, 2006)); <u>Bay Industries Inc.</u>, <u>supra</u>, 2006 U.S. Dist. LEXIS 86757 at *5 ("Defendant should not have to guess which of its products infringe").[14]

Aerotel's blunderbuss pleading, which names ten defendants (and ten additional "John

---

[14]    The Court in <u>Hewlett-Packard</u>, <u>supra</u>, also explained that Form 16 of the Federal Rules of Civil Procedure, which proposes a complaint that simply accuses a defendant's "electric motors" of infringing, makes sense where the hypothetical defendant had only a few products in the category, but makes no sense when a defendant has multiple products such that "electric motors" would not be meaningfully specific.  2003 U.S. Dist. LEXIS 26092 at *6.  <u>See</u> <u>also</u> <u>In re Papst Licensing GmbH Patent Litig.</u>, No. MDL 1298, 2001 U.S. Dist. LEXIS 2255 at *4 (E.D. La. Feb. 22, 2001) ("It is apparent, however, that the number of patents and products in the case before me are far greater than those contemplated in the [Form 16] sample complaint, which would justify a request for greater specificity").  As noted above, a general term like "prepaid wireline and wireless telecommunications products and services," arguably could refer to a multitude of different things which have changed substantially over the years in terms of technology and platforms (Zammit Decl. ¶ 3) and which, according to the Complaint itself, might not even be products or services offered by any of the Defendants themselves.  Other courts which have acquiesced in vague pleadings generally did so in reliance upon the now discredited <u>Conley v. Gibson</u> "any set of facts" standard and in situations where the identity of the accused product was not in dispute.  <u>E.g.</u>, <u>Home & Nature</u>, <u>supra</u>, 322 F. Supp. 2d at 265.

Does") without identifying what each Defendant is being accused of having done (i.e., whether directly infringing, contributing to infringement, or inducing infringement), and does not even identify which products or services of which Defendants – or possibly of unnamed third parties – supposedly infringe, leaves Defendants with no way to meaningfully respond to the Complaint. The Complaint is, therefore, deficient as a matter of law and should be dismissed under Rule 12(b)(6) or, at a minimum, supplemented with a more definitive statement pursuant to Rule 12(e).

### III.  PLAINTIFFS AEROTEL U.S.A., INC. AND AEROTEL U.S.A. , LLC DO NOT HAVE STANDING TO ASSERT THE INFRINGEMENT CLAIM

The Complaint (Zammit Decl. Exhibit B) asserts a single claim for infringement of the '275 Patent on behalf of all three Plaintiffs.  Paragraph 1 of the Complaint alleges that Plaintiff "Aerotel, Ltd. is the sole owner of all rights conferred by the '275 Patent and all foreign patents corresponding thereto."[15]   As that necessarily means that neither of the other two named Plaintiffs, Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC, have any ownership interest in the '275 Patent, they do not have standing to assert an infringement claim and their respective claims should, therefore, be dismissed.

Generally, only a patentee, or successors in title to the patent, have the right to sue for infringement.  35 U.S.C. §§ 100(d) and 281.  "To bring an action for patent infringement, a party must be either the patentee, a successor in title to the patentee, or an exclusive licensee of the patent at issue."  Fieldturf, Inc. v. Southwest Rec. Indus., 357 F.3d 1266, 1268 (Fed. Cir. 2004). Thus, while an exclusive licensee, holding "all substantial rights" under the patent is effectively an "assignee" who can bring suit in its own name, Textile Prods. v. Mead Corp., 134 F.3d 1481,

---

[15]     As noted above at n.2, Aerotel Ltd.'s allegation that it owns the patent is being challenged in several forums.  For purposes of this motion, however, Aerotel Ltd.'s assertion of ownership is assumed to be true.

1484 (Fed. Cir. 1998), and an exclusive licensee that does not have all substantial rights can still sue as a co-plaintiff with the patentee, id., Plaintiffs' own Complaint conclusively establishes that Aerotel U.S.A., Inc. and Aerotel U.S.A., LCC do not fit into either category: it alleges that Aerotel, Ltd. is, alone, "the sole owner of all rights conferred by the '275 Patent." (Complaint ¶ 1.)[16]

Further, the Complaint identifies Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC as merely "the exclusive managing agents of Aerotel, Ltd., responsible for licensing and enforcing Aerotel, Ltd.'s ['275 Patent]." (Complaint ¶ 10.)  This status gives those entities no right to sue for infringement, not even as co-plaintiffs with the patentee.  To the extent that there ever was any doubt about this at all, it was completely dispelled by the Federal Circuit in Propat Int'l Corp. v. RPost US, Inc., 473 F.3d 1187 (Fed. Cir. 2007), decided three months *before* Plaintiffs filed their Complaint herein.

In Propat, the plaintiff had been delegated "the responsibility to license the patent to third parties, to enforce the licensing agreements, and to sue infringers."  473 F.3d at 1190.  The Federal Circuit held that despite the delegation to plaintiff of certain rights and responsibilities with respect to the patent, the fact that it had not been given "all substantial rights" in the patent meant that it had no standing to sue in its own name for infringement.  Id. at 1190-91.  Further, the Federal Circuit held that such party had no right to sue even as co-plaintiff with the patent owner.  Id. at 1194.

In light of Propat, Plaintiffs' allegation that Aerotel, Ltd. "is the sole owner of all rights" in the patent, and that neither Aerotel U.S.A. entity is an exclusive licensee, is fully dispositive.

---

[16]     Neither Aerotel U.S.A., Inc. nor Aerotel U.S.A., LLC is the exclusive licensee.  They cannot contend otherwise as Aerotel, Ltd. and Aerotel U.S.A., Inc. have contended, in a separate action before this Court (as well as an ICDR arbitration), that they licensed the '275 Patent to AT&T Corp.  See Zammit Decl. ¶ 2.

Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC lack standing to sue, even as co-plaintiffs with the patent owner, and their claims should be dismissed.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the motion of AT&T Inc. and BellSouth Corporation to dismiss this action as against them for lack of personal jurisdiction, the motion of all Defendants to dismiss the action for failure to state a claim, and the motion of all Defendants to dismiss the claims of Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC for lack of standing, should be granted in their entirety.

Dated: New York, New York
        August 10, 2007

FULBRIGHT & JAWORSKI, L.L.P.


By: /s/ Joseph P. Zammit
        Joseph P. Zammit
        Edward P. Dolido

666 Fifth Avenue, 31st Floor
New York, New York  10103-3198
Telephone:  (212) 318-3000

Attorneys for Defendants