**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AEROTEL, LTD., AEROTEL U.S.A., INC. and AEROTEL U.S.A., LLC, <br><br> Plaintiffs, <br><br> -v- <br><br> AT&T INC. (formerly SBC Communications, Inc.), BELLSOUTH CORPORATION, AT&T CORP., AT&T LONG DISTANCE, LLC (formerly SBC Long Distance, LLC), AT&T MOBILITY CORPORATION (formerly Cingular Wireless Corporation), AT&T MOBILITY LLC (formerly Cingular Wireless LLC), NEW CINGULAR WIRELESS SERVICES, INC. (formerly AT&T Wireless Services, Inc.), CINGULAR WIRELESS II, LLC (formerly Cingular Wireless II, Inc.), NEW CINGULAR WIRELESS PCS, LLC (formerly BellSouth Mobility, LLC), BELLSOUTH MOBILITY DCS, INC., BELLSOUTH TELECOMMUNICATIONS, INC., d/b/a AT&T SOUTHEAST, and BELLSOUTH LONG DISTANCE, INC. d/b/a AT&T LONG DISTANCE SERVICE, <br><br> Defendants. | ELECTRONICALLY FILED <br><br><br><br><br> Civil Action No. 07-Civ-3217 (RJH) |

**MEMORANDUM OF LAW IN SUPPORT OF (1) MOTION OF DEFENDANTS AT&T INC. AND BELLSOUTH CORPORATION TO DISMISS THE AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION; (2) MOTION OF ALL DEFENDANTS TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT; AND (3) MOTION OF ALL DEFENDANTS TO DISMISS THE CLAIMS OF AEROTEL U.S.A., INC. AND AEROTEL U.S.A., LLC FOR LACK OF STANDING**

**FULBRIGHT & JAWORSKI L.L.P.**
Joseph P. Zammit
Edward P. Dolido
666 Fifth Avenue                                    -and-
New York, New York  10103
Tel:    (212) 318-3000
Fax:    (212) 318-3400

Attorneys for Defendants
AT&T, Inc. BellSouth Corporation, AT&T Corp., SBC Long Distance, LLC (incorrectly named herein as AT&T Long Distance, LLC), AT&T Mobility Corporation, AT&T Mobility LLC, New Cingular Wireless Services, Inc., Cingular Wireless II, LLC, New Cingular Wireless PCS LLC, BellSouth Mobility DCS, Inc. and BellSouth Telecommunications, Inc.

**HUNTON & WILLIAMS LLP**
Shawn Patrick Regan
200 Park Avenue
New York, NY  10166
(212) 309-1000

Attorneys for Defendant
BellSouth Long Distance, Inc.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

Preliminary Statement ........................................................................................ 1

FACTS ................................................................................................................. 3

ARGUMENT ...................................................................................................... 6

I.    AT&T INC. AND BELLSOUTH CORPORATION ARE NOT SUBJECT TO
      THE PERSONAL JURISDICTION OF THIS COURT ................................... 6

      A.    AEROTEL HAS THE BURDEN OF ESTABLISHING A PRIMA FACIE
            BASIS FOR PERSONAL JURISDICTION ......................................... 6

      B.    AEROTEL'S ALLEGATIONS DO NOT ESTABLISH A PRIMA FACIE
            BASIS OF JURISDICTION ............................................................. 8

            1.    Aerotel Has Not Established That Any Subsidiary Is The "Agent"
                  Of AT&T Inc. Or Of BellSouth Corporation ........................... 12

            2.    Aerotel Has Not Established That Any Subsidiary Is A "Mere
                  Department" Of AT&T Inc. Or Of BellSouth Corporation ........ 13

            3.    Aerotel Cannot Use Its Inadequate Pleading To Justify A Fishing
                  Expedition ........................................................................ 16

II.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST ANY
      DEFENDANT BECAUSE IT FAILS TO IDENTIFY THE ALLEGEDLY
      INFRINGING PRODUCTS OR SERVICES AND FAILS TO DISCLOSE HOW
      EACH DEFENDANT SUPPOSEDLY INFRINGED ...................................... 18

      A.    IF AEROTEL HAS COMPLIED WITH RULE 11, IT MUST ALREADY
            KNOW WHICH PRODUCTS OR SERVICES IT IS ACCUSING AND
            HOW IT BELIEVES THEY INFRINGE ............................................. 20

      B.    AEROTEL'S FAILURE TO IDENTIFY HOW EACH DEFENDANT IS
            BEING ACCUSED OF INFRINGING JUSTIFIES DISMISSAL OF ITS
            COMPLAINT .............................................................................. 20

      C.    AT A MINIMUM, AEROTEL SHOULD BE DIRECTED TO PROVIDE
            A MORE DEFINITE STATEMENT AS TO HOW EACH DEFENDANT
            SUPPOSEDLY INFRINGES ........................................................... 25

      D.    INSISTENCE ON A MEANINGFUL PLEADING IS NOT MERELY A
            FORMALISTIC EXERCISE ........................................................... 26

III.  PLAINTIFFS AEROTEL U.S.A., INC. AND AEROTEL U.S.A., LLC DO NOT
      HAVE STANDING TO ASSERT THE INFRINGEMENT CLAIM ................. 27

CONCLUSION .................................................................................................. 29

# TABLE OF AUTHORITIES

## Cases

*Aerotel Ltd. v. Sprint Corp.*,
  100 F. Supp. 2d 189 (S.D.N.Y. 2000) ..................................................................... 17

*Agilent Technologies, Inc v. Micromuse, Inc.*,
  No. 04-civ-3090, 2004 U.S. Dist. LEXIS 20723 (S.D.N.Y. Oct. 19, 2004) ............................ 25

*Anticancer Inc. v. Xenogen Corp.*,
  No. 05-cv-0448, 2007 U.S. Dist. LEXIS 59811 (S.D. Cal., Aug. 13, 2007) ............................ 25

*Bay Industries Inc. v. Tru-Arx Mfg., LLC*,
  No. 06-civ-1010, 2006 U.S. Dist. LEXIS 86757 (E.D. Wis. Nov. 29, 2006) ..................... 20, 25

*Bell Atlantic Corp. v. Twombly*,
  127 S.Ct. 1955 (2007) ...................................................................................... passim

*Bensusan Rest. Corp. v. King*,
  937 F. Supp. 295 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997) ...................... 7

*Berwick v. New World Int'l, Ltd.*,
  No. 06-civ-2641, 2007 U.S. Dist. LEXIS 22995 (S.D.N.Y., Mar. 28, 2007) ........................ 6, 7

*Bulova Watch Co., Inc. v. K. Hattori & Co., Ltd.*,
  508 F. Supp. 1322 (E.D.N.Y. 1981) ...................................................................... 12

*Catapano v. Wyeth Ayerst Pharmaceuticals, Inc.*,
  88 F. Supp. 2d 27 (E.D.N.Y. 2000) ...................................................................... 22

*Conley v. Gibson*,
  355 U.S. 41 (1957) .................................................................................. 22, 24, 25

*DePaul v. General Instrument Corp.*,
  No. 91-civ-1901, 1991 U.S. Dist. LEXIS 4077 (S.D.N.Y. 1991),
  *aff'd*, 1994 U.S. App. LEXIS 31617 (Fed. Cir. Nov. 10, 1994) ................................. 22

*eSoft, Inc. v. Astaro Corp.*,
  No. 06-civ-441, 2006 U.S. Dist LEXIS 52336 (D. Colo. Jul. 31, 2006) ................................. 25

*Fieldturf, Inc. v. Southwest Re. Indus.*
  357 F.3d 1266 (Fed. Cir. 2004) ...................................................................... 28

*Fort Knox Music, Inc. v. Baptiste*,
  139 F. Supp. 2d 505 (S.D.N.Y. 2001) ...................................................................... 7

# TABLE OF AUTHORITIES
## (continued)

**Cases**           **Page**

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*,
   No. 06-civ-1125, 2007 U.S. Dist. LEXIS 23553 (S.D.N.Y. March 29, 2007) ........................ 17

*Frummer v. Hilton Hotels Int'l, Inc.*,
   19 N.Y.2d 533, 281 N.Y.S.2d 41 (1967) ................................................................ 12

*Gen-Probe, Inc. v. Amoco Corp.*,
   926 F. Supp. 948 (S.D. Cal. 1996) ............................................................... 22, 23

*Hewlett-Packard Co. v. Intergraph Corp.*,
   No. 03-civ-2517, 2003 U.S. Dist. LEXIS 26092 (N.D. Cal. Sept. 6, 2003) ..................... 23, 24

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
   763 F.2d 55 (2d Cir. 1985) ................................................................................ 7

*Home & Nature, Inc. v. Sherman Specialty Co.*,
   322 F. Supp. 2d 260 (E.D.N.Y. 2004) ........................................................... 21, 25

*In re Papst Licensing GmbH Patent Litig.*,
   No. MDL 1298, 2001 U.S. Dist. LEXIS 2255 (E.D. La. Feb. 22, 2001) ............................... 24

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2002*,
   230 F. Supp. 2d 403 (S.D.N.Y. 2002) .................................................................... 17

*Iqbal v. Hasty*,
   490 F.3d 143 (2d Cir. 2007) ................................................................. 15, 24, 25

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*,
   131 F. Supp. 2d 544 (S.D.N.Y. 2001) ............................................................. 14, 15

*Jazini v. Nissan Motor Co., Ltd.*,
   148 F.3d 181 (2d Cir. 1998) ..................................................................... passim

*Judin v. U.S.*,
   110 F.3d 780 (Fed. Cir. 1997) .......................................................................... 20

*Kashfi v. Phibro-Salomon, Inc.*,
   628 F. Supp. 727 (S.D.N.Y. 1986) ..................................................................... 12

*Krepps v. Reiner*,
   414 F. Supp. 2d 403 (S.D.N.Y. 2006) ................................................................... 6

*Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*,
   918 F.2d 1039 (2d Cir. 1990) ............................................................................ 7

# TABLE OF AUTHORITIES
## (continued)

**Cases**                                                               **Page**

*McGowan v. Smith*,
52 N.Y.2d 268, 437 N.Y.S.2d 643 (1981) .................................................................................. 7

*MedPay Sys., Inc. v. MedPay USA, LLC*,
No. 06-civ-1054, 2007 U.S. Dist. LEXIS 30201 (E.D.N.Y. Mar. 29, 2007) ........................... 7

*Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*,
425 F. Supp. 2d 402 (S.D.N.Y. 2006) .............................................................................. 6, 7, 8

*Ondeo, Nalco Co. v. Eka Chemicals, Inc.*,
No. 01-civ-537, 2002 U.S. Dist. LEXIS 26195 (D. Del. Jun. 10, 2002) ................................ 24

*Overseas Media, Inc. v. Skvortsov*,
407 F. Supp. 2d 563 (S.D.N.Y. 2005) .................................................................................. 10

*Papasan v. Allain*,
478 U.S. 265 (1986) .............................................................................................................. 15

*PDK Labs, Inc. v. Friedlander*,
103 F.3d 1105 (2d Cir. 1997) ................................................................................................ 7

*Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*,
203 F.3d 790 (Fed. Cir. 2000) ................................................................................... 20, 21, 22

*Propat Int'l Corp. v. RPost US, Inc.*,
473 F.3d 1187 (Fed. Cir. 2007) ....................................................................................... 28, 29

*Puerto Rico Maritime Shipping Authority v. Almogy*,
510 F. Supp. 873 (S.D.N.Y. 1981) ........................................................................................ 10

*Saraceno v. S.C. Johnson and Son, Inc.*,
83 F.R.D. 65 (S.D.N.Y. 1979) ............................................................................................... 14

*Schenker v. Assicurazioni Generali S.p.A., Consol.*,
No. 98-civ-9186, 2002 U.S. Dist. LEXIS 12845 (S.D.N.Y. Jul. 11, 2002) ........................ 7, 13

*Sodepac, S.A. v. M/V Choyang Park*,
No. 02-civ-3927, 2002 U.S. Dist. LEXIS 19360 (S.D.N.Y. Oct. 9, 2002) .............................. 17

*Stewart v. Vista Point & Verlag Ringier Publishing*,
No. 99-civ-4225, 2000 U.S. Dist. LEXIS 14236 (S.D.N.Y. Sep. 29, 2000) ....................... 6, 17

*Stutts v. De Dietrich Group*,
465 F. Supp. 2d 156 (E.D.N.Y. 2006) .................................................................. 13, 14, 15, 17

# TABLE OF AUTHORITIES
### (continued)

| Cases | Page |
|---|---|

*Textile Prods. v. Mead Corp.*,
    134 F.3d 1481 (Fed. Cir. 1998) .................................................................. 28

*View Engineering, Inc. v. Robotic Vision Systems, Inc.*
    208 F.3d 981 (Fed. Cir. 2000) .................................................................... 20

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
    751 F.2d 117 (2d Cir. 1984) ................................................................... 13, 14

*Williams Advanced Materials, Inc. v. Target Tech. Co.*,
    No. 03-civ-00276A, 2007 U.S. Dist. LEXIS 28018 (W.D.N.Y. Apr. 16, 2007)..................... 25

*Windy City Innovations LLC v. America Online, Inc.*,
    227 F.R.D. 278 (N.D. Ill. 2005)................................................................ 24

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000) ..................................................................... 12

## Statutes & Administrative Codes

35 U.S.C. § 100(d) ................................................................................ 28

35 U.S.C. § 281..................................................................................... 28

## Rules

Fed. R. Civ. P. 11 ............................................................................. 20, 26

Fed. R. Civ. P. 12(b)(2)........................................................................ 1, 16

Fed. R. Civ. P. 12(b)(6)........................................................................ 1, 26

Fed. R. Civ. P. 12(e) ........................................................................ 1, 25, 26

N.Y. C.P.L.R. § 301 ............................................................................... 7

N.Y. C.P.L.R. § 302(a)(1)......................................................................... 7

This Memorandum of Law, together with the accompanying declaration of Edward P. Dolido, dated October 12, 2007 ( the "Dolido Decl."), and the exhibits thereto including copies of the previously filed declarations of Joseph P. Zammit, dated August 10, 2007 (the "Zammit Decl."), Terrence Britt, dated August 6, 2007 (the "Britt Decl."), and James W. Lacy, Jr., dated August 7, 2007 (the "Lacy Decl."), is respectfully submitted:  (1) in support of the motion of AT&T Inc. and BellSouth Corporation to dismiss the Amended Complaint (the "Complaint") against them pursuant to Fed. R. Civ. P. 12(b)(2) on the ground that there is no personal jurisdiction over them since they are not present, and do not conduct business, in New York; (2) in support of the motion of all Defendants to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for a more definite statement pursuant to Fed. R. Civ. P. 12(e), on the ground that the Amended Complaint does not identify any products or services alleged to infringe Plaintiffs' patent or identify what each Defendant is supposed to have done; and (3) in support of the motion of all Defendants to dismiss the claims of Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that neither of those plaintiffs are alleged to own the patent at issue and, therefore, they lack standing to assert infringement claims.

### Preliminary Statement

This is an action for alleged patent infringement brought by Aerotel Ltd. and its two affiliates, Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC (collectively, "Aerotel"), against AT&T Inc. and BellSouth Corporation ("BellSouth") and certain of their affiliates.  The patent at issue is purportedly owned by Aerotel, Ltd.[1] and relates to a system and method for making prepaid telephone calls.

A prior motion to dismiss was filed on August 10, 2007, on grounds similar to those

---

[1]    More accurately, the U.S. Patent was assigned to Aerotel Inc., but there is a question as to whether the inventor possessed any rights to assign.  That question is the subject of pending proceedings in Israel, as well as in this Court (and is likely to be an issue in this action if and when Defendants answer the Complaint).  See n.2, infra.

asserted herein.  Plaintiffs obtained an extension of time to respond and then, on September 17, 2007, the date their response was due, instead filed an Amended Complaint which deleted the "John Doe" defendants and named two more affiliates of AT&T Inc. as defendants.  It also added a few additional allegations "on information and belief," but those additions do nothing to obviate the bases of the original motion to dismiss.  Accordingly, this memorandum addresses the new allegations to the extent relevant, but otherwise reiterates the original arguments while relying upon the previously filed Britt, Lacy and Zammit declarations (for convenience, copies are annexed as Exhibits B, C, and D, respectively, to the accompanying Dolido Decl.).

In this action, Aerotel named AT&T Inc., together with a number of its direct and indirect subsidiaries, as defendants, without regard to whether any of the corporate Defendants have any involvement with products or services that could infringe.  The impropriety of such blunderbuss pleading — naming parties without any reasonable basis for doing so — is underscored by the fact that Plaintiffs originally failed to specify *any* products or systems that allegedly infringe their patent and, in their amended pleading, they are only marginally less vague: they still fail to reasonably identify the particular products or systems that allegedly infringe and, instead, state only that their Complaint is directed to "(and not limited to) those marketed under [three] brand names" by a subset of the named Defendants.  (Complaint ¶ 37.)  As a number of the Defendants have no products or services at all, let alone ones that arguably could infringe, and the remaining Defendants have a multitude of products and services, and therefore have not been provided with the requisite notice as to what activities allegedly infringe, or how, and none of the Defendants have been informed of what patent claims they are supposedly infringing, the Complaint fails to state a claim upon which relief can be granted as against any of them.

In addition, two of the Defendants, AT&T Inc. and its subsidiary BellSouth, are merely corporate holding companies that offer no products or services of any kind to the public.  Neither is located in New York.  As these two Defendants are not present here and do not conduct

business here, neither is subject to personal jurisdiction here and the Complaint against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

Finally, the Complaint itself alleges (at ¶ 1) that plaintiff "Aerotel, Ltd. is the sole owner of all rights conferred by the [patent at issue]." As that necessarily means that neither of the two named plaintiffs, Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC, have any ownership interest in the patent, neither has standing to assert the infringement claims pleaded in the Complaint.

## FACTS

This is an action for purported infringement of U.S. Patent No. 4,706,275 (the "'275 Patent") directed to systems and methods for making prepaid telephone calls. (Complaint ¶ 1.)[2] AT&T Corp. had licensed the patent and a separate dispute over the royalties due under the license agreement is pending in both an International Centre for Dispute Resolution arbitration and in a separate declaratory judgment action in this Court. AT&T Corp. v. Aerotel, Ltd., No. 07-cv-2294 (RJH). In both the declaratory judgment action and in the arbitration, Aerotel had joined AT&T Corp.'s parent, AT&T Inc., as a party to the lawsuit despite the fact that AT&T Inc. is not itself a party to the license agreement, and does not manufacture or sell any products or services itself, but is merely a holding company which owns other corporate entities. (See Zammit Decl. ¶ 2.) AT&T Inc. moved to dismiss the claim asserted against it in the declaratory judgment action for, inter alia, lack of personal jurisdiction and, in response to that Motion, Aerotel filed a "Notice of Voluntary Dismissal" as to AT&T Inc. on September 17, 2007. On

---

[2]      A copy of Aerotel's Amended Complaint filed September 17, 2007 (without its exhibits) (the "Complaint") is annexed as Exhibit A to the accompanying Dolido Decl. As noted previously, there is a substantial question as to whether any of the Plaintiffs actually owns the patent such that it can sue for infringement, and that question is pending before a court in Israel as well as in separate actions before this Court. See AT&T Corp.'s Amended Declaratory Judgment Complaint (docket No. 3) ¶ 14, filed in AT&T Corp. v. Aerotel, Ltd., No. 07-cv-2294 (RJH) (S.D.N.Y); Orders dated March 8, 2007 (docket no. 142) and June 7, 2007 (docket no. 151) in Aerotel, Ltd. v. IDT Corporation, No. 03-cv-06496 (RJH) (S.D.N.Y.).

October 3, 2007, Aerotel filed a second amended demand for arbitration dropping AT&T Inc. as a party in the arbitration. (Dolido Decl. ¶ 4.)[3]

In this action, Aerotel is now suing AT&T Corp. for patent infringement with respect to activities that allegedly were not licensed under the patent license agreement that is the subject of the arbitration and declaratory judgment action, and is similarly suing certain of its affiliates. (See Complaint (Dolido Decl. Exhibit A).) However, following the same pattern as in the arbitration and declaratory judgment action (but not yet voluntarily backing off as it did in those proceedings), Aerotel has named not just telephone operating companies that could have theoretically infringed the patent, but has also named numerous affiliates and their parent holding companies, AT&T Inc. and BellSouth. Id.

### AT&T Inc.

AT&T Inc. is a Delaware corporation, with its principal and only place of business in San Antonio, Texas. (Britt Decl. ¶ 2.) It is a holding company managed by a board of 16 directors; it has only approximately 18 officers and has no employees. (Britt Decl. ¶ 2.) AT&T Inc. conducts no business with the public. (Britt Decl. ¶ 5.) AT&T Inc. does not own or maintain a telecommunications network, and it does not provide telecommunications services. (Britt Decl. ¶ 6.) AT&T Inc. does not make or sell products or services of any kind in any state or jurisdiction and, therefore, has no sales representatives or distributors as it produces nothing to sell or distribute. (Britt Decl. ¶ 6.) AT&T Inc. is a legally and factually separate corporate entity, distinct from each of its hundreds of subsidiaries. (Britt Decl. ¶ 5.) Each of AT&T Inc.'s subsidiaries maintains its own independent corporate, partnership or limited liability company

---

[3]       In that declaratory judgment action, Aerotel sought to justify naming AT&T Inc. solely by speculating that AT&T Inc. "controls [AT&T Corp.] and is a successor to substantially all of the business and assets of [AT&T Corp.]," although Aerotel's counsel has also admitted that it is "unclear as to what extent AT&T [Inc.] has removed or otherwise transferred the assets of [AT&T Corp.]." See Letter dated June 22, 2007, from Glenn F. Ostrager to the Court, annexed as Zammit Decl. Exhibit A. Apparently, it is through similarly unfounded and conclusory allegations of "control" that Aerotel seeks to justify naming AT&T Inc. and BellSouth in this action.

status, identity and structure.  (Britt Decl. ¶ 5.)  AT&T Inc. is not qualified to do business in New York, does not have an office, a telephone number, employees or agents, in New York, and it does not own real property in New York or pay taxes in New York.  (Britt Decl. ¶¶ 8-10.)

AT&T Inc. was previously known as "SBC Communications Inc." and changed its name shortly after it acquired AT&T Corp. on November 18, 2005, through a merger between one of its subsidiaries and AT&T Corp. (Britt Decl. ¶ 4.)  That acquisition took place after the '275 Patent had expired.  (Complaint ¶ 2.)  After the acquisition, AT&T Corp. remained an operating company that provides long-distance telephone and other telecommunications services; it did not transfer any of its operating assets or liabilities to AT&T Inc., and AT&T Inc. did not become a successor to AT&T Corp. (Britt Decl. ¶ 7.)  Similarly, after acquiring the stock of BellSouth Corporation on December 29, 2006, long after expiration of the '275 Patent, AT&T Inc. did not receive any of the operating assets of BellSouth and BellSouth continues to operate as a separate corporate subsidiary.  (Britt Decl. ¶¶ 4, 5, 7.)

<u>**BellSouth Corporation**</u>

On December 29, 2006 (over one year after expiration of the '275 Patent), AT&T Inc. acquired BellSouth by merging one of its subsidiaries into BellSouth.   (Britt Decl. ¶ 4.) BellSouth is a Georgia corporation, with its principal and only place of business in Atlanta, Georgia.  (Lacy Decl. ¶ 2.)  It is a holding company, managed by a board of 2 directors and by approximately 24 officers.   (Lacy Decl. ¶¶ 2, 3.)   It does not own or maintain a telecommunications network, and it does not provide telecommunications services.   (Lacy Decl. ¶ 7.)  BellSouth does not make or sell products or services of any kind in any state or jurisdiction and, therefore, has no sales representatives or distributors as it produces nothing to sell or distribute.  (Lacy Decl. ¶ 7.)  BellSouth is a legally and factually separate corporate entity, distinct from each of its own subsidiaries and from its corporate parent, AT&T Inc. (Lacy Decl. ¶¶ 5-11.)  Each of BellSouth's subsidiaries maintains its own corporate, partnership or limited liability status, identity and structure.  (Lacy Decl. ¶ 6.) BellSouth does not have an office, a

telephone number, employees or agents in New York and it does not own real property in New York or pay taxes in New York.  (Lacy Decl. ¶¶ 12-15.)

## ARGUMENT

## I.    AT&T INC. AND BELLSOUTH CORPORATION ARE NOT SUBJECT TO THE PERSONAL JURISDICTION OF THIS COURT

As noted below under Point II, Aerotel has not meaningfully identified the products or services that it claims infringe its patent and it has not even identified how any of the Defendants are supposedly liable for infringement.  Moreover, AT&T Inc. and BellSouth are merely corporate holding companies that do not offer any products or services to the public.  AT&T Inc. (as opposed to AT&T Corp.) and BellSouth are not alleged to have entered into any contract with Aerotel.  Neither maintains a place of business in New York, maintains its books and records in New York, has real property or employees or agents in New York, regularly transacts business in New York, pays taxes in New York, or is authorized to do business in New York. See Britt Decl. at ¶¶ 5-11; Lacy Decl. at ¶¶ 12-15.   Thus, they are not subject to personal jurisdiction in this Court.

### A.    AEROTEL HAS THE BURDEN OF ESTABLISHING A PRIMA FACIE BASIS FOR PERSONAL JURISDICTION

Where, as here, the jurisdictional issue is raised in an initial Rule 12(b)(2) motion before discovery, Aerotel has the burden of establishing a *prima facie* basis for jurisdiction through the complaint's allegations and affidavits.  E.g., Krepps v. Reiner, 414 F. Supp. 2d 403, 406 (S.D.N.Y. 2006).[4]  Submission and consideration of affidavits does not convert the motion into one for summary judgment.  E.g., Merck & Co. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 420 n.11 (S.D.N.Y. 2006); Stewart v. Vista Point & Verlag Ringier Publishing, No. 99-civ-4225, 2000 U.S. Dist. LEXIS 14236, at *4 (S.D.N.Y. Sep. 29, 2000).  In the absence

---

[4]      Even if plaintiff establishes a *prima facie* basis for jurisdiction, an evidentiary hearing eventually will still have to be held, before trial or during trial, and Aerotel will have to prove the jurisdictional facts by a preponderance of the evidence.  Berwick v. New World Int'l, Ltd., No. 06-civ-2641, 2007 U.S. Dist. LEXIS 22995, *27 (S.D.N.Y., Mar. 28, 2007).

of an evidentiary hearing, the uncontested allegations of jurisdictional facts in the complaint will be assumed to be true, but "where a defendant has contested a plaintiff's allegations with 'highly specific, testimonial evidence regarding a fact essential to jurisdiction and plaintiffs do not counter that evidence, the allegation may be deemed refuted.'" MedPay Sys., Inc. v. MedPay USA, LLC, No. 06-civ-1054, 2007 U.S. Dist. LEXIS 30201, at *12 (E.D.N.Y., Mar. 29, 2007) (quoting Schenker v. Assicurazioni Generali S.p.A., Consol., No. 98-civ-9186, 2002 U.S. Dist. LEXIS 12845, at *12 (S.D.N.Y., July 11, 2002)). See also Berwick, supra, 2007 U.S. Dist. LEXIS 22995, at *27; Merck & Co., supra, 425 F. Supp. 2d at 420; Bensusan Rest. Corp. v. King, 937 F. Supp. 295, 298 (S.D.N.Y. 1996), aff'd, 126 F.3d 25 (2d Cir. 1997).

This Court looks to New York's personal jurisdiction rules to ascertain whether AT&T Inc. and BellSouth are subject to jurisdiction here. Fort Knox Music, Inc. v. Baptiste, 139 F. Supp. 2d 505, 509 (S.D.N.Y. 2001) (citing PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997). New York CPLR § 301 provides for "general jurisdiction" when a defendant is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990) (internal quotations omitted). This standard requires that a defendant be present in New York, "not occasionally or casually, but with a fair measure of permanence and continuity." Id. Alternatively, "specific jurisdiction" under New York's long-arm statute, CPLR § 302(a)(1), can exist when a defendant, "in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." However, "[e]ssential to the maintenance of a suit against a nondomiciliary under CPLR 302 (subd. [a], par. 1) is the existence of some articulable nexus between the business transacted and the cause of action sued upon." McGowan v. Smith, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645 (1981). See also Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 59-60 (2d Cir. 1985) (requiring a "substantial nexus" between the business

and cause of action). Regardless of the statutory basis for jurisdiction, the Court must also

confirm that the actual exercise of jurisdiction comports with due process.[5]

### B.     AEROTEL'S ALLEGATIONS DO NOT ESTABLISH A PRIMA FACIE BASIS OF JURISDICTION

In this case, there simply are no allegations as to any facts whatsoever that could support

the assertion of personal jurisdiction over AT&T Inc. and BellSouth under a theory of either

specific jurisdiction or general jurisdiction. Rather, all of the allegations — even the new

"beefed up" allegations of the Amended Complaint — are simply allegations made solely on

"information and belief" merely asserting the legal conclusion that these holding companies

control their subsidiaries and assuming that the subsidiaries' acts (which acts are never

identified) are automatically attributable to the parents. Such naked conclusions of law do not

discharge Aerotel's burden and, furthermore, the conclusions themselves are not merely

unsupported, but are wholly divorced from reality. For example, Aerotel continues to allege in

its Amended Complaint, "upon information and belief,"[6] that:

> AT&T [Inc.], through and with its representatives, subsidiaries,
> affiliates, and distributors, has been a provider of prepaid wireline
> and wireless telecommunications products and services. AT&T
> [Inc.] has done business in this Judicial District and elsewhere
> through its sales representatives, subsidiaries, affiliates and
> distributors.

Complaint ¶ 11. See also Complaint ¶ 23 (same allegations with respect to BellSouth). These

allegations are unjustifiable because Aerotel has been informed, through declarations filed in

respect to the original complaint, that both AT&T Inc. and BellSouth are mere holding

---

[5]     Because Aerotel has not alleged any concrete facts concerning jurisdiction, as discussed below, it is not possible to determine whether assertion of jurisdiction premised upon unspecified facts would satisfy due process. Merck & Co., supra, 425 F. Supp. 2d at 420-21. Accordingly, it is not possible even to address the question at present except to note that obviously due process is not satisfied when, as here, there is no connection at all to the forum state.

[6]     Aerotel prefaces its Complaint by explaining that "Plaintiffs aver upon information and belief" as to all paragraphs except for the six paragraphs describing Aerotel itself and the patent at issue. Dolido Decl. Exh. A at p. 1, introductory paragraph.

companies, which neither manufacture nor sell products or services, and consequently have neither "sales representatives" nor "distributors." See Britt Decl. ¶ 6; Lacy Decl. ¶ 7. Aerotel has no basis to contend otherwise and it is, therefore, inexplicable that it would continue making such allegations in its Amended Complaint when it knows them to be groundless.

Indeed, Aerotel knows that neither AT&T Inc. nor BellSouth is "a provider of prepaid wireline and wireless telecommunications products and services" and has no "sales representatives" or "distributors" as is obvious from the remainder of its own allegations with respect to those entities, because Aerotel goes to some lengths — albeit unsuccessfully — to allege that those entities are subject to jurisdiction or liability because they act "through" their subsidiaries.

Thus, there seem to be three theories of personal jurisdiction over AT&T Inc. and BellSouth potentially embodied in Aerotel's wholly conclusory averments:

Marketing allegedly infringing products and services within this District. (Complaint ¶ 3). This appears to be Aerotel's attempt at alleging specific jurisdiction, inasmuch as Aerotel asserts that unidentified infringing products are marketed within the District. As noted above and explained in the accompanying Britt and Lacy declarations, the fundamental problem is that neither AT&T Inc. nor BellSouth have any products to market, nor do they sell the products of their subsidiaries (or of others) in this District or, for that matter, anywhere.

Doing business in this District through sales representatives, subsidiaries, affiliates, and distributors. (Complaint ¶¶ 11, 23). This may be Aerotel's attempt at alleging general jurisdiction. Again, as noted above, neither AT&T Inc. nor BellSouth has any products to sell and, therefore, no "sales representatives" or "distributors" doing business anywhere, let alone in this District. (Britt Decl. ¶ 6; Lacy Decl. ¶ 7.) That leaves the naked assertion that those entities are somehow doing business in this District "through" their subsidiaries and affiliates — an

assertion which is insufficient as a matter of both law and fact as discussed in detail below.[7]

In fact, there is evidence that Aerotel is no longer trying to allege general jurisdiction over AT&T Inc. and BellSouth at all. Specifically, Aerotel's original complaint in this action (dkt. # 1) alleged that each of AT&T Inc. and BellSouth "has been and *is now doing business* in this Judicial District…." (dkt. # 1, ¶¶ 11, 23; emphasis added). In its Amended Complaint, however, Aerotel has changed the quoted phrase to read: "*has done business* in this Judicial District. . . ." (Complaint ¶¶ 11, 24; emphasis added). By intentionally replacing the present-tense allegations with solely past-tense, Aerotel seems to be admitting that there is no basis for the assertion of general jurisdiction over these entities. See, e.g., Overseas Media, Inc. v. Skvortsov, 407 F. Supp. 2d 563, 568 (S.D.N.Y. 2005) (for general jurisdiction to exist under CPLR 301, the defendant must be "doing business" in the state at the time the action is brought); Puerto Rico Maritime Shipping Authority v. Almogy, 510 F. Supp. 873, 878 (S.D.N.Y. 1981) (it is not sufficient that a defendant previously did business in the state).[8]

AT&T Inc.'s and BellSouth's supposed control over subsidiaries. (Complaint ¶¶ 26, 27, 29, 30, 31). Aerotel's Amended Complaint "beefs up" the allegations of the original complaint in regard to trying to allege jurisdiction over AT&T Inc. and BellSouth by virtue of the acts of their subsidiaries. Those allegations, however, remain wholly conclusory. Specifically, Aerotel has added a new allegation against AT&T Inc.:

---

[7]     It is noteworthy that Aerotel's "doing business" allegation is in fact "boilerplate," and not an attempt to illuminate any special circumstances relating to AT&T Inc. or BellSouth, as the very same allegation is recited with respect to every Defendant, operating companies and holding companies alike. (See Complaint ¶¶ 12, 13, 14, 15, 17, 18, 19, 20, 24, 25.)

[8]     Frankly, it is unclear just what Aerotel is thinking, because it changed the "doing business" allegations against all Defendants from the present-tense to the past-tense — including those allegations made with respect to AT&T Corp., which is a New York corporation indisputably doing business in New York. (See Complaint ¶¶ 12, 13, 14, 15, 17, 18, 19, 20, 24, 25). Nevertheless, it remains true that the current allegations against AT&T Inc. and BellSouth do not actually allege general jurisdiction and cannot allege general jurisdiction because neither company is in fact "doing business" in New York. See Britt Decl. ¶¶ 8-11 and Lacy Decl. ¶¶ 12-15.

26.    At all relevant times, SBC [the prior name of AT&T Inc.] assumed ultimate control and management of all of its subsidiaries. In particular, SBC was solely responsible for its acquisition of corporate entities involved in the provision of prepaid wireline telephone service and was further responsible for the manner in which its subsidiaries were organized and operated to provide prepaid wireline telephone service to customers.  Aerotel is likely to have additional evidentiary support for the foregoing allegations of SBC's involvement in infringement of the '275 Patent by its subsidiaries after a reasonable opportunity for further investigation or discovery.

Complaint ¶ 26.  Virtually identical allegations are made with respect to BellSouth.  Complaint ¶ 27.  Similar wholly conclusory allegations are made elsewhere in the Complaint.  E.g., Complaint ¶ 29 (AT&T and BellSouth "managed and controlled Cingular Wireless. . . . Aerotel is likely to have additional evidentiary support. . . . after a reasonable opportunity for further investigation or discovery"); Complaint ¶ 30 ("SBC and BellSouth continued to manage and control Cingular Wireless…. Aerotel is likely to have additional evidentiary support … after a reasonable opportunity for further investigation or discovery"); Complaint ¶ 32 ("AT&T and BellSouth have each infringed the '275 Patent. . . either literally or by the doctrine of equivalents, by making, using, offering to sell, and/or selling within the United States or supplying or causing to be supplied in or from the United States, or intentionally inducing others to make, use, offer to sell, or sell in the United States or cause to be supplied in or from the United States. . . . The aforementioned infringing acts of AT&T and BellSouth have occurred throughout the United States, including within this Judicial District.  Aerotel is likely to have additional evidentiary support. . . ").  The only factual allegation touching upon jurisdiction is that "in or about 2002, SBC moved to a single national brand – SBC – to provide a more unified presence in the marketplace, making it easier for customers to find and do business with SBC companies throughout the United States. . . . After SBC changed its name to AT&T, the single SBC brand was replaced with a single national AT&T brand."  Complaint ¶ 31.

In sum, the only allegations that can even remotely connect AT&T Inc. and BellSouth to the forum are the conclusory allegations that they "manage" or "control" corporate subsidiaries

that may do business in the forum state and that all subsidiaries are marketed under a "national brand." Such allegations, however, are insufficient to sustain the Complaint against dismissal. Absent unusual circumstances not alleged here, the law respects the distinctions between corporations, even when one is wholly owned by another, and even when they market products under a national brand. The acts of a separate subsidiary corporation are not attributable to a parent corporation for jurisdictional purposes.

"Courts are reluctant to disregard the separate existence of related corporations . . . and have consistently given substantial weight to the 'presumption of separateness.'" Kashfi v. Phibro-Salomon, Inc., 628 F. Supp. 727, 732-33 (S.D.N.Y. 1986). Thus, "the presence of the subsidiary alone does not establish the parent's presence in the state." Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998). Aerotel has failed to plead, let alone satisfy, either of the two narrow exceptions recognized in New York: where the subsidiary is an "agent" of the parent or where it is a "mere department" of the parent. Id.

### 1. Aerotel Has Not Established That Any Subsidiary Is The "Agent" Of AT&T Inc. Or Of BellSouth Corporation

To establish that the subsidiary is an "agent," "the plaintiff must show that the subsidiary 'does all the business which [the parent corporation] could do were it here by its own officials'." Jazini, supra, 148 F.3d at 184 (quoting Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41 (1967)). Here, the "agent" approach requires little discussion because AT&T Inc. and BellSouth are mere holding companies that provide no services and manufacture no products themselves. (Britt Decl. ¶¶ 5, 6, 11; Lacy Decl. ¶¶ 6, 7, 15.) Thus, the business conducted by their operating subsidiaries is not business that AT&T Inc. or BellSouth "could do were [they] here by [their] own officials." Cf. Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95-98 (2d Cir. 2000) (subsidiary was "agent" of foreign corporation where subsidiary devoted one hundred percent of time to parent's business and was fully funded by the parent); Bulova Watch Co., v. K. Hattori & Co., 508 F. Supp. 1322, 1344 (E.D.N.Y. 1981) (subsidiary

was "agent" for parent when it sold parent's products and provided quality control and marketing

for parent's products).

### 2. Aerotel Has Not Established That Any Subsidiary Is A "Mere Department" Of AT&T Inc. Or Of BellSouth Corporation

The "mere department" approach is likewise inapplicable here. To establish that a

subsidiary is a "mere department" of the parent, "a plaintiff must factually allege that 'the

foreign parent's control of the subsidiary is pervasive enough that the corporate separation is

more formal than real.'" Stutts v. De Dietrich Group, 465 F. Supp. 2d 156, 163 (E.D.N.Y. 2006)

(quoting Schenker v. Assicurazioni Generali S.P.A. Consol., No. 98-civ-9186, 2002 U.S. Dist.

LEXIS 12845 (S.D.N.Y. Jul. 11, 2002)). In that regard, the Court must weigh four factors:

> first, "common ownership"—which is "essential"—; second, "financial dependency of the subsidiary on the parent corporation;" third, "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities;" and fourth, "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent."

Jazini, supra, 148 F.3d at 185 (quoting Volkswagenwerk Aktiengesellschaft v. Beech Aircraft

Corp., 751 F.2d 117, 120-21 (2d Cir. 1984)).

Here, while Aerotel pleads in conclusory fashion the activities of "subsidiaries or

affiliates," it does not even specifically identify any which are supposed to be the "mere

departments" of AT&T Inc. or BellSouth for jurisdictional purposes. The only possible

inference is that Aerotel is alleging that all of their many hundreds of subsidiaries and affiliates

inherently meet that definition. However, Aerotel neither pleads, nor could it plead, facts

sufficient to establish that any of their subsidiaries or affiliates qualify under the Jazini analysis.

As noted above, AT&T Inc.'s stock ownership is not enough. "[T]he presence of a local

corporation does not create jurisdiction over a related, but independently managed, foreign

corporation." Volkswagenwerk Aktiengesellschaft, 751 F.2d at 120. Aerotel cannot legitimately

allege that AT&T Corp., an entity that existed independently for over 100 years, or AT&T

Mobility LLC, an entity that has long been one of the nation's leading wireless carriers, *ipso facto* became completely controlled and micromanaged by a holding company that has no employees of its own simply because their stock was recently acquired.  (Britt Decl. ¶¶ 2, 4.) [9]

Moreover, in weighing the <u>Jazini</u> factors, one cannot lose sight of the fact that certain incidents of the parent-subsidiary relationship are normal and do not provide grounds for disregarding the corporate distinctions.  For example, "[t]he officers of any corporation that owns the stock of another necessarily exercise a considerable degree of control over the subsidiary corporation and the discharge of that supervision alone is not enough to subject the parent to New York jurisdiction."  <u>Volkswagenwerk Aktiengesellschaft</u>, 751 F.2d at 120.  "Of course, the officers of a parent normally control the board of directors of a subsidiary in their capacity as representatives of the controlling stockholder" and it is only "when the parent officers extend their control beyond that normally exercised by boards of directors [that] their behavior supports an inference that the subsidiary is not an independent entity."  <u>Id</u>., 751 F.2d at 121.  "[S]ome overlap of directors and officers does not establish that a subsidiary corporation is a mere department of its parent," <u>Stutts</u>, <u>supra</u>, 465 F. Supp. 2d at 167, and in fact such overlap is "intrinsic to the parent-subsidiary relationship" and does not render the subsidiary a "mere department" of the parent, <u>J.L.B. Equities, Inc. v. Ocwen Fin. Corp.</u>, 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001).  A parent may make broad policy decisions for the subsidiary.  <u>Saraceno v. S.C. Johnson & Son, Inc.</u>, 83 F.R.D. 65, 71 (S.D.N.Y. 1979).  Likewise, "[a]n advertising strategy deciding not to present to its consumers the existence of a parent-subsidiary relationship is not equivalent to a showing that the parent corporation exercises any control over its subsidiary's operational or marketing activities."  <u>Stutts</u>, <u>supra</u>, 465 F. Supp. 2d at 163, quoting

---

[9]    AT&T Mobility LLC is the only affiliate as to which Aerotel specifically by name, albeit conclusorily, alleges control by AT&T Inc. and/or BellSouth.  (Complaint ¶¶ 28, 29, 30.)  In fact, the conclusory allegation of control by AT&T Inc. over AT&T Corp. and BellSouth that was made in the original complaint (dkt. # 1, ¶ 26) has now *been dropped* by Aerotel from the Amended Complaint (Dolido Dec. Exhibit A).

J.L.B. Equities, Inc., supra, 131 F. Supp. 2d at 555. In short, a subsidiary is a "mere department" of its parent for jurisdictional purposes only in the rare cases when the parent's control so far exceeds the bounds of a normal parent-subsidiary relationship that the corporate distinction should be ignored.

Even after the deficiency was pointed out in the motion to dismiss the original complaint, Aerotel's Amended Complaint makes no effort at all to plead any of the relevant facts identified in Jazini, supra, or to otherwise establish that anything other than standard parent/subsidiary relationships exist here. In fact, Aerotel's pleading of only conclusory allegations is, itself, dispositive. To survive a motion to dismiss, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). As the Second Circuit has noted in Jazini, quoting Papasan v. Allain, 478 U.S. 265, 286 (1986), "we are not bound to accept as true a legal conclusion couched as a factual allegation," and, therefore, a conclusory statement to the effect that one corporation "wholly controlled" another, or that a subsidiary was "wholly dependent" upon the parent "for its business plan and financing," were insufficient to establish a prima facie case for jurisdiction and defeat a Rule 12(b)(2) motion. 148 F.3d at 185. See also Stutts, supra, 465 F. Supp. 2d at 164-65.

In short, with no factual allegations whatsoever, Aerotel is asking this Court to make an extraordinary finding of personal jurisdiction premised upon activities of unspecified subsidiaries based solely on wholly conclusory allegations that are no more plausible here than they are in any situation where one corporation owns the stock of another and yet maintains corporate independence. See Iqbal v. Hasty, 490 F.3d 143, 157-58, 177 (2d Cir. 2007) (to survive dismissal for failure to state a claim, "a pleader [must] amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible," such as where the factual allegations are equally consistent with a conclusion that would not give

rise to liability).  Aerotel has failed to plead the minimal facts sufficient "to raise a reasonable expectation that discovery will reveal evidence [supporting its theory]."  Bell Atlantic, supra, 127 S.Ct. at 1965.  Accordingly, as Aerotel has offered only conclusory and demonstrably baseless grounds for asserting jurisdiction over AT&T Inc. and BellSouth, the Complaint should be dismissed as against them pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

### 3.    Aerotel Cannot Use Its Inadequate Pleading To Justify A Fishing Expedition

As noted above, Aerotel has offered no facts – let alone facts establishing a *prima facie* basis – for disregarding the corporate forms and for not giving effect to the decisions of AT&T Inc. and BellSouth to not locate themselves in, or to do business in, this State.  Aerotel will inevitably make a plea for discovery before its claims are dismissed for lack of personal jurisdiction.  That plea should be rejected.

Aerotel should not be permitted to subject AT&T Inc. and BellSouth to the delay, burden and expense of a discovery "fishing expedition" when it lacked any factual basis for naming AT&T Inc. or BellSouth in this action in the first place.  The Second Circuit has specifically stated that discovery should not be permitted in this situation:

> If the [plaintiffs'] allegations were sufficient to establish a prima facie case of jurisdiction over [the corporate parent not doing business in New York], and thus subject the latter to discovery . . . it would not be difficult for a plaintiff suing a multinational foreign corporation in the federal courts in New York, to make similar conclusory non-fact-specific jurisdictional allegations and thus obtain extensive discovery on that issue.  This would require the federal courts to conduct substantial jurisdictional discovery over foreign corporations — a practice in which they have not hitherto engaged.  We decline to require that step.

Jazini, supra, 148 F.3d at 185-86.  "Where, as here, there are insufficient allegations that a subsidiary is so identified with its parent corporation that the latter is properly subject to jurisdiction based on the subsidiary's contacts in New York, a plaintiff has failed to establish a prima facie case of jurisdiction over the parent corporation.  Jazini compels the conclusion that plaintiffs, having failed to make out a prima facie case of jurisdiction over defendants, are not

entitled to jurisdictional discovery." Stutts, supra, 465 F. Supp. 2d at 169. See also Frontera
Resources Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic, No. 06-civ-1125, 2007
U.S. Dist. LEXIS 23553, at *31 (S.D.N.Y. Mar. 29, 2007); Stewart, supra, 2000 U.S. Dist.
LEXIS 14236, at *16-17.[10]

Aerotel had done nothing more than plead the existence of a normal parent-subsidiary
relationship between various corporations, peppered with a few wholly conclusory allegations.
(Even as to those conclusory allegations, Aerotel's counsel has admitted having no factual
support. See Zammit Decl. ¶ 2 and Exhibit A thereto.) To permit jurisdictional discovery in
these circumstances would justify jurisdictional discovery for every plaintiff suing a foreign
corporation with local subsidiaries, precisely the slippery slope that the Second Circuit was
determined to avoid in Jazini. Where, as here, the corporations have hundreds of subsidiaries
(Britt Decl. ¶ 5; Lacy Decl. ¶ 6), the burden of such discovery obviously would be enormous.

---

[10]    Aerotel will undoubtedly refer the Court to one case in which it successfully persuaded a
court to permit jurisdictional discovery despite the fact that the court acknowledged that Aerotel
had offered nothing more than "conclusory" allegations as to the interrelatedness of Sprint
Communications Company L.P. and its parent, Sprint Corporation. Aerotel, Ltd. v. Sprint Corp.,
100 F. Supp. 2d 189, 194 (S.D.N.Y. 2000) (Scheindlin, J.). It may be that the record in that case
revealed some basis for questioning the independence of the subsidiary that is not evident from
the opinion. In any event, AT&T Inc. respectfully urges this Court not to follow that decision as
it is inconsistent with the Second Circuit direction in Jazini, supra, 148 F.3d at 185-86, and with
the other decisions which recognize that something more than a run-of-the mill parent-subsidiary
relationship (and the normal incidents of interrelatedness that entails) must be demonstrated
before a court should sanction, and subject a foreign holding company to, the extraordinary
burdens of a discovery fishing-expedition. See, e.g., Stutts, supra, 465 F. Supp. 2d at 169. In
fact, the same judge that permitted discovery in the Aerotel v. Sprint case more recently has been
more closely following the Second Circuit's direction in Jazini and denying discovery in similar
situations, recognizing that when "plaintiffs have failed to make out a prima facie case for this
Court's exercise of personal jurisdiction, they are not entitled to discovery." Sodepac, S.A. v.
M/V Choyang Park, No. 02-civ-3927, 2002 U.S. Dist. LEXIS 19360 at *17 (S.D.N.Y. Oct. 9,
2002) (Scheindlin, J.). See also In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2002, 230 F.
Supp. 2d 403, 412 (S.D.N.Y. 2002) (Scheindlin, J.).

## II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST ANY DEFENDANT BECAUSE IT FAILS TO IDENTIFY THE ALLEGEDLY INFRINGING PRODUCTS OR SERVICES AND FAILS TO DISCLOSE HOW EACH DEFENDANT SUPPOSEDLY INFRINGED

The Complaint does not meaningfully identify the products or services that are alleged to infringe Aerotel's patent.    Instead, it merely repeats (with non-substantive changes) an undifferentiated boilerplate allegation contained in the original complaint (dkt. # 1) against each Defendant, accusing them of:  "using, offering to sell, and/or selling within the United States or causing to be supplied in or from the United States, or intentionally inducing others to make, use, offer to sell, or sell in the United States or supply or cause to be supplied in or from the United States, without authority from Aerotel, prepaid wireline and wireless telecommunications products and services that are covered by one or more claims of the '275 Patent."  (Complaint ¶¶ 32, 34, 36, 39).[11]  <u>Compare</u> original complaint (dkt # 1) ¶¶ 28, 30, 32, 34, 36.  Unlike the original complaint, that boilerplate allegation is now prefaced with a new, but singularly uninformative, allegation that each Defendant has "infringed the '275 patent under any of 35 U.S.C. §§ 271 (a), (b) or (c), either literally or by the doctrine of equivalents."  <u>Id</u>.

The Amended Complaint also adds some additional allegations inserted after Defendants moved to dismiss the original complaint, which purport to identify the names of service offerings with which "some of the infringing acts [were allegedly] involved" and which Aerotel attributes to certain of the Defendants.    These additions, however, are essentially meaningless because nowhere are the supposedly "infringing acts" identified, these allegations are further hedged with phrases such as "at least some," and they now implicate third-parties, which only serves to further confuse the issue as to what each Defendant is being accused of having done:

> 37.    The aforementioned infringing acts of AT&T Mobility Corp., AT&T Mobility, New Cingular, Cingular-II, New Cingular-PCS, and BellSouth Mobility DCS have occurred throughout the

---

[11]    The individual cited paragraphs sometimes differ from what is quoted in the text to the extent of varying the references to "wireless" or "wireline" depending upon the particular defendant.

United States, including within this Judicial District. At least some of the infringing acts are based on direct infringements by non-party prepaid service providers, including, but not limited to, Boston Communications Group, Inc. and Ericsson Inc., which provided prepaid services to purchasers of prepaid wireless telecommunication products marketed by one or more of AT&T Mobility Corp., AT&T Mobility, New Cingular, Cingular-II, New Cingular-PCS, and BellSouth Mobility DCS. Furthermore, at least some of the infringing acts involved the provision of prepaid wireless telephone service to purchasers of refill cards marketed by one or more of AT&T Mobility Corp., AT&T Mobility, New Cingular, Cingular-II, New Cingular-PCS, and BellSouth Mobility DCS, such as (and not limited to) those marketed under the brand names Cingular "Keep in Contact Prepaid Wireless," Cingular Wireless Prepaid Service and "AT&T Free-2-Go Wireless[sm]." Aerotel is likely to have additional evidentiary support for the allegations of infringement set forth in this paragraph after a reasonable opportunity for further investigation or discovery.

\*          \*          \*

40.    The aforementioned infringing acts of BellSouth Telecommunications, BellSouth Long Distance and AT&T Long Distance have occurred throughout the United States, including within this Judicial District. At least some of the infringing acts are based on direct infringements by non-party prepaid service providers, including, but not limited to, U.S. South Communications, Inc., which provided carrier services to purchasers of prepaid calling cards issued by BellSouth Long Distance. Aerotel is likely to have additional evidentiary support for the allegations of infringement set forth in this paragraph after a reasonable opportunity for further investigation or discovery.

(Complaint ¶¶ 37, 40). These allegations relate to only a subset of the Defendants and are as specific as the Complaint gets.

Thus, the Complaint tells the Defendants that they must defend against a patent infringement suit, but tells them nothing about what each of them is being accused of having done. What are the supposedly "infringing acts" of each Defendant? Which of the patent's 23 claims is each Defendant alleged to infringe? Do each Defendant's own products supposedly infringe directly? If so, which products? Or is each Defendant thought to be somehow inducing or contributing to infringement by third-parties? If so, which third-parties and how? Or is each accused of simply using third-party products that somehow infringe? If so, which products?

### A.  IF AEROTEL HAS COMPLIED WITH RULE 11, IT MUST ALREADY KNOW WHICH PRODUCTS OR SERVICES IT IS ACCUSING AND HOW IT BELIEVES THEY INFRINGE

The absence of meaningful notice as to what each Defendant is being accused of having done cannot be excused by ignorance on Aerotel's part.  Aerotel cannot be ignorant of the products or services that are allegedly infringing, or how they supposedly infringe — because Aerotel necessarily must know which products it is accusing and why.  It was required to have that information before it filed its infringement Complaint, as its pre-filing obligation under Rule 11 was to "apply the claims . . . to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim."  View Engineering, Inc. v. Robotic Vision Systems, Inc., 208 F.3d 981, 986 (Fed. Cir. 2000).  See also Judin v. U.S., 110 F.3d 780, 784 (Fed. Cir. 1997).  Inasmuch as Aerotel must already have applied the claims to the "accused device" or service to satisfy itself that its Complaint supposedly has a reasonable basis, it should be no problem for Aerotel to identify those devices or services it has examined and is now accusing and to disclose how each supposedly infringes.[12]

### B.  AEROTEL'S FAILURE TO IDENTIFY HOW EACH DEFENDANT IS BEING ACCUSED OF INFRINGING JUSTIFIES DISMISSAL OF ITS COMPLAINT

Aerotel's failure to specify what each Defendant is being accused of having done, what products supposedly infringe, or how they supposedly infringe, renders the Complaint fatally defective.  In Phonometrics, Inc. v. Hospitality Franchise Systems, Inc., 203 F.3d 790, 794 (Fed. Cir. 2000), the Federal Circuit held that to put a defendant on sufficient notice of the claims against it so that it could answer, and have the Complaint thereby survive a Rule 12(b)(6) motion, the complaint must at least allege:  (1) ownership of the asserted patent; (2) the names of each individual defendant; (3) the patent that is allegedly infringed; (4) the means by which the

---

[12]  "If a plaintiff cannot describe with some specificity the product he claims infringes his patent, there is reason to question whether such a certification [of compliance with Rule 11] is true."  Bay Industries Inc. v. Tru-Arx Mfg., LLC, No. 06-civ-1010, 2006 U.S. Dist. LEXIS 86757 at *6 (E.D. Wis. Nov. 29, 2006) (granting Rule 12(e) motion).

defendants allegedly infringe; and (5) the specific sections of the patent law invoked.[13]    Here, Aerotel's Complaint does not satisfy at least three of these necessary elements.

As to the second element, while Aerotel's Complaint does name the "defendants," it makes it clear that the named Defendants might not actually be the parties being accused of infringing.  Rather, each Defendant is vaguely accused of "making, using, offering to sell, and/or selling . . . supplying or causing to be supplied . . . intentionally inducing others to make, use, offer to sell, or sell . . . or supply or cause to be supplied . . . ."  These allegations do not inform the Defendants whether they are being accused of direct infringement or whether they are simply being accused of somehow "inducing" some unidentified third-party's infringement, contributing to some unidentified third-party's infringement, or simply using some device manufactured or sold by a third-party.  Indeed, the Amended Complaint for the first time identifies certain third-parties by name (but specifies that it is "not limited to" those named), and states that "at least some of the infringing acts" are based on direct infringements by those third-parties.  (Complaint ¶ 40).  The Complaint, however, never identifies the referenced "infringing acts" and, when combined with the hedging language, tells the Defendants next-to-nothing.

Plaintiffs also fail to satisfy the fourth element, the "means by which the defendants allegedly infringe."  Phonometrics, supra, 203 F.3d at 794.  Aerotel not only fails to identify whether each Defendant supposedly made, used, sold or supplied something that infringes, or whether it induced or contributed to infringement, but fails to specify which "products" or "services" supposedly infringe.  In the latter regard, it is not particularly enlightening that Aerotel vaguely specifies "prepaid wireline and wireless telecommunication products and services," or that it identifies the names of certain service offerings that "at least some of the infringing acts involve."  Those service offerings were not static and they evolved over time,

---

[13]    While Phonometrics applied Eleventh Circuit law, its recitation of the requirements for pleading patent infringement have been cited in almost every circuit.  E.g., Home & Nature, Inc. v. Sherman Specialty Co., 322 F. Supp. 2d 260, 265 (E.D.N.Y. 2004).

such that the identification of a broad brand name does nothing to narrow down the specific acts or systems being accused.  (See Zammit Decl. ¶ 3.)

Finally, the Complaint does not satisfy the fifth element, the "specific sections of the patent law invoked." Phonometrics, 203 F.3d at 794.  Rather, the Complaint again hedges its bets and merely refers to "any of 35 U.S.C. §§ 271(a), (b) or (c)" (Complaint ¶¶ 32, 34, 36, 39) while making vague allegations that cover all the same bases: "by making, using, offering to sell, and/or selling . . . or supplying . . . or intentionally inducing others to make. . . ."  As a result, there is no way to tell whether any particular Defendant is being accused of directly infringing, or of contributing to, or of inducing, infringement by others.  By specifying all the possible means of infringement, Aerotel has effectively specified nothing.

In short, the Complaint informs Defendants only that Aerotel claims to have a patent and that Aerotel thinks that Defendants did something that gives rise to liability.  Even under the liberal pleading standard of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), by which "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" (and which forgiving standard has now been superseded by the more rigorous standard of Bell Atlantic, supra), courts have not hesitated to dismiss infringement claims that were no worse than Aerotel's here.  See, e.g., DePaul v. General Instrument Corp., No. 91-civ-1901, 1991 U.S. Dist. LEXIS 4077 (S.D.N.Y. April 3, 1991) (dismissing infringement complaint which failed to specify how defendant allegedly infringed the patent), aff'd, 1994 U.S. App. LEXIS 31617 (Fed. Cir. Nov. 10, 1994); Catapano v. Wyeth Ayerst Pharmaceuticals, Inc., 88 F. Supp. 2d 27, 29-30 (E.D.N.Y. 2000) (dismissing infringement complaint that does not identify the particular type of patent infringement being claimed and where the allegations failed to allege the facts from which direct infringement, inducement or contributory infringement could be found).

For example, in Gen-Probe, Inc. v. Amoco Corp., 926 F. Supp. 948 (S.D. Cal. 1996), the

plaintiff's complaint contained allegations almost identical to Aerotel's here:

> Upon information and belief, [each of the defendants] . . . are willfully and deliberately infringing the '330 Patent or contributing to or inducing said infringement in the United States, and within this district, by making, using, selling and/or offering for sale products and/or kits without the authority . . . .

926 F. Supp. at 960 n.19.  The court dismissed the complaint on two grounds.  First, because the complaint, like Aerotel's here, "fails to provide fair notice of what the plaintiff's claims are" in that "[e]ach of the five defendants is accused of each of the three different types of infringement" and, consequently, "[i]t is unclear which of the five is accused of which type of infringement." Id. at 960.  "Even if there were no other deficiencies, this confusion of which claims apply to which defendants would require that the complaint be dismissed with leave to file an amended complaint."  Id. at 961.  Here it is even worse: not five, but twelve defendants seemingly are each being accused of each of three different types of infringement.

Second, the Gen-Probe court held that "[e]ven under liberal notice pleading, the plaintiff must provide facts that 'outline or adumbrate' a viable claim for relief, not mere boilerplate sketching out the elements of a cause of action."  926 F. Supp at 961.  Consequently, "[f]iling a patent infringement action pointing vaguely to 'products and/or kits' . . . does not provide adequate notice as required by the Rules."  Id. at 962.  Compare Aerotel's Complaint ¶¶ 32, 34, 36 and 39, which vaguely identify only "prepaid wireless and wireline telecommunications products or services."  The specification of brand names under which certain of the Defendants are alleged to have offered services (Complaint ¶ 37), adds nothing to clarify matters inasmuch as Aerotel alleged only that "at least some of the infringing acts" supposedly related to services provided under those brand names, but it never identified the "infringing acts" to which it was referring.

Other courts have dismissed similar complaints that failed to meaningfully identify the accused products.  See, e.g., Hewlett-Packard Co. v. Intergraph Corp., No. 03-civ-2517, 2003 U.S. Dist. LEXIS 26092 *6 (N.D. Cal. Sept. 6, 2003) (allegations of "making, using, offering to

sell and/or selling infringing software and hardware products without authority"); Ondeo, Nalco Co. v. Eka Chemicals, Inc., No. 01-civ-537, 2002 U.S. Dist. LEXIS 26195 *4 n.2 (D. Del. June 10, 2002) (complaint's reference to "'products, . . . that are used in paper-making process . . . '" or 'to make paper'" is "too vague to provide . . . notice of which products are accused" and further dismissing the inducement claim because the pleading did not identify the direct infringer); Windy City Innovations, LLC v. America Online, Inc., 227 F.R.D. 278, 282 (N.D. Ill. 2005) (dismissing claim directed to unnamed products and circumstances). [14]

Without factual information identifying how each Defendant supposedly infringed, and what it supposedly infringed, Aerotel has failed to satisfy its pleading "obligation to provide 'grounds' of [its] 'entitle[ment] to relief' [which] requires more than labels and conclusions," and which requires "[f]actual allegations [which] must be enough to raise a right to relief above the speculative level." Bell Atlantic, supra, 127 S.Ct. at 1964-65. As noted above, the Bell Atlantic pleading standard is more demanding than the Conley "any set of facts" standard which it replaces, see Iqbal, supra, 490 F.3d at 157-58,[15] and the fact that complaints as vague as Aerotel's have been routinely dismissed in the cases cited above, which applied the former, more

---

[14]     The Court in Hewlett-Packard, supra, also explained that Form 16 of the Federal Rules of Civil Procedure, which proposes a complaint that simply accuses a defendant's "electric motors" of infringing, makes sense where the hypothetical defendant had only a few products in the category, but makes no sense when a defendant has multiple products such that "electric motors" would not be meaningfully specific.  2003 U.S. Dist. LEXIS 26092 at *6.  See also In re Papst Licensing GmbH Patent Litig., No. MDL 1298, 2001 U.S. Dist. LEXIS 2255 at *4 (E.D. La. Feb. 22, 2001) ("It is apparent, however, that the number of patents and products in the case before me are far greater than those contemplated in the [Form 16] sample complaint, which would justify a request for greater specificity").  As noted above, a general term like "prepaid wireline and wireless telecommunications products and services," arguably could refer to a multitude of different things which have changed substantially over the years in terms of technology and platforms (Zammit Decl. ¶ 3) and which, according to the Complaint itself, might not even be products or services offered by any of the Defendants themselves.

[15]     The Second Circuit, in Iqbal, interpreted Bell Atlantic as imposing a "plausibility standard" on pleading.  490 F.3d at 157-58.  There is, of course, no way to consider the plausibility of Aerotel's infringement claims when it does not even identify the supposedly infringing products or services.

liberal standard, only underscores the propriety of dismissing Aerotel's Complaint under the more demanding standard applicable today.  See Anticancer Inc. v. Xenogen Corp., No. 05-cv-0448, 2007 U.S. Dist. LEXIS 59811 (S.D. Cal., Aug. 13, 2007) (applying Bell Atlantic's pleading requirements to dismiss patent claims, relying in part on the Second Circuit's interpretation of Bell Atlantic in Iqbal).[16]

### C.    AT A MINIMUM, AEROTEL SHOULD BE DIRECTED TO PROVIDE A MORE DEFINITE STATEMENT AS TO HOW EACH DEFENDANT SUPPOSEDLY INFRINGES

At a minimum, even if Aerotel's Complaint could somehow be thought to satisfy the Bell Atlantic pleading standard to survive the Rule 12(b)(6) motion, the Court nevertheless should grant Defendants' Rule 12(e) motion for more definite statement recognizing that no Defendant can reasonably be expected to respond to the Complaint when it has not been informed of what is supposedly infringing or how it supposedly infringes.  See, e.g., Agilent Technologies, Inc v. Micromuse, Inc., No. 04-civ-3090, 2004 U.S. Dist. LEXIS 20723 at *14 (S.D.N.Y. Oct. 19, 2004) ("courts have considered Rule 12(e) relief appropriate in patent infringement cases where a plaintiff has failed to identify any allegedly infringing product or products"); Williams Advanced Materials, Inc. v. Target Tech. Co., LLC, No. 03-civ-00276A, 2007 U.S. Dist. LEXIS 28018 at *6 (W.D.N.Y. April 16, 2007) (defendants "cannot realistically be expected to frame a responsive pleading . . . in the absence of any indication as to which of [their] products are accused," quoting eSoft, Inc. v. Astaro Corp., No. 06-civ-441, 2006 U.S. Dist LEXIS 52336 at *4 (D. Colo. July 31, 2006)); Bay Industries Inc., supra, 2006 U.S. Dist. LEXIS 86757 at *5 ("Defendant should not have to guess which of its products infringe nor guess how its products might fall within plaintiff's interpretation of the claims of the patent").

---

[16]    Conversely, because courts that have acquiesced in vague pleadings generally did so in reliance upon the now discredited Conley v. Gibson "any set of facts" standard, and in situations where the identity of the accused product was not in dispute,  e.g., Home & Nature, supra, 322 F. Supp. 2d at 265, the outcome in those cases presumably would be different today.

Aerotel's blunderbuss pleading, which names twelve defendants without identifying what each Defendant is being accused of having done (i.e., whether directly infringing, contributing to infringement, or inducing infringement), or which patent claims are supposedly infringed, and which does not even identify which products or services of which Defendants – or possibly of named and unnamed third-parties – supposedly infringe, leaves Defendants with no way to meaningfully respond to the Complaint.  The Complaint is, therefore, deficient as a matter of law and should be dismissed under Rule 12(b)(6) or, at a minimum, ordered supplemented with a more definitive statement pursuant to Rule 12(e).

### D.    INSISTENCE ON A MEANINGFUL PLEADING IS NOT MERELY A FORMALISTIC EXERCISE

It is important to emphasize that the pleading requirements are not merely formalistic. Aerotel has named twelve Defendants in a patent infringement action without meaningfully identifying what any of them is supposed to have done wrong.   And it is now apparent that Aerotel cannot do better:   it has already repleaded once and has made no substantive improvement.

A Complaint such as this puts an enormous burden on these twelve Defendants.  To answer the amorphous allegations, each Defendant would have to analyze 23 patent claims, and then analyze all of the past and present systems it ever had in place relating to "prepaid wireline and wireless telecommunications products and services," *as well as* all of the past and present systems of its subsidiaries and affiliates, *and* those of third-parties with which it does business, and then compare each of those systems to each of 23 claims of Aerotel's patent.  The avoidance of just such an unreasonable burden is precisely why it is substantively important that a complaint provide notice of the products claimed to be infringing and in what respect they supposedly infringe.

Further, even to the extent that Defendants could, consistently with Rule 11, simply file blanket denials, then what?  The Complaint gives the Defendants — and the Court — no

substantive basis on which to evaluate the relevance of any discovery requests that will ensue. The Defendants should not be put to the burden and expense of producing documents and testimony about all of their past and present systems, and all of the past and present systems of affiliates and third-parties, even though Aerotel has no basis whatsoever for accusing all of them of infringing.  In Bell Atlantic, supra, the Supreme Court specifically recognized that such unjustified discovery creates enormous burdens and, therefore, admonished that "'a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.'"  127 S. Ct. at 1967 (citation omitted).  If Aerotel were to identify what it believes to infringe and how, the parties and the Court could then focus on the documents and testimony that are relevant to that inquiry.

The requirement that a plaintiff give a defendant fair notice of what it is being accused of having done serves a salutary purpose that furthers the interests of the parties and the Court. Aerotel now has been unable to fulfill that requirement in two attempts at pleading and this action cannot proceed in a reasonable fashion until it has done so.

## III.    PLAINTIFFS AEROTEL U.S.A., INC. AND AEROTEL U.S.A., LLC DO NOT HAVE STANDING TO ASSERT THE INFRINGEMENT CLAIM

The Complaint (Dolido Decl. Exhibit A) asserts a single claim for infringement of the '275 Patent on behalf of all three Plaintiffs.  Paragraph 1 of the Complaint alleges that Plaintiff "Aerotel, Ltd. is the sole owner of all rights conferred by the U.S. Patent No. 4,706,275 (the ''275 Patent') and all foreign patents corresponding thereto."[17]  As that necessarily means that neither of the other two named Plaintiffs, Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC, have any ownership interest in the '275 Patent, they do not have standing to assert an infringement claim and their respective claims should, therefore, be dismissed.

Generally, only a patentee, or successors in title to the patent, have the right to sue for

---

[17]    As noted above at n.2, Aerotel Ltd.'s allegation that it owns the patent is being challenged in several forums.  For purposes of this motion, however, Aerotel Ltd.'s assertion of ownership is assumed to be true.

infringement.  35 U.S.C. §§ 100(d) and 281.  "To bring an action for patent infringement, a party must be either the patentee, a successor in title to the patentee, or an exclusive licensee of the patent at issue."  Fieldturf, Inc. v. Southwest Rec. Indus., 357 F.3d 1266, 1268 (Fed. Cir. 2004).  Thus, while an exclusive licensee, holding "all substantial rights" under the patent is effectively an "assignee" who can bring suit in its own name, Textile Prods. v. Mead Corp., 134 F.3d 1481, 1484 (Fed. Cir. 1998), and an exclusive licensee that does not have all substantial rights can still sue as a co-plaintiff with the patentee, id., Plaintiffs' own Complaint conclusively establishes that Aerotel U.S.A., Inc. and Aerotel U.S.A., LCC do not fit into either category: it alleges that Aerotel, Ltd. is, alone, "the sole owner of all rights conferred by the ['275 Patent." (Complaint ¶ 1.)[18]

Further, the Complaint identifies Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC as merely "the exclusive managing agents of Aerotel, Ltd., responsible for licensing and enforcing the '275 Patent." (Complaint ¶ 10.)  This status gives those entities no right to sue for infringement, not even as co-plaintiffs with the patentee.  To the extent that there ever was any doubt about this at all, it was completely dispelled by the Federal Circuit in Propat Int'l Corp. v. RPost US, Inc., 473 F.3d 1187 (Fed. Cir. 2007), decided three months **before** Plaintiffs filed their original complaint herein.

In Propat, the plaintiff had been delegated "the responsibility to license the patent to third parties, to enforce the licensing agreements, and to sue infringers."  473 F.3d at 1190.  The Federal Circuit held that despite the delegation to plaintiff of certain rights and responsibilities with respect to the patent, the fact that it had not been given "all substantial rights" in the patent meant that it had no standing to sue in its own name for infringement.  Id. at 1190-91.  Further,

---

[18]    Neither Aerotel U.S.A., Inc. nor Aerotel U.S.A., LLC is the exclusive licensee.  They cannot contend otherwise as Aerotel, Ltd. and Aerotel U.S.A., Inc. have contended, in a separate action before this Court (as well as an ICDR arbitration), that they licensed the '275 Patent to AT&T Corp.  See Zammit Decl. ¶ 2.

the Federal Circuit held that such party had no right to sue even as co-plaintiff with the patent owner.  Id. at 1194.

In light of Propat, Plaintiffs' allegation that Aerotel, Ltd. "is the sole owner of all rights" in the patent, and that neither Aerotel U.S.A. entity is an exclusive licensee, is fully dispositive. Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC lack standing to sue, even as co-plaintiffs with the patent owner, and their claims should be dismissed.

## CONCLUSION

For all of the foregoing reasons, the motion of AT&T Inc. and BellSouth Corporation to dismiss this action as against them for lack of personal jurisdiction, the motion of all Defendants to dismiss the action for failure to state a claim, and the motion of all Defendants to dismiss the claims of Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC for lack of standing, should be granted in their entirety.

Dated: New York, New York
      October 12, 2007

**FULBRIGHT & JAWORSKI, L.L.P.**

By: /s/ Joseph P. Zammit
     Joseph P. Zammit
     Edward P. Dolido

666 Fifth Avenue, 31st Floor
New York, New York  10103-3198
Telephone:  (212) 318-3000

Attorneys for Defendants
AT&T Inc., BellSouth Corporation, AT&T
Corp., SBC Long Distance, LLC (incorrectly
named herein as AT&T Long Distance, LLC),
AT&T Mobility Corporation, AT&T Mobility
LLC, New Cingular Wireless Services, Inc.,
Cingular Wireless II, LLC, New Cingular
Wireless PCS LLC, BellSouth Mobility DCS,
Inc. and BellSouth Telecommunications, Inc.

**HUNTON & WILLIAMS LLP**

By: /s/ Shawn Patrick Regan
     Shawn Patrick Regan

200 Park Avenue
New York, NY  10166
(212) 309-1000

Attorneys for Defendant
BellSouth Long Distance, Inc.