## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

AEROTEL, LTD., AEROTEL U.S.A., INC. and
AEROTEL U.S.A., LLC,

      Plaintiffs,

v.

AT&T INC. (formerly SBC Communications, Inc.),
BELLSOUTH CORPORATION, AT&T CORP., AT&T
LONG DISTANCE, LLC (formerly SBC Long Distance,
LLC), AT&T MOBILITY CORPORATION (formerly
Cingular Wireless Corporation), AT&T MOBILITY LLC
(formerly Cingular Wireless LLC), NEW CINGULAR
WIRELESS SERVICES, INC. (formerly AT&T Wireless
Services, Inc.), CINGULAR WIRELESS II, LLC
(formerly Cingular Wireless II, Inc.), NEW CINGULAR
WIRELESS PCS, LLC (formerly BellSouth Mobility,
LLC), BELLSOUTH MOBILITY DCS, INC.,
BELLSOUTH TELECOMMUNICATIONS, INC. d/b/a
AT&T SOUTHEAST, and BELLSOUTH LONG
DISTANCE, INC. d/b/a AT&T LONG DISTANCE
SERVICE,

      Defendants.

**ELECTRONICALLY FILED**

Civil Action No. 07-Civ-3217 (RJH)

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS OR, IN THE
ALTERNATIVE, FOR A MORE
DEFINITE STATEMENT**

Robert C. Morgan (RM 0245)
Jeanne C. Curtis (JC 4673)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9049

   -and-

Glenn F. Ostrager (GO-2023)
Dennis M. Flaherty (DF-5523)
Joshua S. Broitman (JB-4644)
OSTRAGER CHONG FLAHERTY & BROITMAN P.C.
570 Lexington Avenue
New York, NY 10022-6894
(212) 681-0600

*Attorneys for Plaintiffs
Aerotel, Ltd, Aerotel U.S.A.,
Inc. and Aerotel U.S.A., LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... iii

Introduction ............................................................................................................... 1

Statement of Facts..................................................................................................... 5

       A.    AT&T Corporate Organization and  Management .......................... 6

       B.    Defendants Marketing of Infringing Products and Services............. 11

Standards Governing Defendants' Motions ......................................................... 12

       A.    The Rule 12(b)(2) Motion................................................................ 12

       B.    The Rule 12(b)(6) Motion................................................................ 13

Argument ................................................................................................................. 14

    I.    AT&T AND BELLSOUTH ARE SUBJECT TO
        THE PERSONAL JURISDICTION OF THIS COURT ............................ 14

       A.    C.P.L.R. §301.................................................................................... 15

           1.    Jurisdiction is Conferred by Agency or Alter-Ego Theory ... 16

       B.    C.P.L.R. §302 – Transaction of Business ....................................... 19

           1.    C.P.L.R. §302(a)(1) .............................................................. 19

           2.    C.P.L.R. §302(a)(2) and (3) ................................................ 20

       C.    Due Process...................................................................................... 21

    II.    DEFENDANT'S MOTION PURSUANT TO FED.R.CIV.P. 12(B)(6)
        TO DISMISS, OR IN THE ALTERNATIVE PURSUANT TO 12(E)
        FOR A MORE DEFINITE STATEMENT SHOULD BE DENIED. .......... 23

       A.    Fed.R.Civ.P. 12(e)......................................................................... 22

       B.    Adequate Notice ............................................................................. 25

III.   DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS
       THE AEROTEL USA AFFILIATES FOR LACK OF
       STANDING SHOULD BE DENIED ......................................................     27

IV.    LEAVE TO REPLEAD AND TAKE JURISDICTIONAL
       DISCOVERY SHOULD BE GRANTED IF NECESSARY ………. .........     28

V.     CONCLUSION ..........................................................................................     29

# TABLE OF AUTHORITIES

## Cases

*Asip v. Nielsen Media Research, Inc.*
No. 03 Civ. 5866, 2004 U.S. Dist. LEXIS 2350 (S.D.N.Y. February 17, 2004) ................ 23, 24

*Ayyash v. Bank Al-Madina*
No. 04 Civ. 9201, 2006 U.S. Dist. LEXIS 9677 (S.D.N.Y.Mar. 9, 2006) .......................... 28

*Arkwright Mutual Insurance Co. v. Scottsdale Insurance Co.*
874 F. Supp. 601 (S.D.N.Y. 1995) ..................................................................... 14

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*
171 F.3d 779 (2d Cir. 1999) ............................................................................ 12

*Bell Atlantic Corp. v. Twombly*
127 S.Ct. 1955 (2007) ................................................................................... 13

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*
21 F.3d 1558 (Fed. Cir. 1994) ......................................................................... 20

*Burger King Corp. v. Rudzewicz*
471 U.S. 462 (1985) ..................................................................................... 22

*Cali v. East Coast Aviation Services, Ltd.*
178 F. Supp.2d 276 (E.D.N.Y. 2001) ................................................................. 18

*Catapano v. Wyeth Ayerst Pharmaceuticals, Inc.*
88 F. Supp. 2d 27 (E.D.N.Y. 2000) ................................................................... 27

*Cleveland v. Policy Mgmt. Sys. Corp.*
526 U.S. 795 (1999) ..................................................................................... 24

*Cutco Indus. v. Naughton,*
806 F.2d 361 (2d Cir. 1986) ............................................................................ 17

*DePaul v. General Instrument Corp.*
No. 91 Civ. 1901, 1991 U.S. Dist. LEXIS 4077 (S.D.N.Y. April 2, 1991) ....................... 27

*DigiGAN, Inc. v. iValidate, Inc.*
No. 02 Civ. 0420, 2004 U.S. Dist. LEXIS 1324, (S.D.N.Y. Feb. 3, 2004) ....................... 23

*Filius v. Lot Polish Airlines*
907 F.2d 1328 (2d Cir. 1990) ........................................................................... 28

*Frummer v. Hilton Hotels Int'l, Inc.,*
19 N.Y. 2d 533 (1967)` ..................................................................................... 16

*Gen-Probe, Inc. v. Amoco Corp.*
926 F. Supp. 948 (S.D. Cal. 1996).................................................................. 27

*Ginsberg v. Government Properties Trust, Inc.*
07 Civ. 365, 2007 U.S. Dist. LEXIS 75771 (S.D.N.Y. Oct. 11, 2007)................................ *in passim*

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*
763 F.2d 55 (2d Cir. 1985) ............................................................................. 12

*Imagineering, Inc. v. Van Klassens, Inc.*
797 F. Supp. 329 (S.D.N.Y. 1992)................................................................... 21

*International Shoe Co. v. Washington*
326 U.S. 310 (1945)  ....................................................................... 14, 21

*Iqbal v. Hasty*
490 F.3d 143 (2d Cir. 2007) ........................................................................... 13

*Jazini v. Nissan Motor Co.*
148 F.3d 181 (2d Cir. 1998) ................................................................ 12, 16, 18

*J.L.B. Equities, Inc. v. Ocwen Financial Corp.*
131 F. Supp. 2d 544 (S.D.N.Y. 2001)........................................................ 14, 16, 18

*Kirch v. Liberty Media Corp.*
449 F.3d 388 (2d Cir. 2006) ........................................................................... 13

*Knapp v. Consol. Rail Corp.*
No. 89 Civ. 1034S , 1992 U.S. Dist. LEXIS 10969 (W.D.N.Y. July 7, 1992) ............. 16, 18, 22

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*
918 F.2d 1039 (2d Cir. 1990) ........................................................................... 15

*Markovic v. New York City Sch. Constr. Autho.*
No. 99 Civ. 10339, 2000 U.S. Dist. LEXIS 13130, (S.D.N.Y. Sept. 13, 2000)................... 24

*Metro. Life Ins. V. Roberson-Ceco Corp.*
84 F.3d 560 (2d Cir. 1996). ........................................................................... 22

*Nerney v. Valente & Sons Repair Shop*
66 F.3d 25 (2d Cir. 1995)............................................................................... 28

*Obabueki v. Int'l Bus. Mach. Corp.*
No. 99 Civ. 11262, 2001 U.S. Dist. LEXIS 11810 (S.D.N.Y. Aug. 14, 2001) .................... 18

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*
52 F.3d 1026 (Fed. Cir. 1995) ........................................................................... 3, 27

*Pennie & Edmonds v. Austad Co.*
681 F. Supp. 1074 (S.D.N.Y. 1988) ................................................................... 17

*Pfizer Inc. v. Perrigo Company*
903 F. Supp. 14 (S.D.N.Y. 1995) ....................................................................... 14

*Pilates, Inc. v. Pilates Inst., Inc.*
 891 F. Supp. 175 (S.D.N.Y. 1995) ..................................................................... 1

*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc*
203 F.3d 790 (Fed. Cir. 2000) .......................................................................... 2, 23

*Propat Int'l Corp. v. RPost, Inc.*
 2007 U.S. App. LEXIS 77 (Fed Cir. 2007) ....................................................... 28

*Ritchie Capital Management, L.L.C. v. Coventry First LLC*
2007 U.S. Dist. LEXIS 51081, (S.D.N.Y. 2007) ................................................ 28

*Roth v. Jennings*
489 F.3d 499 (2d Cir. 2007) .............................................................................. 13

*Schenker v. Assicurazioni Generali S.P.A. Conso*
No. 98 Civ. 9186, 2002 U.S. Dist. LEXIS 12845 (S.D.N.Y. July 15, 2002) ...................... 15

*SEB S.A. v. Montgomery Ward & Co., Inc.*
2002 U.S. Dist. LEXIS 18440, 99 Civ. 9284 (S.D.N.Y. October 1, 2002)......................... 12, 16

*Stern v. Gen. Elec. Co.*
924 F.2d 472 (2d Cir. 1991) .............................................................................. 28

*Studio A Entertainment, Inc. v. Direct Distributors, LLC*
No. 06 Civ. 2275, 2007 U.S. Dist. LEXIS 9449 (S.D.N.Y. Feb. 8, 2007) ........................ 19, 20

*Stutts v. De Dietrich Group*
465 F. 2upp. 2d 156 (E.D.N.Y. 2006) ................................................................ 12, 15

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*
751 F.2d 117 (2d Cir. 1984) .............................................................................. 16

*Windy City Innovations, LLC v. America Online, Inc.*

227 F.R.D. 278, 61 Fed. R. Serv. 3d (Callaghan) 584 (N.D. Ill. 2005) ............................    25

*Wing Shing Products (BVI), Ltd. v. Simatelex Manufactory Co., Ltd*
  479 F.Supp. 2d 388 (S.D.N.Y. 2007)............................................................................    12, 19, 20

*Wiwa v. Royal Dutch Petroleum Co.*
226 F.3d 88 (2d Cir. 2000) ...............................................................................    22

## **Statutes and Rules**

35 U.S.C. § 271 ..........................................................................................    11, 13, 25

Fed.R.Civ.P. 4(k)(1)(a) ..................................................................................    14

Fed.Rule.Civ.P. 8 ..........................................................................................    2, 13, 25

Fed.R.Civ.P. 12(b)(2) ....................................................................................    1, 12

Fed.R.Civ.P. 12(b)(6) ....................................................................................    2, 13, 23, 27

Fed.R.Civ.P. 12(e) ........................................................................................    2, 23, 24

Fed.R.Civ.P. Rule 12(g) .................................................................................    14

Fed. R. Civ. P. 15 .........................................................................................    28

New York C.P.L.R § 301 ................................................................................    15

New York C.P.L.R. § 302 ...............................................................................    19-21

## INTRODUCTION

Plaintiffs Aerotel, Ltd., Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC (collectively, "Aerotel") bring this action against AT&T Inc. ("AT&T"), BellSouth Corporation ("BellSouth") and their wholly-owned subsidiaries to enforce rights in U.S. Patent No. 4,706,275 (the "'275 patent"). Aerotel asserts claims of direct infringement, inducement and contributory infringement in violation of 35 US.C. § 271 against all defendants.

In their motions to dismiss the Amended Complaint ("Complaint") for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), defendants AT&T and BellSouth argue that they are simply holding companies that do not market any of the allegedly infringing "prepaid phone card" products and services. That is not what they tell the public. That is contrary to the facts as pled by Aerotel and substantiated by AT&T and BellSouth's public pronouncements and filings with the United States Securities and Exchange Commission ("SEC").

The Complaint makes a *prima facie* showing through its allegations, which must be credited on this motion, that AT&T and BellSouth are present under either CPLR §§ 301 or 302 arising from their ongoing business in New York, in general, and the sale through and by their subsidiaries of infringing prepaid phone card products and services. The Complaint alleges that AT&T and BellSouth performed their business activity, including the alleged infringing activity, in New York through and with their wholly-owned subsidiaries. [1]  None of the defendants challenge the jurisdiction of this Court over AT&T's and BellSouth's subsidiaries. The Complaint alleges that AT&T and BellSouth assembled, through corporate acquisitions of their

---

[1]  Aerotel submits the supporting Declaration of Joshua S. Broitman (the "Broitman Decl. __") in opposition to defendants' motions to dismiss. A motion to dismiss for lack of personal jurisdiction is "inherently a matter requiring the resolution of factual issues outside the pleadings," and accordingly, it is proper for Aerotel to present evidence on the motion. *See Pilates, Inc. v. Pilates Inst., Inc.,* 891 F. Supp. 175, 178 n. 2 (S.D.N.Y. 1995).

subsidiaries, and controlled a nationwide wireline and wireless telephone network under the "AT&T" and "Cingular" brands, and that as part of that activity they controlled and financed the infringing sales at issue.  (*See* Compl. ¶¶ 11-31)

All defendants move pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, pursuant to Rule 12(e) for a more definite statement, on grounds that the Complaint does not sufficiently identify allegedly infringing prepaid wireline or prepaid wireless products or services. Defendants confuse the burden of *pleading* patent infringement under the notice standards of Fed.R.Civ.P. 8 with Aerotel's burden of *proof* at trial.

Aerotel has met its burden by alleging ownership of the '275 patent, identifying each individual defendant, describing the means by which each defendant infringed, and pointing to specific sections of the patent law invoked.  *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 790, 794 (Fed. Cir. 2000).   In particular, the Complaint alleges that "the infringing products and services include prepaid wireline telecommunications products (e.g., prepaid calling cards a/k/a prepaid phone cards) and services (e.g., prepaid telephone service provided to users of prepaid calling cards), and prepaid wireless telecommunications products (e.g., prepaid wireless setup and refill cards) and services (e.g., prepaid telephone service using a wireless telephone)."  (Compl. ¶ 3)

Ignoring the plain allegations of the Complaint, defendants argue that they are unable to identify the allegedly infringing products and, therefore, cannot respond to the Complaint. Aerotel has provided notice of the infringing products and services at issue.  Aerotel is not required under Federal Circuit precedent to provide defendants with a claim chart and analysis of every element of each claim in its pleadings.  Aerotel has provided far more notice and particulars in its pleadings than is required to sustain the Complaint.

First, the Complaint identifies the defendants' infringing products and services as consisting of wireline "prepaid phone cards" and "prepaid wireless setup and refill cards" and prepaid telephone service for using such cards. (*Id.*)  The Complaint particularly identifies each defendant that marketed products and services in these respective categories. (*See* Compl. ¶¶ 32, 34, 36, 37, 39, 40)  The Complaint further identifies defendants' infringing "wireless" products and services by brand names, for example, "AT&T Free-2 Go Wireless" and Cingular's "Keep in Contact Prepaid Wireless".   (Compl. ¶ 37)

It exceeds all credulity, and demonstrates the total lack of merit in defendants' motion, for defendants to even hint that they do not know what their own prepaid phone card and prepaid wireless setup or refill cards and services are.  Experience shows that defendants market prepaid phone cards under hundreds and perhaps thousands of different marketing designations directed to different markets, ethnic groups and holidays.  But every one is a prepaid phone card. Defendants are trying to take unfair advantage of their marketing strategy to curtail discovery through this pleadings motion.  It remains, however, that defendants do not suggest, nor could they, that differences in marketing designations for their prepaid phone cards have any bearing on the operation of those cards and the question of infringement.

Second, Aerotel provided defendants with actual notice of products at issue in this action and its construction of patent claims.   Aerotel has engaged in discussions with defendants for years concerning the claims in this action.  For example, on September 2, 2004, Aerotel's counsel sent a letter to Geoff Sutcliffe, in-house Patent Counsel for BellSouth, providing claim charts directed to BellSouth's prepaid calling cards as compared to the '275 patent. (Broitman Decl., Ex. 1)  Similarly, on February 12, 2007 Aerotel's counsel sent a letter to Christopher M. Arena, of Woodcock Washburn LLP, Atlanta Georgia, counsel for Cingular, providing a

construction of claim 23 of the '275 patent, and identified several Cingular products for discussion with respect to infringement.  (Broitman Decl., Ex. 2)

Defendants challenge the standing of the Aerotel USA entities as proper parties.  This challenge ignores the specific allegation of the Complaint that: "All three Aerotel parties are commonly owned.  Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC are the exclusive managing agents of Aerotel, Ltd., responsible for licensing and enforcing "the '275 Patent". (Compl. ¶ 10) Courts have consistently held that in addition to the patentee, other parties with a sufficient beneficial interest in the patent may join with the patentee as co-plaintiffs.  *Ortho Pharm. Corp. v. Genetics Inst., Inc.,* 52 F.3d 1026, 1031 (Fed. Cir. 1995).

Defendants' motions should be denied.

## STATEMENT OF FACTS

Aerotel, Ltd. is the owner of the '275 patent, including the right to recover for past infringement. (*See* Compl. ¶ 1) The '275 patent contains claims directed to methods and systems for making prepaid telephone calls. (*Id.*) Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC are the exclusive managing agents for Aerotel, Ltd. in the United States and their responsibilities include the right to license and enforce the '275 patent, including the right to recover for past infringement in the United States. (*See* Compl. ¶ 10) The '275 patent expired on November 13, 2005. (*See* Compl. ¶ 2)

Defendant AT&T, formerly SBC Communications, Inc. ("SBC"), is a Delaware corporation with its principal offices in San Antonio, Texas. (*See* Compl. ¶ 11) All other named defendants are wholly-owned, direct or indirect, subsidiaries of AT&T. (*See* Compl. ¶¶ 11-20, 22, 24, 25) AT&T, through and with its subsidiaries, including the named defendants, provide telecommunication services worldwide and in this Judicial District, including prepaid calling cards and services, both wireline and wireless, that infringed the '275 patent during its term. (*See* Compl. ¶¶ 32-42)

AT&T is publicly traded on the New York Stock Exchange and had revenues in excess of $63 Billion in 2006. (Broitman Decl. Ex. 3) Its board of directors includes executive officers from its subsidiary companies, including Ameritech Corporation, AT&T Corp., Pacific Telesis Group, BellSouth Corporation and Southern New England Telephone Company ("SNET"). (Broitman Decl., Ex. 4) At its webpage, AT&T proclaims that *it* is the provider of communications services, and that it is *AT&T* which has customer loyalty. It is *AT&T* that operates globally – including within this judicial district. It is *AT&T's* business strategy that is being pursued. It is *AT&T* that markets products and services:

AT&T Inc. is the largest communications holding company in the United States and worldwide, by revenue.  Operating globally under the AT&T brand, AT&T is recognized as the leading worldwide provider of IP-based communications services to businesses and the leading U.S. provider of wireless, high speed Internet access, local and long distance voice, and directory publishing and advertising services.  As part of its "three screen" integration strategy, AT&T is expanding video entertainment offerings to include such next-generation television services as AT&T U-verse[SM] TV.

. . . . . .

AT&T continues to build on the heritage of its predecessor companies that have served customers for more than a century The new AT&T will earn customer trust and loyalty with a continuing commitment to the deployment of innovative products and services, reliable, high-quality service and excellent customer care.

(Broitman Decl., Ex. 5)

## A.    **AT&T Corporate Organization and Management**

The Complaint alleges that AT&T managed, controlled and directed its wholly-owned subsidiaries with respect to infringement of the '275 patent.  (Compl. ¶¶ 26-30) This control is evidenced by AT&T's own public statements, as discussed above, and in the corporate organization of AT&T, as set forth in AT&T's filings with the SEC.

AT&T was originally formed in 1983 as Southwestern Bell Corporation, one of the seven Regional Bell Operating Companies (or "Baby Bells") created to hold AT&T Corp.'s local telephone companies. [2]  On January 1, 1984, Southwestern Bell Corporation was spun-off from AT&T Corp. pursuant to an anti-trust consent decree, becoming an independent, publicly traded telecommunications services provider. [3]  (Broitman Decl., Exs. 6 and 7 (AT&T SEC Form 10-K,

---

[2]  The other six Baby Bells were Ameritech Corporation, BellSouth Corporation, Pacific Telesis Group, US West, Inc., Bell Atlantic Corporation and NYNEX Corporation.

[3]  After the anti-trust consent decree, AT&T Corp. continued its business as a provider of primarily long distance telephone services, including wireline prepaid calling cards and services.

fiscal year ended 12/31/2005 and 12/31/2006)).  In or about 1995, Southwestern Bell Corporation changed its name to SBC Communications, Inc. ("SBC") and embarked on a course of corporate acquisitions to expand the company's national and global reach. (*See* Broitman Decl., Ex. 8 (SBC SEC Form 10-K, fiscal year ended 12/31/1995))

SBC proceeded to acquire Baby Bell companies and other independent telecommunications companies and fully integrate these companies into SBC's business to establish itself among the largest providers of telecommunications services in the United States and the world.  In particular, SBC acquired and assumed control and management of Pacific Telesis Group in 1997, SNET in 1998, and Ameritech Corporation in 1999, thereby expanding SBC's wireline operations as the incumbent local exchange carrier (ILEC) in 13 states. (Broitman Decl., Ex. 7 (AT&T Form 10-K, 2005))  As part of this integration, SBC organized defendant AT&T Long Distance LLC (formerly SBC Long Distance LLC) to provide long distance wireline services, including prepaid calling cards and services in New York.  (Compl. ¶ 13)(Broitman Decl., Ex. 19 (New York's Department of State Division of Corporations, Entity Status Report))  AT&T Long Distance LLC (formerly, SBC Long Distance LLC), during the term of the '275 patent and to the present, has provided service to other SBC affiliates in the sale of prepaid calling cards under brand names, such as "SBC," "Pacific Bell" and "SNET". (Broitman Decl., Ex. 9)

In April 2000, SBC and BellSouth Corporation ("BellSouth") formed Cingular Wireless LLC (now defendant AT&T Mobility LLC), a joint venture owned 60% by SBC and 40% by BellSouth, to provide domestic wireless services nationally under the brand name "Cingular,"

---

In or about March 1998, AT&T Corp. entered into a License Agreement with Aerotel under the '275 patent for its wireline prepaid calling cards.

including prepaid wireless products and services that infringed the '275 patent during its term.[4]
SBC and BellSouth financed the Cingular joint venture's capital and operating cash
requirements, and jointly managed and controlled its operations, organizing Cingular Wireless
Corporation (now defendant AT&T Mobility Corporation) to manage, control and direct the
Cingular joint venture. (Compl. ¶¶ 14, 15)(Broitman Decl., Ex. 10, pp. 37-38 (AT&T SEC Form
10-Q, 3rd Quarter 2006))  SBC (now AT&T) and BellSouth have equal voting rights and
representation on the board of directors that controls Cingular, and share control equally.
(Broitman Decl., Ex 7, p. 7 (10-K, 2005); *See* Compl. ¶ 29).

      SBC integrated its Baby Bell acquisitions and the Cingular joint venture into a single
national company, "a national telecommunications leader with a single identity" and "unified
presence in the marketplace" under the SBC name.  An SBC press release dated December 10,
2002 stated:

> To further establish itself as a national telecommunications
> leader, SBC Communications, Inc. (NYSE: SBC) today announced
> it will move to a single national brand – SBC.  Use of the SBC
> brand will provide a more unified presence in the marketplace,
> making it easier for customers to find and do business with SBC
> companies across geographic boundaries and product lines.
>
> The move to a single national brand will unify offerings
> previously marketed through regional brands such as SBC
> Southwestern Bell, SBC Pacific Bell, SBC Nevada Bell and SBC
> Ameritech.  SBC companies will continue to offer wireless service
> nationwide through Cingular Wireless, SBC's joint venture with
> BellSouth.
>
> 'Adopting a single, unified SBC brand underscores our
> transformation from a collection of regional companies with
> separate identities into a national telecommunications leader with a
> single identity," said Edward E. Whitacre, Jr., Chairman and CEO,
> SBC Communications, Inc.

---

[4] BellSouth's contribution to the joint venture included defendants BellSouth Mobility DCS, Inc.
and New Cingular Wireless PCS, LLC (formerly BellSouth Mobility, LLC)(Compl. ¶¶ 19, 20).

(Broitman Decl., Ex. 11)

In 2004, under the management and control of SBC and Bell South, the Cingular joint venture acquired AT&T Wireless Services, Inc. ("AWS," now defendant New Cingular Wireless Services, Inc. or "New Cingular") and in a joint venture with AWS organized defendant Cingular Wireless II, LLC. (Compl, ¶ 16, 18) Prior to the acquisition, AWS had been providing prepaid wireless telephone products and services to its customers that infringed the '275 patent. (Compl. ¶ 30; Broitman Decl., Ex. 16 (AWS prepaid phone purchased in 2003)) The incorporation of AWS into the Cingular joint venture and organization of Cingular Wireless II, LLC facilitated and induced further infringements of the '275 patent by the Cingular joint venture. (Compl, ¶ 30.) Defendants AT&T Mobility Corp., AT&T Mobility LLC, New Cingular, Cingular-II, New Cingular Wireless PCS, LLC and BellSouth Mobility DCS, Inc. have each conducted business under the same designations of "AT&T Mobility" and "Cingular Wireless". (Compl. ¶ 21).

On November 18, 2005, SBC entered into a merger agreement for acquisition of AT&T Corp. (the "Merger Agreement") in exchange for SBC common stock. Pursuant to the Merger Agreement, a wholly owned subsidiary of SBC was merged with and into AT&T Corp. Thereafter, SBC changed its name to AT&T, Inc. (Compl. ¶ 11).[5] AT&T Corp. was vertically and horizontally integrated into SBC's business. As set forth in AT&T's 2005 Annual Report, SBC ("We") engineered and controlled this merger, as it did the prior acquisitions. The result was "Our

---

[5] During the term of the '275 patent, AT&T Corp. licensed the '275 patent as applied to wireline prepaid products and services. The license provided AT&T Corp. with an option to license wireless prepaid products and services. AT&T did not exercise that option. In or about 2001, AT&T Corp. spun-off its wireless business – AWS – which thereafter functioned as an independent entity. (Broitman Decl., Ex. 12) Aerotel asserts claims against AT&T Corp. for its infringing wireless prepaid products and services prior to the spin-off of AWS. AWS (now New Cingular) is named as a defendant for its infringing wireless prepaid products and services for the period subsequent to its spin-off from AT&T Corp.

Company" with "a strong diversified set of products and service offerings", which includes the

infringing prepaid wireline and wireless products and services:

> We acquired ATTC in order to combine ATTC's global systems
> capabilities, business and government customers and IP-based
> business with our local exchange, broadband and wireless services
> and to create potential cost savings, revenue synergies, technological
> development and other benefits.
> … .
> Our company will benefit from ATTC's assets and capabilities ….
> The combined company will have a strong, diversified set of
> products and service offerings. … Sales and support functions of the
> business services organizations will be combined.  Duplicate
> corporate functions will be eliminated.  …  In acquiring ATTC's
> assets, … we will now have additional resources and skills to
> innovate and more quickly deliver to customers the next generation
> of advanced, integrated IP-based wireline and wireless
> communications services.

(Broitman Decl., Ex. 13, pp. 51, 61)

Finally, on March 4, 2006, AT&T entered into a merger agreement for the acquisition of

BellSouth (the "BellSouth Merger Agreement") in exchange for AT&T common stock.  Pursuant to

the BellSouth Merger Agreement, a wholly owned subsidiary of AT&T was merged with and into

BellSouth.  BellSouth had been an owner of Cingular, with SBC, and controlled its activities,

including in this Judicial District.  As a result of the merger, AT&T became the sole owner of the

Cingular joint venture.  BellSouth continued as a wholly owned subsidiary of AT&T.  BellSouth

marketed prepaid wireline products and services that infringed the '275 patent during its term

through and with its wholly owned subsidiaries BellSouth Telecommunications, Inc. and

BellSouth Long Distance, Inc. d/ba/ AT&T Long Distance Service.  (Compl. ¶¶ 22-25)

**B.**    **Defendants Marketing of Infringing Products and Services**

The Complaint avers that, during the term of the '275 patent, AT&T and BellSouth have each infringed the '275 patent under any of 35 U.S.C. §§ 271(a), (b) or (c), either literally or by the doctrine of equivalents, by making, using, offering to sell, and/or selling within the United States or supplying or causing to be supplied in or from the United States, or intentionally inducing others to make, use, offer to sell, or sell in the United States or supply or cause to be supplied in or from the United States, without authority from Aerotel, prepaid wireline and wireless telecommunication products and services that are covered by one or more claims of the '275 Patent. The infringing acts of AT&T and BellSouth occurred throughout the United States, including within this Judicial District. (Compl. ¶ 32)

## STANDARDS GOVERNING DEFENDANTS' MOTIONS

### A.    The Rule 12(b)(2) Motion

A plaintiff bears the burden of establishing jurisdiction over a defendant on a motion to dismiss a complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure. *Stutts v. De Dietrich Group,* 465 F.Supp. 2d 156, 159 (S.D.N.Y. 2006). This burden must be met at trial by showing jurisdiction by a preponderance of the evidence. "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction, i.e., by making a *prima facie* showing of jurisdiction." *Jazini v. Nissan Motor Co.,* 148 F.3d 181, 184 (2d Cir. 1998). Plaintiff's *prima facie* showing is heightened following jurisdictional discovery. After the plaintiff has engaged in discovery, the "plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish personal jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999); *Ginsberg v. Gov't Properties Trust, Inc.*, No. 07 Civ. 3652007 U.S. Dist. LEXIS 75771* 11 (S.D.N.Y. Oct. 11, 2007). *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir. 1985); *SEB S.A. v. Montgomery Ward & Co., Inc., No. 99 Civ. 1284,* 2002 U.S. Dist. LEXIS 18440 (S.D.N.Y. 2002); *see also, Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co., Ltd.,* 479 F.Supp. 2d 388. (S.D.N.Y. 2007).

Because a motion to dismiss for lack of personal jurisdiction is "inherently a matter requiring the resolution of factual issues outside the pleadings," evidence may be submitted on the motion. *Stutts v. De Dietrich Group, supra.* Where, as here, the Court has not conducted an

evidentiary hearing, and plaintiff has had no opportunity for discovery, a district court must view the pleadings in the light most favorable to the plaintiff, resolving any doubts in plaintiffs' favor.

**B.**　　**The Rule 12(b)(6) Motion**

In *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007), the Supreme Court ruled that, under Fed.R.Civ.P. 8, the Complaint must contain factual "allegations plausibly suggesting (not merely consistent with)" an "entitlement to relief." 122 S.Ct. 1966. Although the complaint "does not need detailed factual allegations .... Factual allegations must be enough to raise a right to relief above the speculative level…, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)…. *Id.* at 1965. As the Second Circuit has recently stated, *Twombly* requires that a plaintiff satisfy "a flexible 'plausibility standard', which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007).

In deciding a motion to dismiss, the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Roth v. Jennings,* 489 F.3d 499, 510 (2d Cir. 2007); *Kirch v. Liberty Media Corp.,* 449 F.3d 388, 392 (2d Cir. 2006). Thus, on this motion, the Court need only decide whether there is any set of facts upon which the defendants can be liable to Aerotel for acts of infringement described in the Complaint. In particular, the Court must decide whether, taking as true all the facts alleged in the Complaint and drawing all reasonable inferences in Aerotel's favor, Aerotel has provided defendants with notice of its claims of infringement. 35 U.S.C. § 271.

## ARGUMENT

### I.    AT&T AND BELLSOUTH ARE SUBJECT TO THE PERSONAL JURISDICTION OF THIS COURT

Under the Federal Rules of Civil Procedure, a court may exercise jurisdiction over any defendant "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Fed.R.Civ.P. 4(k)(1)(a). The Courts follow a two-step procedure to determine whether personal jurisdiction exists. First, the Court decides whether a statutory basis exists under the law of the forum, here New York Civil Practice Law and Rules ("C.P.L.R."). If a statutory basis exists, the Court must consider whether the exercise of such jurisdiction comports with the requirements of due process. *Ginsberg v. Gov't Properties Trust, Inc.*, 2007 U.S. Dist. LEXIS 75771* 13 (S.D.N.Y. Oct. 11, 2007); *J.L.B. Equities, Inc. v. Ocwen Financial Corp.,* 131 F. Supp. 2d 544, 547 (S.D.N.Y. 2001)(*citing Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945)).

The Complaint alleges that AT&T and BellSouth acted "through and with" their wholly-owned subsidiaries to offer nationwide telecommunications services, including prepaid phone cards in New York, which subject them to both the general and specific jurisdiction of this Court. (Compl. ¶¶ 11, 23) *See Pfizer Inc. v. Perrigo Co.,* 903 F. Supp. 14, 16 (S.D.N.Y. 1995). AT&T and BellSouth acknowledge that the defendant subsidiaries are present in New York and subject to the Court's jurisdiction. [6]

---

[6]  In their motions, only defendants AT&T and BellSouth assert they are not subject to the jurisdiction of this Court. All other defendants waived the defense of jurisdiction by not raising jurisdiction in their motions to dismiss. Fed.R.Civ.P. Rule 12(g); *Arkwright Mutual Ins. Co. v. Scottsdale Ins. Co.*, 874 F. Supp. 601, 604 (S.D.N.Y. 1995).

### A.    C.P.L.R. § 301

CPLR § 301 permits the general exercise of personal jurisdiction over a foreign corporation "doing business" in the New York if the corporation is "present in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir. 1990). The test is pragmatic and necessarily fact-sensitive. *Landoil,* 918 F.2d at 1043. New York courts have generally focused on the following factors as indicia of "permanence and continuity". "The existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York." *Ginsberg*, 2007 U.S. Dist. LEXIS 75771 at * 13 (quoting *Landoil,* 918 F.2d at 1043). Other factors may include consideration of whether the defendant "engages in public relations in New York." *Stutts v. De Dietrich Group,* 465 F. Supp. 2d 156, 161 (E.D.N.Y. 2006). No single factor is dispositive. *Schenker v. Assicurazioni Generali S.P.A. Conso.,* No. 98 Civ. 9186 2002 U.S. Dist. LEXIS 12845, *7 (S.D.N.Y. July 15, 2002).

The Complaint alleges that AT&T and BellSouth act "through and with" its subsidiaries to provide telecommunication services in New York, including prepaid phone cards which have infringed the '275 patent. [7] In particular, AT&T has marketed wireline prepaid calling card products and services through defendants AT&T Long Distance, LLC, BellSouth, BellSouth Telecommunications, Inc. and BellSouth Long Distance, Inc., and wireless prepaid calling card

---

[7] AT&T and BellSouth assert that Aerotel's allegation in the Complaint that each defendant "has done business in this Judicial District" (Compl. ¶ 11, 24) is an acknowledgment that there is no basis for general jurisdiction over these parties. Defendants' Memo, p. 10. These allegations were in no respect a statement that the defendants were not presently active in this Judicial District in general. Insofar as the Court views these allegations as technically deficient, Aerotel requests that the Court deem these allegations amended to recite that each defendant "has been and is now doing business in this Judicial District."

products and services through defendants AT&T Corp. and the Cingular joint venture, including

AT&T Mobility LLC, AT&T Mobility Corp., New Cingular Wireless, Inc., Cingular Wireless II,

LLC, BellSouth Mobility DCS, Inc. and New Cingular Wireless PCS, LLC.

### 1.    Jurisdiction is Conferred by Agency or Alter-Ego Theory

For the New York courts to exercise general jurisdiction in this situation, the subsidiaries

must be shown to be either "agents" or "mere departments" of AT&T and BellSouth.  "To be an

agent of the parent, the plaintiff must show that the subsidiary 'does all the business which [the

parent] could do were it here by its own officials.'"  *J.L.B. Equities, Inc. v. Ocwen Financial*

*Corp.,* 131 F. Supp. 2d 544 at 549 (quoting *Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y. 2d 533

at 537 (1967)(finding jurisdiction over foreign hotel chain based on the activities of affiliated

reservation service).  Alternatively, to demonstrate that a subsidiary is a "mere department", the

Courts consider the following four factors:

> (1) common ownership; (2) financial dependency of the subsidiary
> on the parent corporation; (3) the degree to which the parent
> corporation interferes in the selection and assignment of the
> subsidiary's executive personnel and fails to observe corporate
> formalities; and (4) the degree of control over the marketing and
> operational policies of the subsidiary exercised by the parent.

*SEB S.A. v. Montgomery Ward & Co., Inc.,* No. 99 Civ. 9284 2002 U.S. Dist. LEXIS 18440, *8

(S.D.N.Y., October  1, 2002) citing *Jazini v. Nissan Motor Co.,* 148 F.3d 181, 184 (2d. Cir.

1998); *See also, Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120

(2d Cir. 1984).  The first factor, common ownership, is essential.  *Beech Aircraft,* 751 F.2d at

120.  Courts balance the remaining factors to determine whether the subsidiary acts "as a

separate and independent entity." *Ginsberg,* 2007 U.S. Dist. LEXIS 75771 at * 13 (quoting

*Knapp v. Consol. Rail Corp.,* No. 89 Civ. 1034S1992, U.S. Dist. LEXIS 10969, 1992 WL

170891 at *3  (W.D.N.Y. 1992).

16

In addition, BellSouth's joint control with AT&T of the Cingular joint venture alone is sufficient to establish *prima facie* agency to satisfy long-arm jurisdiction for both.  *Cutco Indus. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) *citing* 16 N.Y. Jur.2d *Business Relationships* § 1587 at 264 (1981)("Each joint venturer ordinarily stands in the relation of principal, as well as agent, as to each of the other co-venturers."); *Pennie & Edmonds v. Austad Co.*, 681 F. Supp. 1074, 1078  (S.D.N.Y. 1988)(participation in a joint venture is "sufficient 'control' for jurisdictional purposes.")

It is not disputed that AT&T and BellSouth are the direct or indirect owners of the named defendants, and that these parties are present in New York for jurisdictional purposes.  This meets the first prong of the "mere department" test.  The fundamental question presented regarding the remaining elements of the test is whether AT&T, as it asserts, merely acquires telecommunications companies for investment, or actively manages and controls its global enterprise.  The Complaint alleges, and the evidence shows, that AT&T is not merely an investor, but is itself an integrated and global telecommunications company.  (Broitman Decl., Ex. 5)

 AT&T contends that each subsidiary operates independently.  However, the evidence described above establishes that AT&T has ensured that all of the defendants are known simply as "AT&T" and the public understands that AT&T and its subsidiaries are acting together as one company.  AT&T plainly decided that operating under the AT&T name would advance its goal of being viewed as a single company serving the nation as a whole rather than several regional companies serving different areas of the country.  AT&T markets its telecommunications through one national website, *www.att.com*, for both wireline and wireless products.  The AT&T website uses the AT&T logo in its advertising for all subsidiaries throughout the country,

including in New York. (Broitman Decl., Ex. 17) AT&T presents itself and its subsidiaries as a unified entity providing communications products and services. This is compelling evidence that the subsidiaries are the alter ego of AT&T. *Cali v. East Coast Aviation Services, Ltd.,* 178 F. Supp.2d 276, 287 (E.D.N.Y. 2001).

The record also shows that AT&T has structured and financed the integration of its subsidiaries into its business. AT&T files a consolidated financial statement for its subsidiaries. (Broitman Decl., Exs. 6, 7) Moreover, defendants do not dispute there is overlap in the officers and directors of the defendants. AT&T's assertion that it has no employees is belied by the integration and financing of its subsidiaries' businesses. AT&T's "Corporate Profile" discloses that AT&T has 303,670 employees worldwide. (Broitman Decl., Ex. 5)

AT&T's re-assemblage of the former AT&T Corp. global communications business demonstrates a significant amount of involvement, management and control by the parent organization. Courts have found a *prima facie* case for personal jurisdiction where plaintiff presented close ties between parent and subsidiary. *See Obabueki v. Int'l Bus. Mach. Corp.,* No. 99 Civ. 112622001 U.S. Dist. LEXIS 11810, 2001 WL 921172 at *5 n. 10 (S.D.N.Y. Aug. 14, 2001) (plaintiff made out a prima facie case where parent and subsidiary have a "closer association" than in other cases); *Knapp v. Consol. Rail Corp.,* 1992 U.S. Dist. LEXIS 10969, 1992 WL 170891, at *6 (W.D.N.Y. 1992)(parental control over subsidiary important to court's conclusion that plaintiff had made out a prima facie case for personal jurisdiction).[8]

---

[8] Defendants reliance for the contrary position on *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.,* 131 F. Supp. 2d 544 (S.D.N.Y. 2001) and *Jazini v. Nissan Motor Co.,* 148 F.3d 181 (2d Cir. 1998) is misplaced. In *J.L.B. Equities,* the plaintiff did not present evidence indicating that corporate identities were compromised, but instead relied solely on the fact the two companies had overlapping officers and directors, which the Court found not to be determinative of whether a subsidiary is a mere department of a parent. Similarly, in *Jazini,* the plaintiffs' claim had no connection to New York (a defective automobile manufactured in Japan caused an accident in

**B.    C.P.L.R. § 302 – Transaction of Business**

Alternatively, a foreign corporation is subject to specific personal jurisdiction of New York Courts when the foreign corporation transacts any business in New York and the asserted claim arises out of that activity. *See N.Y.C.P.L.R. § 302*.

**1.    CPLR 302(a)(1)**

Jurisdiction is established under Section 302(a)(1) where (i) a defendant "in person or through an agent, transacts any business within the state or contracts anywhere to supply goods or services in the state", and  (ii) the cause of action arose from the transaction of business. *Studio A Entertainment, Inc. v. Direct Distributors, LLC,* No. 06 Civ. 2275, 2007 U.S. Dist. LEXIS 9449 * 10 (S.D.N.Y. Feb. 8, 2007); *Wing Shing Prods.,* 479 F. Supp. 2d at 397. Transacting business under Section 302 requires only a minimum quantity of activity as long as the activities are purposeful and there is a substantial relationship between the transaction and the asserted claim.  *Ginsberg,* 2007 U.S. Dist. LEXIS 75771 at * 39.

The Complaint alleges that AT&T and BellSouth have committed acts of direct infringement nationally and in New York through the marketing by its subsidiaries of prepaid phone cards.   Aerotel has shown above that AT&T and BellSouth subsidiaries acted as "agents" for these defendants in marketing of wireline and wireless prepaid phone cards and services nationally and in New York.  *See Point I.A.1.*

During the period of alleged infringement, AT&T and BellSouth jointly owned and controlled Cingular Wireless, LLC which operated and continues to operate a network of retail

---

Iran) and plaintiffs relied only on conclusory statements of "control" and statements by the parent that it wanted to be a "truly global company".  Here, Aerotel presents substantial evidence concerning AT&T's involvement in the organization, structure and management of its global communications network.

shops throughout New York.  A specimen product purchased in New York City is annexed to the

(Broitman Decl. as Ex. 14.)   Representative commercial literature showing wireline prepaid

calling cards marketed by SBC and its subsidiaries is annexed to the Broitman Decl. as Ex. 9.   A

sample BellSouth wireline prepaid calling card is annexed as Ex. 15 to the Broitman Decl.,

which identifies defendant BellSouth Long Distance, Inc. as the prepaid platform provider.


### 2.    CPLR 302(a)(2) and (3)

Sections 302(a)(2) and (a)(3) confer jurisdiction, respectively, over a non-resident

defendant who, in person or through an agent, commits a tortious act within New York or

commits a tortious act outside New York that causes injury in New York.  *See Studio A*

*Entertainment, Inc. v. Direct Distributors, LLC,* 2007 U.S. Dist. LEXIS 9449 (S.D.N.Y.

2007)(conferring jurisdiction under both sections 302(a)(2) and (a)(3) over non-resident who

directed his agents to bring infringing DVDs into New York).  It is well established that patent

infringement is a tortious act that arises where the infringing sales were made, and "the situs of

the injury [in a patent infringement action] is the location, or locations, at which the infringing

activity directly impacts the interests of the patentee, here the place of the infringing sales…"

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994); *Wing*

*Shing Prods.,* 479 F.Supp.2d at 400.

Aerotel has shown above that AT&T's subsidiaries, including, for example, BellSouth,

AT&T Corp., AT&T Long Distance, LLC and AT&T Mobility LLC (formerly Cingular

Wireless LLC), all acting as AT&T's agents or alter egos, have committed acts of direct

infringement through the marketing and sale of infringing prepaid phone cards in New York.

These acts provide the basis for the cause of action, and personal jurisdiction over AT&T and

BellSouth under section 302(a)(2).  *See, e.g., Imagineering, Inc. v. Van Klassens, Inc.* 797 F.Supp. 329, 331 (S.D.N.Y. 1992).

AT&T's marketing and sale of infringing prepaid calling cards outside of New York also subjects AT&T and BellSouth to personal jurisdiction under C.P.L.R. 302(a)(3).  Under subsection 302(a)(3), plaintiff must show that defendant "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  N.Y. C.P.L.R. § 302(a)(3)(2006).

To satisfy the first element, the defendant must make a "discernable effort to directly or indirectly serve the New York market."  *See Kernan v. Kurz-Hasings, Inc*., 175 F.3d 236, 241 (2d Cir. 1999)(citation omitted).  AT&T admits that it is a global company that provides telecommunication services in all of the United States, including New York.  Indeed, Aerotel has shown above that through and with its subsidiaries, AT&T and BellSouth marketed and sold prepaid calling cards in New York.  A reasonable person would have realized that these actions would have consequences in New York subjecting them to personal jurisdiction.  *See Studio A Entertainment, Inc.*, 2007 U.S. Dist. LEXIS 9449 at * 21-22.

## C.    <u>Due Process</u>

This Court's exercise of personal jurisdiction over AT&T and BellSouth comports with due process because defendants have "certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe,* 326 U.S. 310, 316.  AT&T and BellSouth have a presence in New York through

management and close ties with their subsidiaries. AT&T's substantial presence through its affiliates, and its listing on New York Stock Exchange, [9] provide the requisite contacts for a determination that it has "purposely avail[ed] itself of the privilege of conducting activities" in New York such that "it should reasonably anticipate being haled into court [here]." *Ginsberg,* 2007 U.S. Dist. LEXIS 75771 at * 45 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 U.S. 462, 474, 475 (1985).

Other factors make the exercise of jurisdiction here reasonable. AT&T Corp. is a plaintiff in a related action captioned *AT&T Corp. v. Aerotel Ltd.*, Civil Action No. 07-CV-2294 (RJH), before this Court relating to the '275 patent. It is noteworthy that, as here, the same counsel represents AT&T and AT&T Corp.[10] As such, it is clear that AT&T is not unduly burdened defending this action in this Court. Further, judicial economy will be furthered by adjudication of common issues presented in claims against AT&T and its subsidiaries in one forum. *See Metro. Life Ins. V. Roberson-Ceco Corp.,* 84 F.3d 560, 568 (2d Cir. 1996).

---

[9] A stock exchange listing in New York should be considered with other indicia of "doing business" in New York. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 97 (2d Cir. 2000).

[10] The fact that an attorney for subsidiary also represents the parent "evidences a role of the parent in the day-to-day operations of the subsidiaries … [and] provides another example of common personnel within, and the shifting of personnel among, the corporations." *Ginsberg*, 2007 U.S. Dist. LEXIS 75771 at *27-28 quoting *Knapp v. Consol. Rail Corp.*, No. 89 Civ. 1034S, 1992 U.S. Dist. LEXIS 10969, 1992 WL 1708991 at *5 (W.D.N.Y. 1992).

## II.    DEFENDANTS' MOTION PURSUANT TO FED.R.CIV.P. 12(B)(6) TO DISMISS, OR IN THE ALTERNATIVE PURSUANT TO 12(E) FOR A MORE DEFINITE STATEMENT SHOULD BE DENIED

Defendants' motion should be denied because the Complaint particularly states claims of infringement of the '275 patent as against all parties. The Complaint fully identifies the infringing parties and the "wireline" and "wireless" prepaid phone card products that each party has marketed during the term of the '275 patent.

> To state a claim for patent infringement, 'a patentee need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself.' *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 794 (Fed. Cir. 2000); *accord DigiGAN, Inc. v. iValidate, Inc.,* 2004 U.S. Dist. LEXIS 1324, No. 02 Civ. 0420, 2004 WL 203010, at *4 (S.D.N.Y. Feb. 3, 2004). A complaint for patent infringement need only meet the following requirements: '[(1) allege] ownership of the asserted patent, [(2)] name[] each individual defendant, [(3)] cite[] the patent that is allegedly infringed, [(4)] describe[] the means by which the defendants allegedly infringe, and [(5)] point[] to the specific sections of the patent law invoked.' *Phonometrics,* 293 F.3d at 794; *accord DigiGAN,* 2004 U.S. Dist. LEXIS 1324, 2004 WL 203010*4.

*Asip v. Nielsen Media Research, Inc.,* No. 03 Civ. 58662004 U.S. Dist. LEXIS 2350 *8 (S.D.N.Y. Feb. 17, 2004).

The Complaint satisfies the pleading requirements of Fed.R.Civ.P. Rule 8 because it alleges that: (1) Aerotel, Ltd is owner of the '275 patent (Compl. ¶ 1); (2) Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC (collectively, the "Aerotel USA") are the exclusive managing agents of Aerotel, Ltd. responsible for licensing and enforcing the '275 patent (Compl. ¶¶ 7-10); (3) All three Aerotel parties are commonly owned (Compl. ¶ 10); (4) AT&T, BellSouth and their wholly owned subsidiaries and affiliates are defendants (Compl. ¶¶ 11-25); (5) AT&T and BellSouth managed and controlled its subsidiaries with respect to their acts of infringement (Compl. ¶¶ 26-

31); (6) defendants' acts of direct or indirect infringement of the '275 patent arose from the marketing of "prepaid wireline and wireless telecommunications products and services" (Compl. ¶¶ 32-42); and (7) such acts of infringement were willful (*Id.*).

A.    <u>Fed.R.Civ.P. 12(e)</u>

Aerotel has complied with the liberal pleading requirements of Rule 8 and, as such, there is no basis for defendants' proposed Rule 12(e) motion for a more definite statement. *Asip v. Nielsen Media Research, Inc., supra.* 204 U.S. Dist. LEXIS 2350*6. In *Asip,* which is directly on point, the Court observed that "the tendency under the Federal Rules is to discourage motions to compel more definite complaints and to encourage the use of discovery procedures to apprise the parties of the basis for the claims made in the pleadings." *Asip, supra.* 2004 U.S. Dist. LEXIS 2350*6 *(quoting Markovic v. New York City Sch. Constr. Autho.,* 2000 U.S. Dist. LEXIS 13130, No. 99 Civ. 103339, 2000 WL 1290604, at *3 (S.D.N.Y. Sept. 13, 2000)). Here, Aerotel's claims are in no respect vague, the Complaint specifically states that defendants have infringed, induced or contributed to infringement of the '275 Patent. The Complaint identifies defendants' infringing products and services by brand names, for example, "AT&T Free-2 Go Wireless" and Cingular "Keep in Contact Prepaid Wireless", and also identifies non-party pre-paid service providers that directly infringed the '275 Patent. *See* Compl. ¶¶ 37, 39 and 40.

Federal Rule of Civil Procedure 8(e)(2) provides that "[a] party may set forth two or more statements of a claim or defense alternately or hypothetically". *See also Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999) ("Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and permits a party to 'set forth two or more statements of a claim or defense alternately or hypothetically,' and to 'state as many claims or defenses as the party has regardless of consistency'"). Contrary to defendants'

assertion, it is entirely proper for Aerotel, in the alternative, to allege claims of direct,

contributory and contributory infringement.  35 U.S.C. § 271.  *See Windy City Innovations, LLC*

*v. America Online, Inc.*, 227 F.R.D. 278, 282-3, 61 Fed. R. Serv. 3d (Callaghan) 584 (N.D. Ill.

2005)(holding that alleging infringement "directly, contributorily, by inducement, or

otherwise..." satisfied the notice pleading standard and "indicate[d] that after discovery, [the

plaintiff] will be able to state with more certainty the degree of involvement of [the defendant] in

the alleged infringement.")

The Complaint alleges that AT&T and BellSouth (which AT&T acquired in 2006) formed

Cingular Wireless in 2001 as a conglomeration of regional wireless companies that were already

infringing the '275 patent, and that this conglomeration facilitated and induced further

infringements of the '275 patent. (*See* Compl, ¶ 29).  Similar allegations of inducement of

infringement are made in connection with Cingular Wireless' acquisition of AT&T Wireless

Services, Inc. in 2004 (*see* Compl, ¶ 30),  and SBC's and BellSouth's respective acquisitions of

corporate entities involved in the provision of prepaid wireline telephone service.  The goal of such

acquisitions and conglomerations was to increase business, which necessarily had the effect of

increasing infringements of the '275 patent.

**B.**    <u>**Adequate Notice**</u>

Defendants' assertion that they have no clue as to which products and services are alleged

to infringe is baseless.  Aerotel has pleaded facts sufficient to place the Defendants on notice.

Paragraph 3 of the Complaint specifies that:

> . . . the infringing products and services include prepaid wireline
> telecommunications products (e.g., prepaid calling cards a/k/a prepaid phone cards)
> and services (e.g., prepaid telephone service provided to users of prepaid calling
> cards), and prepaid wireless telecommunications products (e.g., prepaid wireless

setup and refill cards) and services (e.g., prepaid telephone service using a wireless telephone).

Each Defendant has full knowledge regarding its own sale of prepaid wireless or wireline telecommunications products of the types identified by Aerotel, namely, prepaid calling cards and prepaid wireless setup and refill cards. Defendants' assertions that it does not know which of its products are "prepaid calling cards" and "prepaid wireless setup or refill cards" is a blatant litigation ploy. Defendant AT&T Corp. licensed the '275 patent as applied to prepaid phone cards and had no difficulty in identifying these products. The other named defendants are equally capable in this regard.

Defendants know that they market prepaid phone cards and services under hundreds and perhaps thousands of marketing designations, and it would be impossible for Aerotel to list them in its pleading. Defendants also know that all of their prepaid cards and services are prepaid phone cards and services as pleaded by Aerotel. Defendants do not suggest that differences in the marketing designations for their prepaid phone cards have any bearing on the operation of those cards or the question of infringement.

Moreover, Aerotel provided defendants with actual notice of products at issue in this action and its construction of the '275 patent claims at issue. Aerotel has engaged in discussions with defendants for years concerning the claims in this action. For example, on September 2, 2004, Aerotel's counsel sent a letter (Broitman Decl, Ex.1) to Geoff Sutcliffe, in-house Patent Counsel for BellSouth, providing claim charts directed to BellSouth's prepaid calling cards as compared to the '275 patent. Similarly, on February 12, 2007 Aerotel's counsel sent a letter (Broitman Decl., Ex. 2) to Christopher M. Arena, of Woodcock Washburn LLP, Atlanta Georgia, counsel for Cingular,

providing a construction of claim 23 of the '275 patent and identifying the Cingular products for discussion with respect to infringement.[11]


## III.    DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS THE AEROTEL USA AFFILIATES FOR LACK OF STANDING SHOULD BE DENIED

Defendants' challenge to the standing of the Aerotel USA entities ignores the specific allegation of the Complaint that: "All three Aerotel parties are commonly owned. Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC are the exclusive managing agents of Aerotel, Ltd., responsible for licensing and enforcing Aerotel, Ltd.'s' '275 patent. (Compl. ¶ 10). Courts have consistently held that in addition to the patentee, other parties with a sufficient beneficial interest in the patent may join with the patentee as co-plaintiffs. As explained by the Federal Circuit in *Ortho Pharm. Corp. v. Genetics Inst., Inc.,* 52 F.3d 1026, 1031 (Fed. Cir. 1995), to have co-plaintiff standing, a party "must hold some of the proprietary sticks from the bundle of patent rights, albeit a lesser share of rights in the patent than for an assignment and standing to sue

---

[11]  The *DePaul, Catapano* and *Gen-Probe* decisions on which Defendants rely are distinguishable. In *DePaul v. General Instrument Corp.*, 1991 U.S. Dist. LEXIS 4077 (S.D.N.Y. 1991), the district court dismissed the complaint because it contained only a naked assertion that the defendant had knowingly infringed, without specifying how the defendant infringed. In *Catapano v. Wyeth Ayerst Pharmaceuticals, Inc.*, 88 F. Supp. 2d 27, 29-30 (E.D.N.Y. 2000), the district court dismissed the complaint in part because the plaintiff "has not alleged that the Defendants are using or selling his method of treating immune deficient patients". In *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948 (S.D. Cal. 1996), the district court ruled that the plaintiff's reference to "products and/or kits" was vague and did not provide adequate notice. In contrast, Aerotel's allegation that "the infringing products and services include prepaid wireline telecommunications products (e.g., prepaid calling cards a/k/a prepaid phone cards) and services (e.g., prepaid telephone service provided to users of prepaid calling cards), and prepaid wireless telecommunications products (e.g., prepaid wireless setup and refill cards) and services (e.g., prepaid telephone service using a wireless telephone)" is not vague.

alone."   The Aerotel USA entities meet this standard because as alleged in the Complaint, they

have the right with Aerotel, Ltd. to license and enforce the '275 Patent.[12]


## IV.    LEAVE TO REPLEAD AND TAKE JURISDICTIONAL DISCOVERY SHOULD BE GRANTED IF NECESSARY

Defendants' motions to dismiss should be denied in their entirety.   However, in the event

that the Court finds that Aerotel's Complaint has not been sufficiently pled, Aerotel requests

leave to amend to correct the deficiencies pursuant to Fed. R. Civ. P. 15.  The Second Circuit has

cautioned that leave to replead should be freely granted unless it is clear that any amendment of a

claim would be futile.  *See*, *e.g.*, *Nerney v. Valente & Sons Repair Shop*, 66 F.3d 25, 29 (2d Cir.

1995); *Stern v. Gen. Elec. Co.*, 924 F.2d 472, 477-78 (2d Cir. 1991); *Ritchie Capital*

*Management, L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494,2007 U.S. Dist. LEXIS 51081,

*29-30 (S.D.N.Y. Jul. 17, 2007)(granting leave to replead personal jurisdiction).

Similarly, Aerotel further requests leave to take limited jurisdictional discovery should

the Court determine that there is any deficiency in the pleading or evidentiary proof. [13]

---

[12]  Defendants' reliance on the Federal Circuit's decision in *Propat Int'l Corp. v. RPost, Inc*., 2007 U.S. App. LEXIS 77 (Fed Cir. 2007) is misplaced.  In that case, unlike here, the only plaintiff was Propat, a representative of the patentee.  The patentee itself was not a party. Moreover, the plaintiff and the patentee were not commonly-owned companies.  Here, on the other hand, the Aerotel USA plaintiffs and Aerotel, Ltd. are commonly owned, and there is no threat of multiple litigations between the Aerotel entities on the one hand, and the defendants on the other, because every Aerotel entity having rights with respect to the '275 patent is a named plaintiff in this action, and has been since it commenced.

[13]  A district court may permit a plaintiff to engage in limited jurisdiction for determination of a jurisdictional motion.  *See Filius v. Lto Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990); *Ginsberg v. Government Properties Trust, Inc.*, 2007 U.S. Dist. LEXIS 75771* 10 (S.D.N.Y. Oct. 11, 2007); *See also, Ayyash v. Bank Al-Madina,* No. 04 Civ. 9201, 2006 U.S. Dist. LEXIS 9677 (S.D.N.Y. Mar. 9,  2006)

## V.    CONCLUSION

Defendants' motions should be denied.


Dated: New York, New York
      November 9, 2007


Respectfully submitted,

Robert C. Morgan (RM 0245)
Jeanne C. Curtis (JC 4673)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036-8704
(212) 596-9049


OSTRAGER CHONG FLAHERTY
& BROITMAN P.C.

By: _____

Glenn F. Ostrager (GFO-2023)
Dennis M. Flaherty (DMF-5523)
Joshua S. Broitman (JSB-4644)

570 Lexington Avenue
New York, New York 10022-6894
(212) 681-0600

*Attorneys for Aerotel, Ltd., Aerotel U.S.A., Inc.
and Aerotel U.S.A., LLC*