UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AEROTEL, LTD., AEROTEL U.S.A., INC. and AEROTEL U.S.A., LLC,<br><br>        Plaintiffs,<br><br>        -v-<br><br>AT&T INC. (formerly SBC Communications, Inc.), BELLSOUTH CORPORATION, AT&T CORP., AT&T LONG DISTANCE, LLC (formerly SBC Long Distance, LLC), AT&T MOBILITY CORPORATION (formerly Cingular Wireless Corporation), AT&T MOBILITY LLC (formerly Cingular Wireless LLC), NEW CINGULAR WIRELESS SERVICES, INC. (formerly AT&T Wireless Services, Inc.), CINGULAR WIRELESS II, LLC (formerly Cingular Wireless II, Inc.), NEW CINGULAR WIRELESS PCS, LLC (formerly BellSouth Mobility, LLC), BELLSOUTH MOBILITY DCS, INC., BELLSOUTH TELECOMMUNICATIONS, INC., d/b/a AT&T SOUTHEAST, and BELLSOUTH LONG DISTANCE, INC. d/b/a AT&T LONG DISTANCE SERVICE,<br><br>        Defendants. | ELECTRONICALLY FILED<br><br><br>Civil Action No.<br>07-Civ-3217 (RJH) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF (1) MOTION OF DEFENDANTS AT&T INC. AND BELLSOUTH CORPORATION TO DISMISS THE AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION; (2) MOTION OF ALL DEFENDANTS TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT; AND (3) MOTION OF ALL DEFENDANTS TO DISMISS THE CLAIMS OF AEROTEL U.S.A., INC. AND AEROTEL U.S.A., LLC FOR LACK OF STANDING**

| | | |
|---|---|---|
| **FULBRIGHT & JAWORSKI L.L.P.**<br>Joseph P. Zammit<br>Edward P. Dolido<br>666 Fifth Avenue<br>New York, New York  10103<br>Tel:   (212) 318-3000<br>Fax:  (212) 318-3400<br><br>Attorneys for Defendants<br>AT&T, Inc. BellSouth Corporation, AT&T Corp., SBC Long Distance, LLC (incorrectly named herein as AT&T Long Distance, LLC), AT&T Mobility Corporation, AT&T Mobility LLC, New Cingular Wireless Services, Inc., Cingular Wireless II, LLC, New Cingular Wireless PCS LLC, BellSouth Mobility DCS, Inc. and BellSouth Telecommunications, Inc. | -and- | **HUNTON & WILLIAMS LLP**<br>Maya M. Eckstein<br>Shawn Patrick Regan<br>200 Park Avenue<br>New York, NY  10166<br>(212) 309-1000<br><br>Attorneys for Defendant<br>BellSouth Long Distance, Inc. |

## TABLE OF CONTENTS

Page

Table Of Authorities ........................................................................................................................ iii

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.   AT&T INC. AND BELLSOUTH CORPORATION ARE NOT SUBJECT TO
     PERSONAL JURISDICTION ........................................................................................... 1

     A.   Plaintiffs Present No Evidence of General Jurisdiction ........................................ 1

     B.   Plaintiffs Present No Evidence of Specific Jurisdiction ....................................... 6

II.  AEROTEL U.S.A., INC. AND AEROTEL U.S.A., LLC LACK STANDING ................ 6

III. PLAINTIFFS FAIL TO ADEQUATELY PLEAD INFRINGEMENT ............................ 8

IV.  PLAINTIFFS' PLEAS TO AMEND AND FOR DISCOVERY LACK THE
     NECESSARY FOUNDATION ........................................................................................ 10

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Aerotel, Ltd. v. Sprint Corp.*,
    100 F. Supp. 2d 189 (S.D.N.Y. 2000) .................................................................................. 5

*Bell Atlantic v. Twombly*,
    127 S. Ct. 1955 (2007) ..................................................................................................... 1, 8

*Bellomo v. Pennsylvania Life Co.*,
    488 F. Supp 744, 745 (S.D.N.Y. 1980) ................................................................................ 5

*Cali v. East Coast Aviation Services, Ltd.*,
    178 F. Supp. 2d 276 (E.D.N.Y. 2001) .................................................................................. 6

*Cornell v. Assicurazioni Generali S.p.A.*,
    2000 WL 284222 (S.D.N.Y. 2000) ....................................................................................... 4

*Frummer v. Hilton Hotels, Int'l, Inc.*,
    19 N.Y.2d 533, 281 N.Y.S.2d 41 (1967) .............................................................................. 2

*Hayden v. County of Nassau*,
    180 F.3d 42 (2d Cir. 1999) ................................................................................................. 10

*J.L.B. Equities v. Ocwen Fin. Corp.*,
    131 F. Supp. 2d 544 (S.D.N.Y. 2001) ............................................................................. 4, 5

*Jazini v. Nissan Motor Co., Ltd.*,
    148 F.3d 181 (2d Cir. 1998) ....................................................................................... 2, 3, 10

*Jerge v. Potter*,
    No. 99-cv-0312E, 2000 U.S. Dist. LEXIS 11648 (W.D.N.Y. Aug. 11, 2000) ...................... 5

*Krepps v. Reiner*,
    414 F. Supp. 2d 403 (S.D.N.Y. 2006) .................................................................................. 4

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
    52 F.3d 1026 (Fed. Cir. 1995) ............................................................................................. 7

*Porter v. LSB Indus.*,
    192 A.D.2d 205, 214-15, 600 N.Y.S.2d 867, 873-74 (4th Dep't 1993) ............................... 6

*Propat Int'l Corp. v. RPost US, Inc.*,
    473 F.3d 1187 (Fed. Cir. 2007) ....................................................................................... 7, 8

*Stutts v. De Dietrich Group*,
    465 F. Supp. 2d 156 (E.D.N.Y. 2006) .................................................................................. 5

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft*,
    751 F.2d 117 (2d Cir. 1989) ............................................................................................ 3, 4

## TABLE OF AUTHORITIES
(Continued)

*Windy City Innovations, LLC v. America Online*,
  227 F.R.D. 278 (N.D. Ill. 2005) ............................................................................................... 9

*Wiwa v. Royal Dutch Petroleum Co.*,
  226 F.3d 88 (2d Cir. 2000) ...................................................................................................... 1

**Rules**

N.Y. C.P.L.R. § 302(a)(1) .............................................................................................................. 6

N.Y. C.P.L.R. § 302(a)(2) .............................................................................................................. 6

N.Y. C.P.L.R. § 302(a)(3) .............................................................................................................. 6

**Preliminary Statement**

Plaintiffs attempt to justify naming corporate defendants as to whom there is no personal jurisdiction the same way that they attempt to justify naming corporate plaintiffs that have no standing: according to Plaintiffs, it should be enough that those corporate entities own, or are owned by, other parties who are properly named.  It is not.  Plaintiffs' wholesale disregard of both their own and Defendants' separate corporate identities is improper under the law.

Likewise, Plaintiffs' opposition to this motion does nothing to clarify what each Defendant is accused of having done.  The Complaint is a mish-mash of non-specific allegations seemingly accusing Defendants of directly infringing and, at the same time, accusing them of somehow contributing or inducing infringement by third parties, all the while without explaining even what products, services or actions are accused.  Permitting such a complaint to stand would be directly contrary to the Supreme Court's admonition that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."  Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1967 (2007).

**ARGUMENT**

**I.   AT&T INC. AND BELLSOUTH CORPORATION ARE NOT SUBJECT TO PERSONAL JURISDICTION**

   **A.   Plaintiffs Present No Evidence of General Jurisdiction**

Plaintiffs do not contend that AT&T Inc. and BellSouth Corporation, themselves, do any business in New York.[1]  Moreover, Plaintiffs agree that AT&T Inc. and BellSouth Corporation can be subject to general jurisdiction only if their subsidiaries' activities in New York are conducted as "agents" or as "mere departments" of their parents.  (Opp. Brief at 16; see also

---

[1]   AT&T Inc.'s stock is traded on the New York Stock Exchange (Britt Decl. ¶ 2), and Aerotel asserts that this "should be considered with other indicia of 'doing business' in New York" in determining whether personal jurisdiction exists.  (Opp. Brief at 22 n.9).  Jurisdiction, however, cannot be predicted solely upon the fact that stock trades on the NYSE because "foreign corporations [have] substantial latitude to list their securities on New York-based stock exchanges and to take the steps necessary to facilitate those listings. . .without thereby subjecting themselves to New York jurisdiction for unrelated occurrences."  Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 97 (2d Cir. 2000).  Here, there are no other New York contacts to consider together with the stock exchange listing as neither AT&T Inc. nor BellSouth Corporation have any other New York contacts.  See Britt Decl. ¶¶ 2, 5-11; Lacy Decl. ¶¶ 2, 6-15.

Mov. Brief at 12-13). Plaintiffs, however, offer no evidence whatsoever to establish jurisdiction under either of those standards.[2]

As explained in Defendants' Moving Brief (at 12), the "agency" theory requires that the subsidiary's business in New York be conducted as the agent for the parent, and "the plaintiff must show that the subsidiary 'does all the business which [the parent corporation] could do were it here by its own officials.'" Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998) (quoting Frummer v. Hilton Hotels, Int'l, Inc., 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41 (1967)). Accord, Opp. Brief at 16. In other words, the subsidiary may be acting as the parent's agent when it markets or sells the parent's products or services in the state, or otherwise transacts the parent's business. See Mov. Brief at 12 – 13.

Here, however, it is undisputed that AT&T Inc. and BellSouth Corporation are holding companies without products or services of their own (Britt Decl. ¶¶ 5, 6, 11; Lacy Decl. ¶¶6, 7, 15), and Plaintiffs make no attempt to show that any of the subsidiaries conducted any "holding company business" in New York. The subsidiaries which do business in New York market their own products and services, not the non-existent products and services of their ultimate corporate parents. The "agency" theory is, therefore, plainly inapplicable. (See Mov. Brief at 12).[3]

---

[2] Plaintiffs misstate their burden on this motion when they assert that "a district court must view the pleadings in the light most favorable to the plaintiff, resolving any doubts in plaintiff's favor" (Opp. Brief at 13), and that the Complaint's jurisdictional allegations "must be credited on this motion" (id. at 1). As noted in Defendants' Moving Brief (at 7), where, as here, Defendants have presented evidence negating the existence of personal jurisdiction, Plaintiffs' conclusory pleadings are not to be credited.

[3] Plaintiffs pepper their brief with naked conclusions masquerading as fact. For example, they assert that "AT&T [Inc.] marketed wireline prepaid calling card products and services through [other] defendants. . . ." (Opp. Brief at 15.) But the uncontroverted evidence is that AT&T Inc. never offered or sold any calling cards — or any other products or services. Britt Decl. ¶6. Aerotel is thus necessarily referring to AT&T subsidiaries' marketing of their own products and assuming, without any factual or legal basis whatsoever, that this should be attributable to their corporate parents. Similarly, Plaintiffs assert that "AT&T [Inc.] admits that it is a global company that provides telecommunications services in all of the United States. . ." (Opp. Brief at 21.) AT&T Inc. admitted no such thing. See Britt Decl. ¶6 (explaining that AT&T Inc. does not offer any telecommunications products or services anywhere). What Plaintiffs may be describing as an "admission" are simply statements on the "at&t" web site, or in securities filings, which discuss the activities of all subsidiaries on a consolidated basis. As discussed below, the caselaw is clear that such general statements about the AT&T family of companies do not mean that AT&T Inc. itself offers the products or services of its subsidiaries or that AT&T Inc. is subject to jurisdiction in New York based on the activities of its subsidiaries. Another example is Plaintiffs' statement that "[t]he record also shows that AT&T [Inc.] has

footnote continued . . .

Plaintiffs' sole discussion of the "agency" theory is to state (at p. 17) that "BellSouth's joint control with AT&T [Inc.] of the Cingular joint venture alone is sufficient to establish *prima facie* agency to satisfy long-arm jurisdiction for both." That statement is not correct. Plaintiffs cite two cases which stand only for the straightforward proposition that one joint venturer can be the agent for the other when acting in furtherance of the joint venture. (Opp. Brief at 17.) At best, this might mean that BellSouth Corporation's activities in New York could be imputed to AT&T Inc., and *vice versa*, for jurisdictional purposes. That, though, would not help Plaintiffs, because neither BellSouth Corporation nor AT&T Inc. is alleged to have undertaken any actions in New York. There is no authority for the very different proposition that Plaintiffs seek to advance – that just because AT&T Inc. and BellSouth Corporation were joint owners of Cingular, the actions of the Cingular entity are to be imputed to its parents — because, as noted in Defendants' Moving Brief, "the presence of the subsidiary alone does not establish the parent's presence in the state." Mov. Brief at 12 (quoting Jazini, supra, 148 F.3d at 184.) The "joint venture" was nothing more than joint ownership of a corporation and personal jurisdiction does not follow from the fact of ownership.[4]

Plaintiffs' attempt to fit within the "mere department" theory fares no better. The only factual evidence Plaintiffs offer in support of their argument that the subsidiaries of AT&T Inc. and BellSouth Corporation function as "mere departments" of their ultimate corporate parents,

---

structured and financed the integration of its subsidiaries into its business." (Opp. Brief at 18.) Again, the record shows no such thing; there is no evidence of AT&T Inc. "financing" its subsidiaries and the record merely reflects that AT&T Inc., as holding company, acquired other companies and managed its portfolio of companies just as any holding company would. See, e.g., Volkswagenwerk Aktiengesellschaft v. Beech Aircraft, 751 F.2d 117, 120 (2d Cir. 1984) ("the officers of any corporation that owns the stock of another necessarily exercise a considerable degree of control over the subsidiary corporation and the discharge of that supervision alone is not enough to subject the parent to New York jurisdiction."). The foregoing are just examples of Plaintiffs' propensity to couch unsupported conclusions as statements of fact and, by not pointing out every such instance in Plaintiffs' brief, Defendants are not conceding that any such conclusions are supportable.

[4] Moreover, if it were true that on March 4, 2006, AT&T Inc. became the sole owner of Cingular, as Plaintiffs allege (Opp. Brief at 10), there would no longer be a "joint venture" at the time the lawsuit was commenced. Plaintiffs' own assertion thus renders their "joint venture" argument irrelevant for purposes of general jurisdiction as the jurisdictional inquiry must focus on whether the defendant is "doing business" in the state at the time the action was brought. See Mov. Brief at 10.

aside from common ownership, is:

- "AT&T files a consolidated financial statement for its subsidiaries." (Opp. Brief at 18).
- "[T]here is overlap in the officers and directors of the defendants." (Id.)
- "AT&T [Inc.] has ensured that all of the defendants are known simply as 'AT&T' and the public understands that AT&T [Inc.] and its subsidiaries are acting together as one company." (Opp. Brief at 17.)

The consolidated financial statement is meaningless for jurisdictional purposes. "The rules regarding the consolidation of subsidiaries are controlled by generally accepted accounting principles, which require parent corporations to consolidate subsidiaries if the parent owns more than 50 percent of the subsidiary's stock." Volkswagenwerk Aktiengesellschaft, supra, 751 F.2d at 121 n.3 (holding that "[c]onsolidation, therefore, does not distinguish between independent and controlled subsidiaries under New York Law"). Consequently, "'because consolidated financial reporting is typical in a parent-subsidiary relationship, a mere department relationship cannot be established solely on the basis of such reporting.'" J.L.B. Equities v. Ocwen Fin. Corp., 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001) (quoting Cornell v. Assicurazioni Generali S.p.A., 2000 WL 284222, *4 (S.D.N.Y. 2000)).

Similarly, Plaintiffs present no evidence of any "overlap" in officers and directors among Defendants. Plaintiffs' assertion that "[AT&T Inc.]'s board of directors includes executive officers from its subsidiary companies" (Opp. Brief at 5, citing Broitman Decl. Ex. 4) is misleading: Broitman Decl. Exhibit 4 is a listing of the biographies of AT&T Inc.'s directors which discloses that certain of them were *formerly* directors of companies *before* those companies became subsidiaries of AT&T Inc. Thus, Plaintiffs have not documented a single instance where an individual simultaneously serves as officer or director of both AT&T Inc. and one of its subsidiaries (and Plaintiffs do not make even a similarly unsupported assertion as to BellSouth Corporation). Inasmuch as it is Plaintiffs' burden to provide evidence to support its assertion of jurisdiction, e.g., Krepps v. Reiner, 414 F. Supp. 2d 403, 406 (S.D.N.Y. 2006), their failure to present any such evidence here is fatal.[5]

---

[5]  Plaintiffs grasp at straws when they note that the same *outside* counsel represents both AT&T Inc. and AT&T Corp., but cites authority relying upon the fact that the same *inside* general counsel represented both a parent and subsidiary. (Opp. Brief at 22 and n.10.)
footnote continued . . .

The last "fact" that Plaintiffs point to, the common website and "at&t" branding, is merely an indication that AT&T Inc.'s subsidiaries are marketed as a "family" without highlighting which particular corporations within the family offer particular products or services. While the effect of such a unified branding strategy may be to downplay in consumers' minds the identity of the particular corporate entity providing a particular service, that has nothing to do with the jurisdictional inquiry before the Court. "An advertising strategy deciding not to present to its consumers the existence of a parent-subsidiary relationship is not equivalent to a showing that the parent corporation exercises any control over its subsidiary's operations or marketing activities." J.L.B. Equities, supra, 131 F. Supp. 2d at 550 (declining to find jurisdiction over the parent even when its web page "treats the parent and subsidiary 'as one'"). "Nor does the parent subject itself to jurisdiction merely by holding the affiliate group out to the public as a unitary enterprise." Bellomo v. Pennsylvania Life Co., 488 F. Supp 744, 745 (S.D.N.Y. 1980). Accord, Stutts v. De Dietrich Group, 465 F. Supp. 2d 156, 168 (E.D.N.Y. 2006) (dismissing for lack of personal jurisdiction and holding that plaintiffs' submissions from defendants' websites showing parents and subsidiaries operating as a "concerted entity" fail to provide any information about the extent, if any, of [the parent's] control over the other entities, the crucial inquiry under the 'mere department' test"); Jerge v. Potter, No. 99-cv-0312E, 2000 U.S. Dist. LEXIS 11648, *14 (W.D.N.Y. Aug. 11, 2000) (that subsidiary is listed as "one of the operating units or divisions of" parent company does not indicate control under the "mere department" test); Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 2d 189, 193 (S.D.N.Y. 2000) (holding it to be irrelevant for personal jurisdiction purposes that "Sprint['s] web page . . . does, in fact, talk generically about Sprint as a collective entity," by stating that "'Sprint is a global communications company. . . Sprint built

---

Moreover, even if Plaintiffs were able to demonstrate some overlap among officers and directors, it would still fall short of what is needed to establish jurisdiction: overlap between officers and directors is relevant to jurisdiction only if it tends to show that the subsidiary is operating as a "mere department" of the parent; some overlap is normal and "intrinsic to the parent-subsidiary relationship" and, alone, such overlap is not probative of the subsidiary failing to maintain an independent corporate existence. E.g., J.L.B. Equities, supra, 131 F.Supp 2d at 550. AT&T Inc. has hundreds of direct and indirect subsidiaries. (Britt Decl. ¶ 5). It is, therefore, entirely possible that there is some limited overlap without jurisdictional significance. See, e.g., Lacey Decl. ¶ 3, noting that "BellSouth Corporation has no common directors with AT&T Inc. and has only one common officer."

and operates the United States' only nationwide all digital, fiber optic network . . . Sprint has $15 billion in annual revenues.'")[6]

In short, Plaintiffs have shown nothing more than that AT&T Inc. and BellSouth Corporation are typical holding companies. A holding company is not subject to personal jurisdiction everywhere that its subsidiaries do business absent exceptional circumstances. Nothing Plaintiffs submitted even hints at the existence of any such exceptional circumstances.

### B. Plaintiffs Present No Evidence of Specific Jurisdiction

Plaintiffs' specific jurisdiction arguments under N.Y. CPLR 302(a)(1), (2) and (3) (Opp. Brief at 19-21) all incorrectly presume that "Aerotel has shown above that AT&T and BellSouth subsidiaries acted as 'agent' for these defendants." (Opp. Brief at 19; see also id. at 20 at 21). As that supposed "showing" was based solely upon the joint venture argument discredited above, Plaintiffs' attempt to show specific jurisdiction has no evidentiary foundation. (See pages 2-3 above.)

## II.    AEROTEL U.S.A., INC. AND AEROTEL U.S.A., LLC LACK STANDING

Plaintiffs acknowledge that only Aerotel, Ltd. is an owner of the patent at issue. (Complaint ¶ 1.) It is, therefore, the sole proper Plaintiff. The fact that Aerotel U.S.A., Inc. and Aerotel U.S.A. LLC may be "wholly-owned" by Aerotel, Ltd. is irrelevant, and does not give them standing to sue for infringement.

As noted in Defendants' Mov. Brief (at pp. 28-29), the decision in Propat Int'l Corp. v.

---

[6] Plaintiffs' citation to Cali v. East Coast Aviation Services, Ltd., 178 F. Supp. 2d 276, 287 (E.D.N.Y. 2001) (Opp. Brief at 18), is inapposite, and not merely because it was decided under Pennsylvania law. Id. at 285. There, the corporate parent was not a holding company, but a British manufacturer of airplanes. Id. at 281. When its web site presented itself as a company with "'world-wide' reach," and blurred the distinctions between it and its regional subsidiaries, it was reasonably understood as marketing its own airplanes worldwide. Id. at 287-88. The fact that AT&T Inc. and BellSouth Corporation are holding companies, with no products of their own, compels a different result, as the Cali court itself implicitly observed in distinguishing holding companies under the Pennsylvania analogue of the "mere department" analysis: "In contrast, a 'holding company could simply hold another type of subsidiary,' and therefore the subsidiary would not be performing a function that the parent holding company would otherwise have to do." Id. at 288, citation omitted. See also Porter v. LSB Indus., 192 A.D.2d 205, 214-15, 600 N.Y.S.2d 867, 873-74 (4th Dep't 1993) ("LSB is a holding company whose business is investment, which differs from the business of Summit, which is the distribution of machine tools. The business of the parent is carried out entirely at the parent level, and Summit cannot be deemed to be conducting the parent's business as its agent.")

RPost US, Inc., 473 F.3d 1187 (Fed. Cir. 2007), is directly on point and controlling.  The Federal Circuit squarely held in that case that an agreement giving an entity "the responsibility to license the patent to third parties, to enforce the licensing agreements, and to sue infringers," id., at 1190, "did not accord it rights in the patent sufficient to give it standing to sue, even with [the patent owner] named as co-plaintiff," id. at 1194.  In this case, Aerotel, Ltd. specifically pleads that it, alone, "is the sole owner of all rights conferred by U.S. Patent No. 4,706,275 (the ''275 Patent') and all foreign patents corresponding thereto" (Complaint ¶ 1), and that Aerotel U.S.A., Inc. and Aerotel U.S.A., LLC "are the exclusive managing agents of Aerotel, Ltd., responsible for licensing and enforcing the '275 Patent" (Complaint  ¶ 10).  These allegations thus present exactly the same situation as Propat: these two named Plaintiffs are admittedly not the owners of the patent, not the exclusive licensees of the patent (as Plaintiffs acknowledge that AT&T Corp., for example, is a licensee (Opp. Brief at 9 n.5)) and, therefore, these two Plaintiffs have no standing to sue for infringement.

Plaintiffs' only response to this is to quote Ortho Pharm. Corp. v. Genetics Inst., Inc., 52 F.3d 1026, 1031 (Fed. Cir. 1995), to the effect that a plaintiff with less rights than necessary to sue alone might still join as co-plaintiff with the patent owner (Opp. Brief at 27), and to attempt to distinguish Propat by noting that, there, "the patentee itself was not a party" and, in this case, that all of the plaintiffs "are commonly owned"  (Opp. Brief at 28 n.12).   But "common ownership" of corporate entities is not relevant to the standing doctrine.[7]  The other arguments Plaintiffs make were clearly dismissed in Propat itself.

Propat cited Ortho (473 F.3d at 1192), but nevertheless specifically negated the contention Plaintiffs proffer here by holding that the Propat plaintiff did not have "rights in the patent sufficient to give it standing to sue, even with [the patent owner] named as a co-plaintiff,"

---

[7]     Plaintiffs assert that "there is no threat of multiple litigation between the Aerotel entities, on the one hand, and the defendants on the other, because every Aerotel entity having rights with respect to the '275 patent is a named plaintiff in this action."  (Opp. Brief at 28 n.12.)  The assertion that "every Aerotel entity having rights" is a plaintiff is wholly unsupported and, furthermore, does not negate the existence of non-"Aerotel entities" with similar rights.  More importantly, the standing doctrine is rooted in the Constitution and does not exist merely to eliminate the threat of multiple litigation.

473 F.3d at 1194.  The problem, the court noted, was that Propat's rights were "more consistent with the status of an agent than a co-owner."  Id.  Here, Plaintiffs' own pleading establishes that neither Aerotel, U.S.A., Inc. nor Aerotel U.S.A., LLC have *any* ownership interest at all in the patent, because the Complaint describes Aerotel, Ltd. as "the sole owner of all rights" conferred by the patent (Complaint ¶ 1).  Indeed, the Complaint describes the other Plaintiffs as the "managing agents" who are "responsible for licensing and enforcing the '275 Patent" (Complaint ¶ 10), which puts them squarely in the same agent category as the Propat plaintiff.

### III.    PLAINTIFFS FAIL TO ADEQUATELY PLEAD INFRINGEMENT

As an initial matter, Plaintiffs misstate their pleading burden when asserting that "the Court need only decide whether there is any set of facts upon which the defendants can be liable to Aerotel for acts of infringement described in the Complaint."  (Opp. Brief at 13.)  That is *not* the applicable standard today.  As stated in Defendants' Moving Brief (at 24), the Supreme Court expressly repudiated that standard in Bell Atlantic, supra, 127 S.Ct. at 1969 (the Conley v. Gibson "no set of facts" language "has earned its retirement").  Rather, under Bell Atlantic, it is incumbent upon Plaintiffs to provide "[f]actual allegations [which] must be enough to raise a right to relief above the speculative level."  127 S.Ct. at 1964-65.  In an infringement case like this, Defendants are entitled to know with what and how they are accused of infringing the patent-in-suit.  Plaintiffs' Complaint does not provide such notice and their attempt to defend that Complaint on this motion simply underscores its inadequacy.

Plaintiffs contend that paragraph 3 of their Complaint adequately informs Defendants of their infringement allegations by "specifying" that:

> ...the infringing products and services *include* prepaid wireline communications products (*e.g.,* prepaid calling cards a/k/a prepaid phone cards) and services (*e.g.*, prepaid telephone service provided to users of prepaid calling cards), and prepaid wireless telecommunications products (*e.g.*, prepaid wireless setup and refill cards) and services (*e.g.*, prepaid telephone service using a wireless telephone).

Opp. Brief at 26 (emphasis added).  This paragraph tells Defendants absolutely nothing about Plaintiffs' accusations, other than that they somehow relate to prepaid telephone calls.  Importantly, Plaintiffs do not allege that every form of prepaid calling necessarily infringes their patent; they do not do so because, whatever they would contend to be the full scope of their

patent, even they would concede that at least some types of prepaid calling (for example, coin-operated pay phones and "smartcards") do not infringe. Nor does the Complaint state whether each Defendant supposedly infringes directly, contributes to, or induces infringement by somebody else.

Nor is it particularly helpful that the Complaint identifies certain brand names under which prepaid telephone services were marketed (Complaint ¶ 37), because it expressly states that the allegations are "not limited to" those brands identified, id., and fails to identify the conduct related to those services that supposedly infringes.[8] Compounding the problem is that, as Plaintiffs note in their brief, many Defendants were independent companies before being acquired by AT&T Inc. or BellSouth Corporation (Opp. Brief at 7-9) and, consequently, independently developed their own systems, methods, and products, a problem further exacerbated by the fact that the systems, methods and products of each changed over the multiple years that the Complaint arguably puts at issue.  (See Zammit Decl. ¶ 3.)  The Complaint thus informs Defendants only that each of them, at some unknown point in time, either did something, or somehow assisted someone else in doing something, that allegedly infringes Aerotel Ltd.'s patent.  That is hardly meaningful enough to permit Defendants to intelligently defend themselves, or to enable discovery to be appropriately circumscribed.

Plaintiffs only add to the confusion when they accuse Defendants of being disingenuous: "Each Defendant has full knowledge regarding its own sale of prepaid wireless or wireline telecommunications products of the types identified by Aerotel, namely, prepaid calling cards and prepaid wireless setup and refill cards."  Opp. Brief at 26.  The problem is that the patent does not purport to claim "prepaid calling cards."  Rather, the patent claims systems and methods

---

[8]   Plaintiffs cite to Windy City Innovations, LLC v. America Online, 227 F.R.D. 278 (N.D. Ill. 2005) (Opp. Brief at 25), as support for their vague pleading.  Windy City was decided under Seventh Circuit law and applied the now-discredited Gibson v. Conley "no set of facts" pleading standard. Id. at 281.  More importantly, the plaintiff in Windy City did apparently specify the particular products and services alleged to be infringing (which meant that the failure to specify whether the infringement was direct, contributory or inducing was less important since defendant knew what was being accused) and the court dismissed the infringement claim to the extent that plaintiff sought to accuse "other" unnamed products or services: "Such a vague reference to 'other' unnamed products or services fails to provide the operative facts in relation to the alleged infringement by those 'other' unnamed products or services." Id. at 283.

for making prepaid telephone calls.  (See Ex. A to Complaint.)  If the Complaint alleged that each Defendant's prepaid calling cards directly infringe, as Plaintiffs assert in their brief (at 20), it would be a simple matter to resolve this action by moving for summary judgment.  But Plaintiffs' Complaint is not so limited or specific.

### IV. PLAINTIFFS' PLEAS TO AMEND AND FOR DISCOVERY LACK THE NECESSARY FOUNDATION

Plaintiffs ask for leave to amend "to correct the deficiencies" of their Complaint, but never identify how they would purport to correct the deficiencies.  (Opp. Brief at 28)[9].  Leave to amend should, therefore, be denied.  E.g., Hayden v. County of Nassau, 180 F.3d 42, 53-54 (2d Cir. 1999).

Similarly, while Plaintiffs request "leave to take limited jurisdictional discovery." (Opp. Brief at 28), they fail to explain why they believe this Court should ignore the Second Circuit's direction in Jazini, supra, and the other authorities cited by Defendants, which hold that a plaintiff may not simply make "conclusory non-fact-specific jurisdictional allegations" and expect to obtain jurisdictional discovery.  131 F.3d at 185.  Plaintiffs' conclusory allegations attempting to predicate jurisdiction upon the fact that AT&T Inc. and BellSouth Corporation own other corporations that do business in New York merely allege them to be typical holding companies and fall far short of the *prima facie* showing necessary to justify the enormous burden and expense of jurisdictional discovery.  See Mov. Brief at 16-17.

### CONCLUSION

For all the foregoing reasons, Defendants' motions to dismiss should be granted in their entirety.

Dated: New York, New York
       November 30, 2007

---

[9] The only specific amendment disclosed (Opp. Brief at 15 n.7) would be to change the conclusory past-tense allegations that each Defendant "has done business in this Judicial District" to an equally conclusory present-tense "is now doing business" — in other words, to go back to the allegations of the original Complaint as they were before Plaintiffs' last amendment. See Mov. Brief at 10.

| | |
|---|---|
| **FULBRIGHT & JAWORSKI, L.L.P.** | **HUNTON & WILLIAMS LLP** |
| By: /s/ Joseph P. Zammit | By: /s/ Shawn Patrick Regan |
|     Joseph P. Zammit |     Maya E. Eckstein |
|     Edward P. Dolido |     Shawn Patrick Regan |
| 666 Fifth Avenue, 31st Floor | 200 Park Avenue |
| New York, New York  10103-3198 | New York, NY  10166 |
| Telephone:  (212) 318-3000 | (212) 309-1000 |
| Attorneys for Defendants | Attorneys for Defendant |
| AT&T Inc., BellSouth Corporation, AT&T Corp., SBC Long Distance, LLC (incorrectly named herein as AT&T Long Distance, LLC), AT&T Mobility Corporation, AT&T Mobility LLC, New Cingular Wireless Services, Inc., Cingular Wireless II, LLC, New Cingular Wireless PCS LLC, BellSouth Mobility DCS, Inc. and BellSouth Telecommunications, Inc. | BellSouth Long Distance, Inc. |

60054420.1